## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br>c/o 3238 P St. N.W.<br>Washington, D.C. 20007 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **C.A. No.**_____ |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION,<br>10th and Pennsylvania Ave., N.W.<br>Washington, D.C. 20535 | )<br>)<br>)<br>) |
| UNITED STATES DEPARTMENT OF JUSTICE,<br>9th & Pennsylvania Ave., N.W.<br>Washington, D.C. 20530 | )<br>)<br>) |
| HON. ERIC HOLDER,<br>United States Attorney General<br>9th & Pennsylvania Ave., N.W.<br>Washington, D.C. 20530 | ) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |
| and | )<br>) |
| HON. ROBERT MUELLER III,<br>Director,<br>Federal Bureau of Investigation<br>10th and Pennsylvania Ave., N.W.<br>Washington, D.C. 20535 | )<br>)<br>)<br>)<br>) |
| Defendants | )<br>) |

## COMPLAINT

Plaintiff Bassem Youssef brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Specifically, he contends that management at the federal agency denied him a promotion based on his national origin and in retaliation for his prior participation in civil rights activities protected under Title VII of the Civil Rights Act.

As a consequence of these unlawful actions by F.B.I. management, Mr. Youssef seeks an order

granting him the promotion he was denied, compensatory damages, and other relief as a result of

the adverse employment actions taken against him,  Plaintiff requests a trial by jury on all claims

where permitted by law.

## JURISDICTION

1.      This court has subject matter jurisdiction over Plaintiff's employment discrimination

claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e-5(f)(3), § 2000e-5(g), § 2000e-16(c) and 29 C.F.R. § 1614.407(b), as Mr. Youssef

exhausted his available administrative remedies by filing a timely complaint of

discrimination based on national, origin and reprisal on February 16, 2010.  More than

180 days have passed and yet the Agency (the Federal Bureau of Investigation) has still

not taken final action.

## VENUE

2.      Venue is proper in this judicial district as plaintiff was employed by the FBI within the

District of Columbia at the time of actions complained of, records pertaining to plaintiff's

employment are maintained by the FBI in this judicial districts, and the actions adverse to

plaintiff's employment that are the subject of this civil action were taken in this judicial

district.

## PARTIES

3.   Plaintiff. Bassem Youssef is an Egyptian-born, naturalized citizen of the United States and a resident of the state of Virginia.  He is currently a GS-15 Supervisory Special Agent and Unit Chief of the Communications Analysis Unit within the United States Department of Justice, Federal Bureau of Investigation.

4.   Defendant Federal Bureau of Investigation ("FBI"), is an Agency of the United States Government, is headquartered in Washington, D.C.   Defendant FBI is an executive agency within the meaning of 42 U.S.C. § 2000e-16(a).

5.   Defendant United States Department of Justice ("DOJ") is an Agency of the United States government located in Washington, D.C.  Defendant DOJ is an executive agency within the meaning of 42 U.S.C. § 2000e-16(a).

6.   Defendant Eric Holder is employed by the United States Department of Justice as the Attorney General of the United States in Washington, D.C.  Defendant Ashcroft is being sued in his official capacity and in his capacity under 42 U.S.C. § 2000e-16(c).

7.   Defendant Robert Mueller is employed by the United States Department of Justice as the Director of the FBI.  Defendant Mueller is being sued in his official capacity under 42 U.S.C. § 2000e-16(c).

## FACTS

8.   Plaintiff Bassem Youssef is an Egyptian-born American citizen who came to this country with his family in 1972.

9.   Mr. Youssef is a resident of Virginia.

10.     Mr. Youssef started working with the Federal Bureau of Investigation (FBI) on March 7,
        1988 as a Special Agent, GS-10, Step 1.

11.     Mr. Youssef is currently employed as GS-15, Step 4 Supervisory Special Agent and Unit
        Chief of the Communications Analysis Unit of the Communications Exploitation Section
        of the Counterterrorism Division at FBI Headquarters.

12.     Mr. Youssef has a sophisticated understanding of Middle Eastern culture and speaks
        Arabic at a native level of fluency.

13.     He is the most senior ranking Supervisory Special Agent with a native fluency (level 4) in
        Arabic.

14.     Prior to the terrorist attacks of September 11, 2001, Mr. Youssef applied his language
        skills and contributed his cultural knowledge as the coordinator, supervisor, and/or Case
        Agent for many of the FBI's highest profile Middle Eastern counterterrorism
        investigations, including the Islamic Revenge Group, the Khobar Towers Bombing,
        Hizballah, Blind Sheikh Investigation, Usama Bin Laden, and Al Qaeda.

15.     Mr. Youssef also received the prestigious Director of Central Intelligence Award for his
        outstanding achievements relating to the Islamic Group.  This is one of the most coveted
        awards in the intelligence community.

16.     Mr. Youssef was also able to obtain crucial information about the 1993 World Trade
        Center Bombing by infiltrating the Al Qaeda network with a source loyal to FBI.

17.     Mr. Youssef had also served as the first Legal Attaché (Legat) in Riyadh, Saudi Arabia,
        where he managed FBI's operations and personnel in Saudi Arabia, Kuwait, Bahrain,
        United Arab Emirates, and Yemen.

18.   Mr. Youssef also mended the strained relations between the FBI and the Mabahith (the

FBI equivalent in Saudi Arabia) and forged trusting relationships with foreign law

enforcement officials in the Gulf region to open up unprecedented channels of

communication.  This free flow of information that Mr. Youssef achieved through his

exceptionally strong liaisons paid tangible dividends to the United States as well as the

FBI by advancing numerous counterterrorism investigations, including Usama bin Laden

and Al Qaeda.

19.   Prior to engaging in protected activity, Mr. Youssef consistently received a glowing

assessment of his work performance by his superiors, who consistently rated him as an

"exceptional" performer in Performance Appraisal Reports.

20.   Beginning in 2002, and continuing into the present, Mr. Youssef engaged in protected

activity.

21.   Mr. Youssef's protected activities include, but are not limited to: filing a Title VII

complaint, testifying in Title VII proceedings, and providing information about

discrimination to Congress, the Department of Justice, and the DOJ Office of Inspector

General.

22.   On September 18, 2009, the FBI announced a Vacancy for the GS-15 position of

Assistant Section Chief (ASC), of the Communications Exploitation Section within the

FBI's Counterterrorism Division.

23.   Mr. Youssef applied for this ASC position in a timely manner.

24.    The minimum eligibility qualifications for the ASC position consisted of three years of

FBI investigative experience, one year relief supervisory experience, a "successful"

performance appraisal, and one year experience as an FBIHQ supervisor.

25.    Mr. Youssef exceeded these minimum requirements.

26.    Mr. Youssef has accumulated over ten years of experience investigating terrorist

organizations while serving as the Legat in Riyadh and as a Case Agent working in the

Saint Louis and Los Angeles field offices.

27.    Mr. Youssef worked as a Relief Supervisor in Los Angeles and coordinated all cases

involving the Islamic Group terrorists.

28.    Mr. Youssef has never received a Performance Appraisal Review that described his

performance as less than "successful," and, prior to engaging in protected activity, had

consistently received "exceptional" and "outstanding" ratings overall.

29.    Mr. Youssef has worked in the Communications Exploitation Section since its inception

in 2002.  He first served as the Program Manager for the Document Exploitation Project,

and then became the first Unit Chief of Document Exploitation in 2003, after it became

an official unit.

30.    By establishing the Unit's infrastructure, mission, goals, objectives, and procedures where

none had previously existed, Mr. Youssef has demonstrated leadership competency,

which is a core requirement for the ASC position.

31.    Since December of 2004, Mr. Youssef has served in a supervisory capacity as the Chief

of the Communications Analysis Unit of the Communications Exploitation Section,

within the Counterterrorism Division of the FBI.

32.  Mr. Youssef has over five years of experience with managing high profile, sensitive counterterrorism projects related to the collection, exploitation, analysis, and dissemination of communications intelligence, which would enable him to excel as the ASC.

33.  Mr. Youssef has also served as the acting SC and ASC for the Communications Exploitation Section on numerous occasions.

34.  Mr. Youssef has more experience in the Communications Exploitation Section than any other employee in the FBI.

35.  Based on Mr. Youssef's extensive experience, expertise, and competencies in the core requirements of leadership, problem solving, interpersonal skills, and initiative, Mr. Youssef was the most qualified candidate for the ASC position.

36.  But for the retaliation/discrimination against him, Mr. Youssef would have received the ASC position.

37.  Had Mr. Youssef received the ASC position, he would have taken office as early as November 25, 2009.

38.  Had Mr. Youssef received the ASC position, he would have had greater supervisory responsibility over many more Agents, and thus a substantially higher status within the FBI community.

39.  Had Mr. Youssef received the ASC position, then his decisions would have had a greater impact across the section, as many more agents would be affected.

40.   Had Mr. Youssef received the ASC position, then he would have become more visible to
      upper level management, insofar as he would have participated in pre-briefings with the
      Deputy Assistant Director, and could have attended briefings with Director Mueller.

41.   Had Mr. Youssef received the ASC position, then he would have been eligible for
      additional promotions within the FBI, such as a Section Chief position.

42.   On November 24, 2009, Mr. Youssef was informed that he was not selected for the
      Assistant Section Chief position in the Communications Exploitation Section of the FBI's
      Counterterrorism Division.

43.   The candidate who received the position, Daniel Powers, is a white male who had no
      experience within the Communications Exploitations Section before receiving the
      position.

44.   Mr. Powers had not demonstrated any experience in targeting terrorist communications,
      which is the primary mission of the Communications Exploitation Section.

45.   Mr. Youssef was already a GS-15 Supervisory Special Agent tasked with starting up a
      Legal Attache Office in Saudi Arabia when Mr. Powers entered the Bureau.

46.   While Mr. Youssef was working as a Case Agent on numerous high-profile
      Counterterrorism and Counterintelligence operations, Mr. Powers was a police officer
      working on "road patrol."

47.   Mr. Powers has not engaged in any Title VII protected activity.

48.   The members of the Career Board responsible for evaluating and ranking the candidates
      for the ASC position were Hipolito Castro, Jr., Assistant Section Chief to the Terrorist
      Financing Operations Section, Erkan A. Chase, Assistant Section Chief of the

– 8 –

Communications Exploitation Section, and Arthur J. Zarone, Assistant Section Chief of the Tactical Support Branch.

49.   Mr. Castro had admitted that Mr. Youssef's FD-954 Application form was competent, yet did not select him as the number one candidate for the ASC position.

50.   Mr. Castro learned from Mr. Youssef that he had a pending legal matter against the FBI around March of 2009, and was thus aware of Mr. Youssef's legal action against the FBI when he ranked the candidates for the ASC position.

51.   Mr. Chase has admitted that Mr. Youssef's FD-954 application form was very good, and that he did very well in certain categories.

52.   Nevertheless, Mr. Chase did not rank Mr. Youssef as the top candidate for this position.

53.   Mr. Chase has admitted that he perceived Mr. Youssef's national origin to be Egyptian.

54.   Although Mr. Chase claims not to have prior knowledge about Mr. Youssef's legal matters, Mr. Chase has worked with Mr. Youssef in the Communications Exploitation Section since 2006.

55.   Therefore, Mr. Chase knew about Mr. Youssef's protected activities.

56.   Mr. Zarone has admitted that he perceived Mr. Youssef's national origin to be Egyptian.

57.   Mr. Zarone worked with Mr. Youssef within the Counterterrorism Division, and has recalled that Mr. Youssef spent time out of the office, in connection with his Title VII litigation.

58.   Mr. Zarone served as Mr. Youssef's immediate supervisor and rating official from March or April 2008 to October 2009.

59.   Mr. Zarone downgraded Mr. Youssef's performance from "excellent" to "successful" in
      three critical elements in Mr. Youssef's 2009 Performance Appraisal Report.

60.   In handwritten notes accompanying the 2009 PAR, Mr. Zarone wrote that Mr. Youssef's
      performance level had dropped from 2008 to 2009, and attributed this alleged drop in
      performance to two distractors: an "OIG Report" and a "Legal Matter," which clearly
      refers to his Title VII protected activities.

61.   The negative performance review is evidence that Mr. Zarone, a key member of the
      Career Board, harbored retaliatory animus toward Mr. Youssef because of his
      participation in protected activities.

62.   Mr. Zarone downgraded Mr. Youssef's performance appraisal rating due to protected
      activity shortly before participating in the Career Board that denied Mr. Youssef the ASC
      position.

63.   Mr. Zarone's downgrading of Mr. Youssef's performance was arbitrary, pretextual and
      unsubstantiated.

64.   After the Career Board rejected Mr. Youssef for the ASC position, upper management at
      FBI reversed two of Mr. Zarone's ratings, upgrading Mr. Youssef from "excellent" to
      "outstanding" in the critical elements of "Organizing, Planning, and Coordinating" as
      well as "Acquiring, Applying, and Sharing Job Knowledge."

## COUNT I

### (DISCRIMINATION)

65.   Incorporate by reference all allegations contained in paragraphs 1 through 64, inclusive.

66.   Plaintiff Bassem Youssef is a member of a protected class (Egyptian-national origin), who applied for but did not receive the ASC position, for which he was qualified.

67.   The knowledge of the Career Board members and the circumstances surrounding their selection give rise to an inference of discrimination and demonstrates that the Career Board's decision was pretextual.

68.   As a result of discrimination based on national origin, Mr. Youssef was denied a promotion to the ASC position, and has suffered a loss of reputation, reduced promotional opportunities, and emotional harm.

## COUNT II

### (RETALIATION)

69.   Incorporate by reference all allegations contained in paragraphs 1 through 68, inclusive.

70.   Plaintiff Bassem Youssef engaged in protected Title VII activity by participating in Title VII proceedings and opposing discriminatory actions.

71.   The knowledge of the Career Board members and the circumstances surrounding their selection give rise to an inference of retaliation and demonstrates that the Career Board's decision was pretextual.

72.   As a result of this retaliation, Mr. Youssef was denied the promotion to the ASC position by members of the Career Board who knew he had engaged in protected activity, and has suffered a loss of reputation, reduced promotional opportunities, and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant all damages permitted under Title VII of the

Civil Rights Act of 1964, as amended, and for all relief available to the plaintiff under Title VII,

including, but not limited to:

(a)    Instatement to the aforementioned ASC position;

(b)    Restoration of his career to the level of advancement it would have been had he

       not been subject to discrimination/retaliation, including compensatory damages,

       back pay, and injunctive relief;

(c)    Award plaintiff Youssef compensatory damages for emotional harm and loss of

       reputation, the exact amount to be determined at trial;

(d)    Order preliminary and permanent injunctive relief prohibiting future retaliation

       against Plaintiff and others similarly situated employees for lawful participation

       and/or opposition protected under Title VII of the Civil Rights Act;

(e)    Enjoin the defendants from taking any disciplinary, adverse or prohibited

       personnel action against plaintiff and other similarly situated FBI employees;

(f)    Declare that defendants' conduct towards plaintiff Youssef is in violation of Title

       VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. ' 2000e, et seq.;

(g)    Award plaintiff Youssef the costs and fees of this action concerning his Title VII

       claims, including those incurred at the administrative level, as well as reasonable

       attorneys and expert witness fees, and prejudgment and post-judgment interest;

(h)    Compensation for damages to future employment;

(i)    Grant such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

Stephen M. Kohn, #411513
sk@kkc.com


Michael D. Kohn, #425617
mk@kkc.com
David K. Colapinto, #416390
dc@kkc.com
National Whistleblower Legal Defense & Education Fund
3238 P Street, N.W.
Washington, D.C.  20007
sk@kkc.com
Phone: (202) 342-1903
Fax: (202) 342-1904
Attorneys for Plaintiff


July 25, 2011

– 13 –