## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| BASSEM YOUSSEF,                                              ) | |
|                                                                         ) | |
|                   Plaintiff                                         ) | |
|                                                                         ) | |
|              v.                                                      )    **C.A. No. 1:11-CV-01362-CKK** | |
|                                                                         ) | |
| ERIC HOLDER,                                                ) | |
| U.S. Attorney General                                     ) | |
|                                                                         ) | |
|                   Defendant                                     ) | |
| _____ ) | |

### PLAINTIFF YOUSSEF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT [R-21]

### I.       INTRODUCTION

Plaintiff Bassem Youssef did exhaust his administrative remedies and preserve his non-selection claim for the ASC position which defendant announced on November 24, 2009.  He did so by requesting counseling on December 1, 2009, participating in counseling on February 2, 2010, filing a formal administrative complaint on February 16, 2010, continuing to participate in counseling and mediation, clarifying his complaint on April 6, 2010, filing a subsequent and amended formal administrative complaint on April 29, 2010, accepting the FBI's May 19, 2010, statement of the issues approved for investigation, and then by waiting over a year without receiving any final agency decision. Mr. Youssef thereby complied with every statutory and regulatory prerequisite for filing this action. He also gave the defendant timely notice of his claim, and a full and fair opportunity to resolve it administratively.

## II.        STATEMENT OF FACTS

Mr. Youssef currently holds the position of a GS-15 Unit Chief of the Communications Analysis Unit within the Communications Exploitation Section at the Federal Bureau of Investigation's ("FBI") Headquarters. Ex. 1, BY00018, box 3.[1] During the relevant times, Mr. Youssef's immediate supervisor was Arthur Zarone. Ex. 1, BY00004-9. Mr. Youssef has worked in the Communications Exploitation Section since its inception in 2002.  Ex. 1, BY00009. Mr. Youssef has also served as the Acting Section Chief for the Communications Exploitation Section on numerous occasions.  Ex. 1, BY00023.

Although Mr. Youssef has more experience in the Communications Exploitation Section than any other employee in the FBI, Mr. Youssef was denied a promotion to the position of Assistant Section Chief of the Communications Exploitation Section, for which he applied. *Id.*

The Members of the Career Board who made the decision to select Mr. Powers over Mr. Youssef included Hipolito Castillo Jr., Erkan A. Chase, and Arthur J. Zarone. See Ex. 1, BY00046 (Zarone).  Mr. Zarone's own "drop file notes" regarding Mr. Youssef made critical remarks against Mr. Youssef because of his participation in "distracters," which included Mr. Youssef's ongoing EEO "legal matter." Ex. 1, BY00015. Mr. Zarone used these "distracters" to justify downgrading Mr. Youssef's performance rating from his previous year.  In these three "critical elements," Mr. Youssef's performance was lowered from "Excellent" to "Successful," the lowest possible acceptable level. Ex. 1, BY00019. Mr. Zarone informed Mr. Youssef of this PAR on October 26, 2009. Ex. 1, BY00018.  Mr. Youssef initially sought EEO counseling on November 12, 2009. Ex. 1, BY0002. Mr. Youssef provided the EEO counselor a copy of Mr. Zarone's note.  Ex. 1, BY 00015.

---

[1] Undersigned counsel conferred with defendant's counsel and reached agreement that the attached exhibits are suitable for the public record even though pages BY00017-19 are marked as being subject to a protective order.

On November 24, 2009, defendant informed Mr. Youssef that he was not selected for the ASC position. Ex. 1, BY00022. This was shortly after Mr. Youssef knew that the Mr. Zarone had lowered the official rating of Mr. Youssef on the retaliatory basis of the animus Mr. Zarone held against him due to his participation in protected EEO activities.  As the supervisor, Mr. Zarone's view of Mr. Youssef's performance would have great weight on any three-member Career Board on which Mr. Zarone sat.

On December 1, 2009, the FBI's Office of EEO Affairs ("OEEOA") interviewed Mr. Youssef about a prior complaint challenging his performance appraisal rating ("PAR"). Ex. 1, BY00002, ¶ 1, BY00005. OEEOA presented to Mr. Youssef a "Written Notification to Aggrieved." Ex. 1, BY00012. This form stated, "Only matters which you raise in precomplaint counseling or matters like or related to matters raised at the counseling stage, may be alleged in any subsequent complaint you file." On the spot, Mr. Youssef requested counseling on the denial of the ASC position. Ex. 1, BY00005-6, 23. The OEEOA expanded counseling to include the non-selection claim.  *See* R-21-1 at p. 7.

EEO counseling concluded with a meeting on February 2, 2010. Ex. 1, BY00002, ¶ 6; Renner Declaration, Ex. 2, p. 1, ¶ 2. There is no dispute that Mr. Youssef thereafter had 15 days to file a formal complaint.  There is also no dispute that Mr. Youssef, through counsel, did file his formal complaint on February 16, 2010.  Ex. 1, BY00016; Renner Declaration, Ex. 2, p. 1, ¶ 3. The original formal complaint alleged the lowered PAR, threats made on January 20 and 21, 2010, as well as a hostile work environment.  It sought, as relief, "Restoration of his career to the level of advancement it would have but for the reprisals, including back pay and reinstatement." *Id*. The position to which he would be reinstated would have been the ASC position for which he was not selected. Renner Declaration, Ex. 2, pp. 1-2, ¶ 4. The formal complaint checked the boxes for race, national original, and reprisal.

Meanwhile, OEEOA continued counseling. On February 23, 2010, Mr. Youssef consented to an extension of the counseling deadline. Ex. 1, BY00027. OEEOA sought the extension for the OIG and OPR issues raised on February 2, 2010. The extension allowed the OEEOA until May 3, 2010, to complete counseling.

On February 24, 2010, OEEOA sent a letter to Mr. Youssef's counsel.  Ex. 1, 34-36; Renner Declaration, Ex. 2, p. 2, ¶ 6. This letter stated in part, "Pursuant to 29 C.F.R. Part 1614, you will be advised by separate letter as to which bases and allegations of discrimination my office has accepted for investigation."

On March 23, 2010, OEEOA sent an email to Mr. Youssef's counsel seeking clarification of the allegations in the February 16, 2010, formal administrative complaint. Ex. 1, BY00029-30; Renner Declaration, Ex. 2, p. 2, ¶ 7. The email contained a letter stating:

> A review of the captioned Equal Employment Opportunity (EEO) complaint indicates that your client believes he was subjected to a hostile work environment based on his race, national origin (Middle Eastern & Arabic) and reprisal from 2007 to the present. To continue processing your client's EEO complaint, we request that you provide the following clarification information regarding the alleged discriminatory incidents in your client's EEO complaint: Please explain each incident and give the specific date(s) of all alleged incidents of harassment your client has experienced in the workplace from 2007 to the present.
>
> Additionally, a review of the report of counseling indicated that your client was not selected for an Assistant Section Chief position in the Communications Exploitation Section, Counterterrorism Division. However, your client did not raise this allegation in the above-captioned EEO complaint. If you client wishes to include this allegation in the above-captioned complaint, please provide the date he became aware that he was not selected for the Assistant Section Chief position.
>
> Please provide the requested information within 15 calendar days of your receipt of this letter or your client's complaint may be recommended to the Department of Justice for dismissal.

On April 6, 2010, Mr. Youssef's counsel responded to this email. Ex. 1, BY00028; Renner Declaration, Ex. 2, p. 3, ¶¶ 9-11. The response stated in part:

Thank you for asking about the issue of my client's non-selection for the ASC position. On November 24, 2009, my client received notice that he was not selected for the ASC position. During a December 1, 2009, meeting with EEO counselor Regina Fields, my client requested EEO counseling on his non-selection for the ASC position. I ask that you do include this claim in the current EEO formal complaint and provide my client with make whole and other remedies provided by law.

You asked me to provide a list of examples of the actions that create a hostile work environment for my client, Mr. Youssef, from 2007 to the present. I cannot provide you with the details you requested of "all" the incidents in the limited time you provided. Nevertheless, I can provide you with sufficient details to show that my client's claims have merit. These include: ***

5. On November 24, 2009, my client received notice that he was not selected for the ASC position. Of all the applicants who have applied for the position during the past three years, my client was the only applicant with more substantial experience in the Section than any of the other applicants. During a December 1, 2009, meeting with EEO counselor Regina Fields, my client requested EEO counseling on his non-selection for the ASC position.

On April 22, 2010, the OEEOA conducted another counseling session with Mr. Youssef and his counsel. *See* R-21-1 at p. 41. On April 29, 2010, Mr. Youssef, through counsel, filed an amended formal complaint that included the non-selection issue.  Ex. 1, BY00025. OEEOA accepted the amended complaint and issued a letter dated May 11, 2010, that is similar to the February 24, 2010, letter. Ex. 1, BY 00031-33. Thus, the FBI's formal investigation still had not begun.

On May 19, 2010, OEEOA issued a letter to undersigned counsel accepting the amended complaint, including the non-selection issue, for investigation. *See* Ex. 1, BY00037-41; R-21-1, pp. 58-59; Renner Declaration, Ex. 2, pp. 4-5, ¶¶ 16-21.  The second page of the letter makes clear that the non-selection claim was included because, "On April 6, 2010, via e-mail, you responded to the request for clarification." The letter continues, "After a review of your client's EEO complaints and your April 6, 2010, e-mail, it has been determined that the following allegations will be accepted for investigation: . . . (i) on November 24, 2009, complainant

received notification that he was not selection for an Assistant Section Chief position . . ..." Ex. 1, BY00038. The OEEOA consolidated the claims pursuant to 29 C.F.R. § 1614.606.[2]  The letter offered Mr. Youssef a 14-day period in which he could dispute the statement of the claims selected for investigation. Because the letter correctly stated the issues, Mr. Youssef's counsel made no dispute.  Renner Declaration, Ex. 2, pp. 5-6, ¶ 21.  One effect of the consolidation under this regulation was to extend the agency's time to complete its investigation to 180 days after the amendment. Mr. Youssef did not file any request for a hearing with EEOC in this matter. The FBI's OEEOA did not issue any decision flowing from its investigation.  Mr. Youssef waited for over a year before commencing this civil action.  Renner Declaration, Ex. 2, p. 6, ¶ 22.

On July 25, 2011, Mr. Youssef filed this civil action pursuant to Title VII of the Civil Rights Act of 1964, <u>as amended</u>, 42 U.S.C. §§ 2000e-2, 3, 16.  Specifically, he contends that management at the FBI, a federal agency, denied him a promotion based on his national origin and in retaliation for his prior participation in civil rights activities protected under Title VII of the Civil Rights Act of 1964.

## III.    STANDARD OF REVIEW FOR JUDGMENT ON THE PLEADINGS

The standard of review under Rule 12(c) is essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Plain v. AT & T Corp.*, 424 F.2d 11, 20 n.11 (D.D.C. 2006).  Thus, the Court must accept non-movant's allegations as true and may grant the motion only if there are no material facts in dispute and the

---

2This regulation provides as follows:

Complaints of discrimination filed by two or more complainants consisting of substantially similar allegations of discrimination or relating to the same matter may be consolidated by the agency or the Commission for joint processing after appropriate notification to the parties. Two or more complaints of discrimination filed by the same complainant shall be consolidated by the agency for joint processing after appropriate notification to the complainant. When a complaint has been consolidated with one or more earlier filed complaints, the agency shall complete its investigation within the earlier of 180 days after the filing of the last complaint or 360 days after the filing of the original complaint, except that the complainant may request a hearing from an administrative judge on the consolidated complaints any time after 180 days from the date of the first filed complaint.***

movant is entitled to judgment as a matter of law. *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007). The Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the non-movant the benefit of all inferences that can be derived from the alleged facts. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (*citing Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Courts will grant a judgment on the pleadings pursuant to Rule 12(c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F.Supp.2d 61, 66 (D.D.C. 2001) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant a judgment on the pleadings. *Bradley v. Smith*, 235 F.R.D. 125, 136 (D.D.C. 2006) (internal quotation marks and citation omitted).

## IV.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

When a party moves for summary judgment, the evidence must be viewed in the light most favorable to the Mr. Youssef (the nonmoving party). *Ali v. Tolbert*, 636 F.3d 622, 627-28 (D.C. Cir. 2011); *accord Federal Civil Rules Handbook*, Thompson, West (2004) p. 866 *citing Hunt v. Cromartie*, 526 U.S. 541, 552-53 (1999) ("In ruling on a motion for summary judgment the court will never weigh the evidence or find facts. Instead, the court's role under Rule 56 is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor.") Summary judgment is appropriate if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*,

27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the moving party

bears the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on

file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Importantly, "summary

judgment must be approached with specific caution in discrimination cases." *Morgan v. Fed.*

*Home. Loan Mortg. Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001).

## ARGUMENT

### V.     DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS IS WITHOUT MERIT.

Judgment on the pleadings would not be appropriate in light of Plaintiff Bassem

Youssef's well-pleaded complaint, which provides a basis for recovery.  Mr. Youssef's complaint

clearly sets forth a claim for a failure to promote to the ASC position as a result of national

origin discrimination and/or retaliation.  *See* R-3, ¶¶ 23-64.  Accepting these allegations as true,

it is evident that the Mr. Youssef has pled all of the requisite elements to receive redress for his

grievances.  More importantly, Mr. Youssef adequately alleged that he had exhausted his

administrative remedies, which must be accepted as true.  *See Id.* ¶ 1.  Accordingly, judgment on

the pleadings is unwarranted.

### VI.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE UNDER CONTROLLING CIRCUIT PRECEDENT, WHICH THE FBI IGNORED, YOUSSEF UNDOUBTEDLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR THE ASC CLAIM.

Because untimely exhaustion of administrative remedies is an affirmative defense, the

FBI bears the burden of pleading and proving by a preponderance of the evidence that Mr.

Youssef failed to exhaust administrative remedies.  *See Wade v. District of Columbia*, 106 F.3d

433, 437 (D.C. Cir. 1997) (*citing Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)).  The FBI has

not only failed to meet its burden, but also has turned a blind eye to key facts from documents in

its possession, while ignoring controlling precedent of the D.C. Circuit.  Furthermore, in an

attempt to confuse the issues, the FBI has cited to inapposite cases that discuss tolling – a non-

issue in this case, since Mr. Youssef met all of the required EEO filing deadlines.

Under controlling precedent, "Title VII requires that a person complaining of a violation

file an administrative charge with the EEOC and allow the agency time to act on the charge."

*Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  Instead of fixating on the precise

words used, the charge and related documents must be liberally construed.  *Loe v. Heckler*, 768

F.2d 409, 420 (D.C. Cir. 1985) (Ginsburg, J.) (*citing President v. Vance*, 627 F.2d 353 (D.C. Cir.

1980)).  Courts must avoid applying Title VII's procedural requirements in an "overly technical

[manner that] would improperly impede the goal of making federal employment free from

proscribed discrimination" *Guerrero v. UDC*, 251 F.Supp.2d 13, 21 (D.D.C. 2003) (*citing Brown

v. Marsh*, 777 F.2d 8, 15 (D.C. Cir. 1985)); *see also Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir.

1985) (*citing* H.R. Rep. No. 328, 92d Cong., 1st Sess. 23-25 (1971); *accord Sanchez v. Standard

Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970).  As long as the agency is given "a fair

opportunity to provide full redress or to attempt an informal accommodation," *Loe*, 768 F.2d at

418 (D.C. Cir. 1985), then the end of exhaustion has been achieved and technical flaws in the

charge are of little importance.  *See Bethel v. Jefferson*, 589 F.2d 631, 644 (D.C. Cir. 1978)

("[T]he basic demand . . . is that the agency be given sufficient, *even if technically flawed* notice

of the grievance") (emphasis added)).

a.  <u>Summary Judgment Should Be Denied Because the ASC Claim Was Within the Scope of the Original Complaint.</u>

Because Title VII administrative charges and related documents must be liberally construed, "an administrative charge specifying a pattern of ongoing discrimination will be interpreted as incorporating instances of subsequent, essentially similar conduct" that are later described in related documents submitted to the EEOC, even absent an "explicit indication of linkage between [a plaintiff's] initial charge and [his] supplemental correspondence." *See Loe*, 768 F.2d at 419-420.  In *Loe*, the plaintiff filed an administrative charge after counseling was unsuccessful, and then supplemented her charge by writing a letter to the Agency to clarify her contentions.  768 F.2d at 417, 419.  The facts of this case are thus even stronger than those of *Loe* because here, it was the Agency who sought to clarify the scope of Mr. Youssef's ambiguous complaint (Ex. 1, BY00029-30), and the supplemental description of subsequent, similar incidents that contributed to the hostile work environment was explicitly linked to the initial charge. See  Ex. 1, BY00028, 38.

In the admittedly vague complaint filed on February 16, 2010, Mr. Youssef alleged, *inter alia*, a claim of hostile work environment, but did not explicitly refer to the acts underlying his claim.  *See* Ex. 1, BY 00016**.**  Upon realizing the ambiguity of the complaint, the OEEOA contacted Mr. Youssef's counsel on March 23, 2010, to request clarification as to the specific incidents of harassment that occurred, and to inquire as to whether Mr. Youssef intended to include the nonselection for the ASC position allegation within the scope of the original complaint.  *See id.*, BY 00029-30**.**  Mr. Youssef's counsel then responded by expressing Mr. Youssef's intent to include the ASC claim within the original complaint, as an incident that contributed to the hostile work environment.  *Id.* at BY 00028**.**

The FBI's conclusion that the ASC nonselection claim was outside the scope of the initial charge ignores the supplemental communications between OEEOA and Mr. Youssef's counsel. Significantly, the FBI was in full possession of the clarifying emails (and produced them in discovery), yet inexplicably failed to reference these communications in their Motion. Because of the standard of review associated with summary judgment (all facts and inferences taken in the light most favorable to the plaintiff), these ignored emails in fact are fatal to Defendant's motion. Given the Agency's contemplation that the harassment Mr. Youssef complained of included the nonselection for the ASC position, it is clear that the agency was on notice about the nature of Mr. Youssef's contentions after the original complaint was filed. When the supplemental correspondence is viewed in conjunction with the initial charge, it is clear that Mr. Youssef timely raised the non-selection claim in his initial, formal administrative complaint.

Indeed, the defendant's EEO investigation that flowed from his February 16, 2010, administrative complaint clearly included the non-selection issue. See the May 19, 2010, letter Ex. 1, BY00037-38. The May 19, 2010, letter makes clear that inclusion of the non-selection issue flowed from the February 16, 2010, complaint as clarified in the April 6, 2010, email.

In *Scott v. Waste Mgmt. of Arkansas S.*, No. 5:05CV00059-WRW, 2006 WL 2523439, at *3 (E.D.Ark. Aug.30, 2006), the agency EEO office notified the plaintiff that the issue being investigated was her termination and that if she disagreed with this formulation of the issue she should notify the EEO within seven days.[3] Here, the FBI's OEEOA issued the same type of letter

---

3
    Similarly, in *Green v. Small*, No. Civ.A. 05-1055(ESH), 2006 WL 148740, (D.D.C. Jan.19, 2006), another case cited by *Sellers,* the plaintiff sought to include in his judicial complaint retaliation claims, including a claim of retaliatory hostile work environment, that were not administratively exhausted. In dismissing these claims for want of administrative exhaustion, the court stated:

> [the retaliation claims] challenged by defendant were neither presented by plaintiff [to the agency] by **amendment nor included among those accepted for investigation** during the processing of [his] administrative complaint. To the contrary,

on May 19, 2010.  This letter included the non-selection claim at issue in the instant motion.

Thus, while Seller's failure to contest the statement of issues approved for investigation

constituted a waiver, Youssef's failure to contest the statement of issues in the May 19, 2010,

letter ***preserved*** the issues stated in that letter.  Mr. Renner's declaration explains how the

OEEOA's May 19, 2010 letter, correctly stated the issues and that is why he did not object or

seek further correction. Ex. 2, Renner Declaration, p. 6, ¶ 21.

In Mr. Youssef's case, the parties continued to participate in counseling and mediation

after the February 2, 2010, counseling, and after the February 16, 2010, complaint. If that

mediation had been successful, it would naturally have resolved the non-selection for ASC issue.

To the extent that there was any doubt about the scope of investigation for the February 16, 2010,

complaint, the OEEOA undertook the communication necessary to resolve that doubt.  The

March 23, 2010, email directly asked for clarification, and the April 6, 2010, email from Mr.

Renner answered directly that the complaint did include the ASC non-selection claim. The non-

selection issue, therefore, reasonably flowed from the February 16, 2010, complaint.

    b.  <u>Summary Judgment Should Be Denied Because The EEO Investigated the ASC Claim Under Theories of Discrimination and Retaliation.</u>

Even assuming, *arguendo*, that the ASC claim was not part of the initial complaint, the

FBI has still failed to meet their burden because the OEEOA accepted the ASC claim for

---

when notified of the single alleged instance of retaliation it had accepted for investigation, **plaintiff made no attempt to augment the accepted allegation or amend his complaint prior to the conclusion of the investigation**-this despite the Institution's express invitation to do so in its September 25, 2002, Notice of Acceptance of Discrimination Complaint. This is simply not a case where the plaintiff diligently pursued the retaliation claims challenged by defendant.

Here, Mr. Youssef clarified the scope of his February 16, 2010, complaint, and amended his complaint, before the investigation ever began. Thus, the defendant here did have all the notice and opportunity for administrative resolution provided by Title VII.

investigation, thereby achieving the purpose of exhaustion (notice and a fair opportunity to investigate and resolve the claim).

The purpose of a charge is to "trigger the investigatory and conciliatory procedures of the EEOC." *Sanchez*, 431 F.2d at 466[4]; *accord Graniteville Company (Sibley Division) v. EEOC, 438 F.2d 32*, 38 (4th Cir. 1971); *EEOC v. E.I. DuPont de Nemours and Co., Chesnut Run and Affiliated Facilities*, 373 F. Supp. 1321, 1335 (D.De 1974) ("an individual charge operates not so much as a formal accusatory instrument like an indictment but, rather, as the first step in the investigatory process that must be free to define relevant areas of inquiry as it unfolds"); *EEOC v. General Electric Co.*, 532 F.2d 359, 364 (4th Cir. 1976) (describing the charge as "a starting point" for a reasonable investigation).

Should the investigation and conciliatory procedures fail to resolve the matter, it is only then that a civil action becomes an option. Accordingly, "it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." *Sanchez*, 431 F.2d at 466; *accord EEOC v. E.I. Dupont*, 373 F. Supp. at 1335 ("The precise language of the charge, therefore, provides less guidance for subsequent proceedings then the general character of the grievances to which the charge alludes"). It follows, then, that claims which are "investigated by the EEOC, or which can *reasonably be expected* to grow out of a charge of discrimination" may be brought before a federal court. *Sanchez*, 431 F.2d at 466[5] (emphasis added); *accord Velikonja v. Mueller*, 315

_____

[4]

    As the court in *Hansen v. Billington*, 644 F.Supp.2d 97, 104-05 (D.D.C. 2009) explained, *Sanchez* is fully applicable in circumstances where cases have "been exhaustively processed at the administrative level."

[5]

 This principle is unaffected by the Supreme Court's holding in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) that each discrete adverse employment action individually triggers Title VII's limitation period. *See Velikonja v. Mueller*, 315 F.Supp.2d 66, 74-75 (D.D.C. 2004) (finding that *Morgan* only prohibits review of claims that plaintiff presents "for the first time in

F.Supp.2d 66, 74 (D.D.C. 2004) (holding that counts which were presented by amendment and included among those accepted for investigation during the processing of her complaint "must be considered exhausted and cannot be dismissed" since the Bureau had a 'fair opportunity to provide full redress or to attempt an informal accommodation'), *aff'd in part, rev'd in part on other grounds*, 466 F.3d 122 (D.C. Cir. 2006); *Wade v. District of Columbia*, 780 F.Supp.2d 1, 14 (D.D.C. 2011) (*quoting Park*, 71 F.3d at 907); *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992) (finding that additional charges not initially in the complaint were nevertheless acceptable because they were developed during a reasonable investigation).

It is well established that "the scope of an EEOC complaint should not be strictly interpreted." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970); *accord Loe*, 768 F.2d at 420 (*citing President v. Vance*, 627 F.2d 353 (D.C. Cir. 1980)). However, the FBI has taken precisely the hyper-technical approach that the D.C. Circuit has condemned for decades. Even if Mr. Youssef did not pursue informal counseling under a theory of discrimination, OEEOA nevertheless had the full allotted opportunity to investigate the ASC claim under this theory.

Thus, we must focus on the scope of the investigation in determining the question of exhaustion. Importantly, the three members of the Career Board who recommended the top three candidates for the ASC position, Arthur J. Zarone, Hipolito Castro Jr., and Erkan A. Chase, were all asked whether they were aware of Mr. Youssef's race and national origin. *See id.*, BY 47 ("Castro said he does not know Youssef's race or national origin"), BY 48 ("Chase stated that he does not know Youssef's race. Based on personal observation and conversation that he has had with Youssef, Chase said that he perceives Youssef's national origin to be Egyptian"), BY 50 ("Zarone advised that based on his personal observations and conversations he has had with federal court"), *aff'd in part, rev'd in part on other grounds*, 466 F.3d 122 (D.C. Cir. 2006).

Youssef, he perceives Youssef's race to be Caucasion, and his national origin to be Egyptian").

Accordingly, it is of no consequence that Mr. Youssef did not explicitly ask for counseling under

a theory of national origin discrimination.

"At a minimum, the Title VII claims must arise from the administrative investigation that

can reasonably be expected to follow the charge of discrimination." *Wade*, 780 F.Supp.2d at 11

(*quoting Park*, 71 F.3d at 907). Limiting the scope of the civil action is necessary to ensuring the

integrity of the statutory scheme, which gives the EEOC the first crack at settling the matter

voluntarily. *See Sanchez*, 431 F.2d at 467. Here, however, there is nothing to suggest that Mr.

Youssef is attempting to circumvent the statutory scheme. In contrast, Mr. Youssef is fully

compliant because he only instituted this civil action after the OEEOA had a full opportunity to

investigate his nonselection claim.

   c.   Summary Judgment Should Be Denied Because Any Defect in the Initial
        Complaint Was Remedied By the Amended Complaint, Which Included A
        Claim That Related Back to the Original Complaint.

Mr. Youssef's February 16, 2010, formal complaint was timely, and the April 29, 2010,

amended formal complaint was properly filed before the conclusion of the OEEOA's

investigation. Additionally, the subject matters of the February 16 and April 29 complaints are

"like or related." *See* 29 C.F.R. § 1614.106(d). ("A complainant may amend a complaint at any

time prior to the conclusion of the investigation to include issues or claims like or related to

those raised in the complaint. After requesting a hearing, a complainant may file a motion with

the administrative judge to amend a complaint to include issues or claims like or related to those

raised in the complaint.").

The jurisprudential goals of allowing amended complaints to relate back apply equally to

administrative complaints, such as those filed in accordance with 29 C.F.R. § 1614.106. Rule

15(c) serves to "provide the opportunity for a claim to be tried on its merits, rather than being

dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed." *Tischler v. Baltimore Bancorp*, 801 F. Supp. 1493, 1497 (D. Md. 1992) (citations omitted). This is consistent with the Federal Rules in general, which "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 103 (1957) (citation omitted). Just as amended complaints relate back to the date of the original complaint under Fed. R.Civ.Proc. 15(c), courts have held that amended EEO complaints also relate back to the date of a timely-filed administrative complaint.  *Peterson v. City of Wichita*, 888 F.2d 1307, 1308-09 (10th Cir. 1989) (permitting relation back where plaintiff submitted to the EEOC a timely though unverified charge); *see also Edelman v. Lynchburg Coll.*, 300 F.3d 400, 403-04 (4th Cir. 2002); *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1306-07 (11th Cir. 2001).

Indeed, the D.C. Circuit has applied 29 C.F.R. § 1614.106(d) to an amended complaint and held that the amended complaint successfully gave the agency notice of the claim and an opportunity to resolve it administratively before the civil action was filed.  *Weber v. Battista*, 494 F.3d 179, 183-84 (D.C. Cir. 2007).  A careful comparison of *Weber* to this case reveals that the same outcome should apply here as well. Enid Weber made her first request for EEO counseling in 1997 with the NLRB's EEO office. The D.C. Circuit makes no mention of the grounds alleged in the initial request for counseling.  Subsequently, Ms. Weber submitted a timely formal administrative complaint asserting non-selection for an acting deputy position, a downgrade of her evaluation, and other adverse actions.  In 1999, she submitted a letter to the same EEO office adding a claim of nonselection for a permanent deputy position.  To determine if this amendment was "like or related to" the pending claim, the *Weber* Court looked to one precedential decision

from the EEOC, *Core v. Brownlee*, EEOC Appeal No. 01A34550, 2004 WL 189570 (Jan. 23, 2004).[6]  There, the EEOC stated:

> A later claim or complaint is "like or related" to the original complaint if the later claim or complaint adds to or clarifies the original complaint and could have reasonably been expected to grow out of the original complaint during the investigation.

In *Core*, the EEOC held that a claim of pre-termination sexual harassment (which included a threat of termination if complainant refused to engage in sexual acts) was "like or related" to her pending claim alleging a discriminatory termination.  The EEOC held that, "There is no requirement that the amendment be subject to counseling." Applying *Core*, the *Weber* court held as follows:

> . . . Weber exhausted her administrative remedies with regard to her claim of discriminatory nonselection for the position of Deputy Executive Secretary. As contemplated in 29 C.F.R. § 1614.106(d) and *CORE*, that claim "could have reasonably been expected to grow out of" her earlier complaint concerning her nonselection as Acting Deputy Executive Secretary, and the two are therefore "like or related." The OEEO may entertain such a claim even though it was raised after the filing of the formal administrative complaint, 29 C.F.R. § 1614.107(a)(2), and here the OEEO did just that; by inquiring of Weber's immediate supervisor, Executive Secretary John Toner, the OEEO investigated and put the Board on notice of the matter. Therefore, we conclude Weber gave the Board an opportunity to resolve her claim administratively before she filed her complaint in district court. Accordingly, we remand this aspect of the case for the district court to resolve on its merits Weber's claim with respect to her nonselection as Deputy Executive Secretary.

Hence, just like the plaintiff in *Weber*, Mr. Youssef exhausted his administrative remedies since his non-selection claim could reasonably have been expected to grow out of his prior complaint about FBI management stunting his career.  Defendant's motion reaches for a stretch when it claims that the April 29, 2010 amended complaint is not "related to" the February 16, 2010, original complaint. Both complaints challenge the way that Mr. Youssef's supervisors are stunting his career. Both draw on the way that his

---

6       Available at http://www.eeoc.gov/decisions/01A34550_r.txt

supervisor, Mr. Arthur Zarone, criticized him for letting his "legal matter" become a "distractor." The decision-makers overlap. The reliefs sought focus on career advancement. The animus against Mr. Youssef's protected activity is the same. Holding that the two are "related" would better advance Title VII's remedial purpose under *Holowecki,*[7] which focuses on the "request by the employee for the agency to take whatever action is necessary to vindicate [his] rights[,]". 552 U.S. at 398.

The federal Merit System Protection Board (MSPB) has jurisdiction over federal employee Title VII claims in "mixed cases." Similarly, MSPB has stated, "A complainant may amend a complaint at any time prior to the conclusion of the investigation, however, to include issues or claims like or related to those raised in the complaint." *Cano v. United States Postal Service*, Case No. 2007 MSPB 273, 107 M.S.P.R. 284 (Nov 28, 2007), p 8.[8] The MSPB adds, "There is no requirement that an amendment be subject to counseling." Id. at 9, citing *Core*.

The regulation does not require an amendment to add a claim that arose subsequent to the claims asserted in the pending complaint. Indeed, in *Core*, the sexual harassment claim arose *before* the termination that was the subject of the original complaint. The *Weber*, *Core* and *Cano* c holdings do not depend on whether the added claim arises from a previous or subsequent adverse action. Here, the claims were sufficiently related so that the FBI's OEEOA consolidated them for a single investigation. R-21-1, pp. 58-59. They are also sufficiently related that evidence of one would be admissible as background evidence of motive in support of the other. *Accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

---

7       *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008).
8       Available at http://www.mspb.gov/netsearch/viewdocs.aspx?
docnumber=300694&version=301050&application=ACROBAT

The Supreme Court's decision on *Holowecki* adds to the jurisprudence supporting a decision on the merits of Mr. Youssef's claims. *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). In *Holowecki*, the Supreme Court held that a filing is to be deemed a charge if it must reasonably be construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee. The proper test, according to the Court, is "whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 390, 398 In *Holowecki*, the Supreme Court held that the complainant's response to an investigatory questionnaire along with an affidavit constituted a valid administrative complaint. The *Holowecki* decision makes clear that in administrative actions, not even notice pleading is required. Fed. R. Civ. Proc. 8 does not apply. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937 (2009), do not apply. The Supreme Court added:

> It is true that under this permissive standard a wide range of documents might be classified as charges.
>
> ***
>
> The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft.  552 U.S. at 403.

Mr. Youssef's February 16, 2010 original administrative complaint complied with the applicable EEOC regulation (29 C.F.R. § 1614.106(a)) and it clearly requested relief for his career advancement. It requested, "Restoration of his career to the level of advancement it would have but for the reprisals, including back pay and reinstatement." Because it complied with the applicable regulation and clearly sought relief, this complaint meets the requirements of *Holowecki* to challenge the denial of his promotion to ASC. The April 29, 2010, amended complaint also complies with the applicable EEOC regulation (29 C.F.R. § 1614.106(d)) and

seeks the relief sought here.  It also meets the *Holowecki* standard to constitute a valid complaint. Under *Holowecki*, it is no longer appropriate to parse administrative complaints the way that complaints in civil actions are analyzed under Fed. R. Civ. Proc. 8. The remedial purpose of Title VII calls for a minimalist set of requirements focused on the expression of a desire for relief.

Defendant's motion does not point to any EEOC regulation that prohibits a complainant from adding allegations as to the unlawful bases for the decision-maker's motive at the formal complaint stage. The regulations do not even require that the request for informal counseling be in writing, let alone specify all the legal grounds for the complaint. Indeed, one of the purposes of the initial informal counseling is to help the complainant assess the proper legal grounds for the complaint. That way, the complainant can properly shape the scope of the formal complaint before the agency commences the formal investigation. The short time limit for the initial request for counseling does not always permit federal employees to retain and consult with legal counsel. As such, it is appropriate that the initial request is not required to specify legal grounds. That is the role of the formal administrative complaint. Here, the February 16, 2010 formal complaint clearly had the boxes for race, national origin and reprisal checked.  Thus, the agency had notice of Mr. Youssef's assertions of discrimination on the basis of race, national origin and reprisal before it began any formal investigation.

The Defendant's motion glossed over the effect of the amendment when it stated that *Sellers v. Dep't of Defense,* No. 07-418S, 2009 WL 559795, at *10 (D.R.I. Mar. 4, 2009) holds, "that plaintiff did not exhaust administrative remedies with respect to retaliation claim when she raised it in counseling but not in formal EEO complaint[] (citing cases)." One of the cases cited by *Sellers* was *Scott v. Waste Mgmt. of Arkansas S.*, No. 5:05CV00059-WRW, 2006 WL 2523439, at *3 (E.D.Ark. Aug.30, 2006). *Sellers* cited *Scott* for the idea that "[i]f the charge did not accurately reflect [p]laintiff's allegations or intentions in initiating the EEOC proceedings,

[p]laintiff should have amended the Charge to cure technical defects"). Mr. Youssef's counsel did exactly that.

The defendant's motion does not cite any prejudice that defendant suffered during the administrative process.[9] The agency clearly accepted the April 29, 2010 amended formal complaint, and launched its investigation of all the allegations.  It took more than double the normal allotted time of 180 days for its investigation, and still had not issued any decision as of the filing of the complaint in this Court. Mr. Youssef gave the agency all the notice required by the applicable EEOC regulations, and gave the agency a fair and full opportunity to resolve his complaints at the administrative level.

Accordingly, Mr. Youssef asks this Court to overrule the defendant's motion [R-21] for judgment on the pleadings, and for summary judgment.

## VII.    THE FBI'S CASES ARE INAPPOSITE.

The cases cited by defendant are distinguishable, immaterial, or helpful to the plaintiff here. For example, *Miller v. Smith*, 584 F. Supp. 149, 154 (D.D.C. 1984), holds as follows:

> The issues plaintiff may raise in a Title VII action are limited to those within the scope of the administrative investigation which grows or could reasonably be expected to grow out of the administrative charge of discrimination. *Clark v. Chrysler Corp.*, 673 F.2d 921 (7th Cir.1982); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970); *Lamont v. Forman Bros. Inc.*, 410 F.Supp. 912, 917 (D.D.C.1976). The rationale for this rule is obvious given the purpose of the exhaustion requirement.
>
>   A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and

---

9

    An affirmative showing of prejudice resulting from an unreasonable delay in filing the amendment would be a defense that protects employers from such unfair delay.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) ("[A] party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party").

> attempts to obtain voluntary compliance with the law. Only if the EEOC
> fails to achieve voluntary compliance will the matter ever become the
> subject of court action. Thus it is obvious that the civil action is much
> more intimately related to the EEOC investigation than to the words of the
> charge which originally triggered the investigation. Within this statutory
> scheme, it is only logical to limit the permissible scope of the civil action
> to the scope of the EEOC investigation which can reasonably be expected
> to grow out of the charge of discrimination.

*Sanchez v. Standard Brands, Inc.*, *supra*, 431 F.2d at 466.

In *Bowden v. United States*, 106 F.3d 433, 439 (D.C. Cir. 1997), the Court stated:

> What we have repeatedly stated regarding Title VII exhaustion
> requirements applies here as well: They are " 'practical and pragmatic' ...
> and should not be invoked when [they] serve[ ] no practical purpose."
> *Wilson* [*v. Pena*], 79 F.3d [154] at 165 [(D.C.Cir. 1996)] (quoting *Brown*
> [*v. Marsh*], 777 F.2d [8] at 14 [(D.C.Cir. 1985)] (quoting *President v.
> Vance*, 627 F.2d 353, 363 (D.C.Cir. 1980))).

Other cases cited by defendant address the 45-day time limit to request EEO counseling

(which was met in this case), or equitable tolling (which is immaterial here as Mr. Youssef met

the filing time limits), or both. These cases include *Smith v. Potter*, 445 F.3d 1000, 1006-07 (7th

Cir. 2006) (defendant's memorandum, p. 8, incorrectly used "[meet an EEO filing deadline]"

when the correct antecedent was "[initiate contact with a Counselor within 45 days]"); *Cristwell

v. Veneman*, 224 F. Supp. 2d 54, 59-60 (D.D.C. 2002) (tolling case); *Battle v. Rubin*, 121 F. Supp.

2d 4, 6 (D.D.C. 2000) (same); *Singleton v. Harkin*, No. 97-0227, 1996 WL 33322370, at *3

(D.D.C. Mar. 28, 1996) (same); *Saunders v. Stone*, 758 F. Supp. 1143, 1144 (E.D. Va. 1991)

(same).

## CONCLUSION

Based on the aforementioned facts and arguments, we respectfully request that this court

deny Judgment on the Pleadings and deny the Defendant's Motion for Summary Judgment. A

proposed order follows.

Respectfully submitted,

/s/Richard R. Renner
Richard R. Renner, D.C. Bar #987624
Stephen M. Kohn, D.C. Bar #411513
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, DC 20007
(202) 342-6980
sk@kkc.com, rr@kkc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of January, 2012, I filed this memorandum

through this Court's electronic case filing system and thereby caused notice of electronic filing to

be served on all counsel of record, including:

Javier Guzman,
Assistant U.S. Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
Email: Javier.guzman2@usdoj.gov

Respectfully submitted,

/s/Richard R. Renner
Richard R. Renner, D.C. Bar #987624
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ ) | |
| BASSEM YOUSSEF, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **C.A. No. 1:11-CV-01362-CKK** |
| ) | |
| ERIC HOLDER, ) | |
| U.S. Attorney General ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

[PROPOSED] **ORDER**

This matter is before the Court on the Defendant's Motion for Judgment on the Pleadings and Alternate Motion for Summary Judgment [R-21]. For good cause shown, the motion is DENIED.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE