**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BASSEM YOUSSEF,

      Plaintiff,

   v.

ERIC H. HOLDER, JR., United States Attorney General,

      Defendant.

Civil Action No. 11-01362 (CKK)

**MEMORANDUM OPINION AND ORDER**
(August 7, 2012)

Bassem Youssef ("Youssef"), an employee of the Federal Bureau of Investigation (the "FBI"), brings this action against the United States Attorney General (the "Attorney General") under Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Youssef, an Egyptian-born American citizen, asserts two overarching claims—one sounding in discrimination and the second sounding in retaliation—each challenging his non-selection for an Assistant Section Chief position in the FBI's Counterterrorism Division Communications Exploitation Section.

Currently before the Court is the Attorney General's [21] Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment ("Motion for Summary Judgment"). The Attorney General contends that Youssef cannot pursue his non-selection claims in this case because he failed to exhaust his administrative remedies. Upon careful consideration of the

---

[1] Originally, Youssef also brought suit against three other federal actors, but he later voluntarily dismissed those defendants from the case. *See* Stipulation, ECF No. [11].

parties' submissions, the relevant authorities, and the record as a whole,[2] the Court finds that Youssef exhausted his administrative remedies. Therefore, the Attorney General's Motion for Summary Judgment shall be DENIED.

## I. BACKGROUND

### A. *The Scope of this Action*

Sometime in September 2009, the FBI announced a vacancy for the Assistant Section Chief in the Counterterrorism Division's Communications Exploitation Section. Def.'s Stmt. ¶ 1; Pl.'s Resp. Stmt. ¶ 1. Youssef applied for the position, but, on November 24, 2009, he was informed that he had not been selected. Def.'s Stmt. ¶ 1; Pl.'s Resp. Stmt. ¶ 1. Youssef commenced this Title VII action on July 25, 2011, claiming that his non-selection was discriminatory based on his Egyptian-national origin and retaliatory due to his participation in prior Equal Employment Opportunity ("EEO") activity. *See* Compl., ECF No. [3], ¶¶ 65-72. Youssef's prior EEO activity included a separate lawsuit brought in this Court. *See generally Youssef v. FBI*, __ F.3d __, 2012 WL 2948520 (D.C. Cir. July 20, 2012).

---

[2] While the Court bases its decision on the record as a whole, its consideration has focused on the following documents: Def.'s Mem. in Supp. of Mot. for J. on the Pleadings, or, Alternatively, for Summ. J. ("Def.'s Mem."), ECF No. [21]; Def.'s Stmt. of Genuine [sic] Facts Not in Material Dispute ("Def.'s Stmt."), ECF No. [21-2]; Pl. Youssef's Mem. in Opp'n to Def.'s Mot. for J. on the Pleadings or for Summ. J. ("Pl.'s Opp'n"), ECF No. [24]; Pl. Bassem Youssef's Stmt. of Material Facts in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp. Stmt."), ECF No. [24-3]; Def.'s Reply in Supp. of Mot. for J. on the Pleadings or, Alternatively, for Summ. J. ("Def.'s Reply Mem."), ECF No. [26]; Def.'s Resp. to Pl.'s Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Reply Stmt."), ECF No. [26-1]. The motion is fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

B.       *Youssef's Counseling Request and Administrative Complaint*

On October 26, 2009, Youssef received a copy of his 2009 Performance Appraisal Report. Def.'s Stmt., Ex. 1 (Request for Counseling) at 1. On November 12, 2009, he initiated counseling based on his performance downgrade. *Id.*

On November 24, 2009, Youssef learned that he was not selected for the Assistant Section Chief position in the Communications Exploitation Section. Def.'s Stmt. ¶ 1; Pl.'s Resp. Stmt. ¶ 1. When Youssef met with an EEO counselor on December 1, 2009, the counseling session covered both Youssef's performance downgrade and his non-selection for the Assistant Section Chief position. Def.'s Stmt. ¶ 3 & Ex. 2 (Report of Counseling) at 5-6; Pl.'s Resp. Stmt. ¶ 3. At the time, Youssef asserted that his non-selection was based upon his prior EEO activity. Def.'s Stmt., Ex. 2 (Report of Counseling) at 4, 6.

Subsequent counseling sessions addressing Youssef's performance downgrade and his non-selection were held through February 2010. *Id.* at 6-8. At the final session on February 2, 2010, Youssef was accompanied by his legal counsel. *Id.* at 8. As in prior sessions, the discussion touched on both personnel actions challenged by Youssef—*i.e.*, his performance downgrade and his non-selection. *Id.* Ultimately, however, the participants were unable to resolve Youssef's concerns. *Id.* Accordingly, at the conclusion of the session, the EEO counselor issued Youssef a notice of his right to file a formal administrative complaint and advised Youssef that he had fifteen days to file. Def.'s Stmt. ¶ 4; Pl.'s Resp. Stmt. ¶ 4. Youssef was warned that "[t]he complaint must be specific and encompass only those matters discussed [during the counseling sessions]." Def.'s Stmt., Ex. 3 (Notice of Right to File Compl.) at 1. The EEO counselor offered Youssef assistance in preparing a formal complaint, but Youssef declined the offer. Def.'s Stmt. ¶ 4; Pl.'s Resp. Stmt. ¶ 4.

Youssef, through counsel, filed a formal administrative complaint on February 16, 2010—within the fifteen-day window. Def.'s Stmt. ¶ 5; Pl.'s Resp. Stmt. ¶ 5. Youssef's complaint identified the following four acts as the bases for his complaint:

> 1[.]  Mr. Youssef's performance appraisal report (PAR) was lowered on October 26, 2009 on account of his Middle Eastern and Arabic race and national origin, and on account of his prior protected EEO activity.
>
> 2.  On January 20, 2010, [the FBI and the Department of Justice Office of Inspector General ("OIG")] issued an OIG report that made findings against [Youssef's] reputation and threatened him with discipline.
>
> 3.  On or about January 21, 2010, [the FBI and OIG] threatened Mr. Youssef with hostile investigation and discipline.
>
> 4.  From 2007 to present, [the FBI and OIG] have maintained a hostile work environment for Mr. Youssef, including but not limited to the FBI-OIG investigation. See Mr. Kohn's October 9, 2007, letter to Ms. Venture, incorporated here by reference.[3]

Def.'s Stmt., Ex. 4 (Compl. of Discrimination) at 1. Youssef alleged that each act was discriminatory based on his national origin and retaliatory based upon his participation in prior EEO activity. *Id.* Youssef's complaint made no explicit mention of his non-selection for the Assistant Section Chief position.

On February 24, 2010, the FBI's EEO Office informed Youssef, through his counsel, that his administrative complaint was under "review" and that he would be informed at a later date

---

[3] In the referenced letter, dated October 9, 2007, Youssef alleged that he was (1) confused with another agent "with an Arabic sounding name," (2) prevented from participating in certain meetings, (3) exposed to "particular hostility" by the Office of General Counsel, (4) subjected to "derogatory comments," (5) targeted with "false statements" and efforts to "destroy [his] reputation," (6) restrained by "illegal gag orders," and (7) threatened with termination "if he did not agree to being questioned without the presence of his attorney." Def.'s Stmt., Ex. 4 (Oct. 9 , 2007 Ltr.) at 1-2. The letter obviously makes no reference to Youssef's non-selection for the Assistant Section Chief position because it predated that personnel action by well over two years.

"[a]s to which bases and allegations of discrimination" would be accepted for investigation. Pl.'s Resp. Stmt. ¶ 45; Def.'s Reply Stmt. ¶ 45. On March 23, 2010, the FBI's EEO Office, acting on its own accord, solicited clarification from Youssef concerning the scope of his administrative complaint. Pl.'s Resp. Stmt. ¶ 48; Def.'s Reply Stmt. ¶ 48. The EEO Office asked for clarification about the scope of Youssef's hostile work environment claim:

> A review of the . . . complaint indicates that your client believes that he was subjected to a hostile work environment . . . . To continue processing your client's EEO complaint, we request that you provide the following clarification information regarding the alleged discriminatory incidents in your client's EEO complaint: Please explain **each** incident and give the specific date(s) of **all** alleged incidents of harassment your client has experienced in the workplace from 2007 to the present.

Pl.'s Resp. Stmt., Ex. 1 (Mar. 23, 2010 E-mail) at BY 00029-00030. The EEO Office also had the following to say about Youssef's non-selection claim:

> [A] review of the report of counseling indicated that your client was not selected for an Assistant Section Chief position in the Communications Exploitation Section, Counterterrorism Division. However, your client did not raise this allegation in the . . . complaint. If you client wishes to include this allegation in the above-captioned complaint, please provide the date he became aware that he was not selected for the Assistant Section Chief position.

*Id.* at BY 00030. The EEO Office warned Youssef that if the requested information was not provided within fifteen days, Youssef's entire complaint could be dismissed. *Id.* (citing 29 C.F.R. § 1614.107(a)(7)).

Youssef, through his counsel, responded to the EEO Office's request for additional information on April 6, 2012, before the FBI had started its investigation. Pl.'s Resp. Stmt. ¶¶ 51, 56; Def.'s Reply Stmt. ¶¶ 51, 56. With respect to Youssef's hostile work environment claim, Youssef stated that he could not "provide . . . the details [the FBI] requested of 'all' the

5

incidents," but he nonetheless provided eight "examples." Pl.'s Resp. Stmt., Ex. 1 (Apr. 6, 2010 E-mail) at BY 00028. One "example" was described as follows:

> On November 24, 2009, my client received notice that he was not selected for the ASC position. Of all the applicants who have applied for the position during the past three years, my client was the only applicant with more substantial experience in the Section than any of the other applicants. During a December 1, 2009, meeting with [the] EEO counselor . . . , my client requested EEO counseling on his non-selection for the ASC position.

*Id.* Youssef also thanked the EEO Office for asking about his non-selection and "ask[ed] that [the EEO Office] . . . include this claim in the current EEO formal complaint." *Id.*

On April 29, 2010, Youssef, though counsel, filed an amended administrative complaint with the FBI's EEO Office. Def.'s Stmt. ¶ 8; Pl.'s Resp. Stmt. ¶ 8. In his amended complaint, Youssef restated his hostile work environment claim in the same form as before. Def.'s Stmt., Ex. 6 (Am. Compl. of Discrimination) at 1. He also asserted a stand-alone claim based on his non-selection for the Assistant Section Chief position, alleging that "[o]n or about November 24, 2009, the FBI gave Mr. Youssef notice that he was not selected for an ASC position." *Id.*

On May 19, 2010, the EEO Office informed Youssef's counsel that it would commence an investigation and defined the scope of that investigation in the following manner:

> [T]he following allegations will be accepted for investigation:
>
> Whether complainant was discriminated against and subjected to a hostile work environment based on race (Arabic), national origin (Middle Eastern)[,] and reprisal for prior participation in protected EEO activity when[,] from approximately February 2006 through January 2010, including, but not limited to the following: . . . on November 24, 2009, complainant received notification that he was not selected for an Assistant Section Chief position in the Communications Exploitation Section of the FBI's Counterterrorism Division[.]

Pl.'s Resp. Stmt., Ex. 1 (May 19, 2010 Ltr.) at BY 00038.

6

It is not clear whether the FBI ever conducted an investigation into Youssef's administrative complaint, let alone what the scope of that investigation might have been. It is clear, however, that the FBI never issued a final decision resolving Youssef's complaint. Def.'s Stmt. ¶ 11; Pl.'s Resp. Stmt. ¶ 11. The FBI's failure to issue a final decision was not for a lack of time; almost a year and a half elapsed between the filing of Youssef's administrative complaint and the commencement of this action.

## II.  LEGAL STANDARD

Although styled in the alternative as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), both parties effectively treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56 and submit statements in accordance with Local Civil Rule 7(h). Youssef, for his part, does not suggest that he "cannot present facts essential to justify [his] opposition. Fed. R. Civ. P. 56(d). In fact, he insists that the motion should be treated as one for summary judgment. *See* Pl.'s Opp'n at 8. Even though at least some of the materials relied upon by the parties could be considered under Rule 12(c), the Court shall, out of an abundance of caution, exercise its discretion to treat the motion solely as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to

7

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

## III.  EXHAUSTION DOCTRINE

Before commencing suit under Title VII, federal employees must fully exhaust their administrative remedies, and they must do so in a timely manner. *See* 42 U.S.C. § 2000e-16(c); *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). Under the broad authority conferred upon it by Congress, the Equal Employment Opportunity Commission "has established detailed procedures for the administrative resolution of discrimination complaints" raised by federal employees. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Two of those procedures are of particular relevance to this action.

First, an "aggrieved" federal employee "must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The limitations period begins to run when the employee "knew, or should have known, about the alleged discriminatory action." *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). Because "[t]he purpose of EEO counseling is . . . to enable the agency and its employee to try to informally resolve the matter before an administrative charge is filed," the employee must provide "sufficient information to enable the agency to investigate the claim." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) (quotation marks omitted). That is, "[c]laims must be brought to the EEO Counselor in a manner that lends itself to potential resolution." *Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C. Cir. 1998).

Second, if the matter is not resolved after the counseling period, the employee must file a formal written administrative complaint with the allegedly discriminating agency within fifteen

9

days after receiving notice from the EEO counselor. *See* 29 C.F.R. § 1614.106(a)-(b). While the administrative complaint requirement "should not be construed to place a heavy technical burden" on the plaintiff, it is "not a mere technicality" and the district court "cannot allow liberal interpretation of an administrative [complaint] to permit a litigant to bypass the . . . administrative process." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quotation marks and citations omitted), *cert. denied*, 519 U.S. 811 (1996). The formal complaint must "be sufficiently precise . . . to describe generally the action(s) or practice(s) that form the basis of the complaint." 29 C.F.R. § 1614.106(c). Because filing a formal complaint is an independent prerequisite to exhaustion, a plaintiff "cannot rely on [an] EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint." *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012). If the employee later brings suit in federal court, he will be limited to pursuing those "claims that are like or reasonably related to the allegations of the [complaint] and growing out of such allegations." *Park*, 71 F.3d at 907 (quotation marks omitted).

These administrative time limits are not jurisdictional but rather are akin to statutes of limitations. *Bowden*, 106 F.3d at 437. Ordinarily, "the plaintiff who fails to comply, to the letter, with administrative deadlines . . . will be denied a judicial audience." *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (quotation marks omitted). The district court may not consider a claim that has not been properly exhausted absent a basis for applying equitable tolling, estoppel, or waiver. *See Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008).

## IV.  DISCUSSION

Youssef seeks to pursue two Title VII claims in this action—one for discrimination and the second for retaliation—each challenging his non-selection for the Assistant Section Chief position in the Communications Exploitation Section.  *See* Compl. ¶¶ 65-72.  The Attorney General now contends that Youssef cannot pursue his claims on the basis that he failed to exhaust his administrative remedies.  The Court disagrees.  The Court addresses the Attorney General's two overarching arguments in turn.

    *A.*      *The Scope of Youssef's Original Administrative Complaint*

The Attorney General's first argument, distilled to its essence, is that Youssef cannot pursue either of his claims because his original administrative complaint made no explicit mention of his non-selection for the Assistant Section Chief position.  *See* Def.'s Mem. at 7-12.  But before the Court reaches this argument, it pauses to emphasize what is not in dispute: Youssef initiated informal EEO counseling within the forty-five-day window and the counseling that ensued clearly addressed his non-selection for the Assistant Section Chief position.  Def.'s Stmt. ¶¶ 2-3; Pl.'s Resp. Stmt. ¶¶ 2-3.  Thus, the only question at this point is whether Youssef has satisfied the second requirement of administrative exhaustion—*i.e.*, the filing of a sufficiently detailed administrative complaint within fifteen days of the conclusion of informal counseling.  *See* 29 C.F.R. § 1614.106(a)-(b).

In this regard, the Attorney General readily concedes that Youssef filed an administrative complaint within the fifteen-day window, but he maintains that the administrative complaint was insufficient because it did not mention Youssef's non-selection for the Assistant Section Chief position.  *See* Def.'s Mem. at 9.  That much is true, but Youssef's administrative complaint did allege that "[f]rom 2007 to present, [the FBI and OIG] have maintained a hostile work

environment for Mr. Youssef, including but not limited to the FBI-OIG investigation." Def.'s Stmt., Ex. 4 (Compl. of Discrimination) at 1. Youssef admits, and the Court agrees, that this sweeping and non-specific statement is aptly characterized as "vague" and "ambiguous." Pl.'s Opp'n at 10. Had that been the end of the matter, the Court might very well be left to conclude that Youssef failed to exhaust his administrative remedies.

But that was not the end of the matter. Presented with Youssef's sweeping and non-specific description of his hostile work environment claim, the FBI's EEO Office, quite sensibly, sought clarification from Youssef about the scope of his claim. Specifically, the EEO Office afforded Youssef the opportunity to "explain each incident and give the specific date(s) of all alleged incidents" comprising his hostile work environment claim. Pl.'s Resp. Stmt., Ex. 1 (Mar. 23, 2010 E-mail) at BY 00029 (emphasis omitted). When the EEO Office asked for this additional information, it invoked a regulation requiring a complainant to respond within fifteen days or risk dismissal of his entire complaint. *See id.* (citing 29 C.F.R. § 1614.107(a)(7)[4]). Youssef took advantage of this opportunity, providing the FBI's EEO Office with a timely, clarifying description of the scope of his hostile work environment claim. *See* Pl.'s Resp. Stmt.,

---

[4] The cited regulation provides:

> Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . . [w]here the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal. Instead of dismissing for failure to cooperate, the complaint may be adjudicated if sufficient information for that purpose is available.

29 C.F.R. § 1614.107(a)(7). Courts in this Circuit routinely uphold dismissals of administrative complaints based upon a complainant's failure to cooperate with reasonable requests for additional information. *See, e.g.*, *Koch v. Schapiro*, 777 F. Supp. 2d 86, 89-92 (D.D.C. 2011).

Ex. 1 (Apr. 6, 2010 E-mail) at BY 00028.  That description identified Youssef's non-selection for the Assistant Section Chief position as part of his claim.  *See id.*  Later, when the EEO Office informed Youssef that it would commence an investigation, it stated that its investigation would address, among other things, Youssef's allegation "that he was not selected for an Assistant Section Chief position in the Communications Exploitation Division."  Pl.'s Resp. Stmt., Ex. 1 (May 19, 2010 Ltr.) at BY 00038.

When a district court is asked to evaluate whether an employee has filed a sufficiently detailed administrative complaint, the question is not whether the administrative complaint sets forth the identical legal claims or precise allegations that the employee intends to pursue before the district court.  Rather, the question is whether the legal claims before the district court are "like or reasonably related" to the allegations of the administrative complaint.  *Park*, 71 F.3d at 907 (quotation marks omitted).  That means that, "[a]t a minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the [administrative complaint] of discrimination."  *Id.* (quotation marks omitted).  Youssef has met this minimum threshold.  Although Youssef's initial description of his hostile work environment claim may have been too sweeping to permit the inference that the resultant investigation would have addressed his non-selection, the FBI's EEO Office affirmatively sought, and obtained, clarification as to the scope of Youssef's hostile work environment claim.  With that clarification in hand, the EEO Office was plainly on notice that it needed to include Youssef's non-selection as part of its investigation.  It is therefore reasonable to infer that the investigation would have addressed the same allegations that underlie Youssef's two non-selection claims in this case.  This is sufficient to satisfy the test for "like or reasonably related" claims.

Indeed, the only evidence before the Court that speaks directly to the scope of the actual investigation that the EEO Office intended to conduct supports this inference. *See* Pl.'s Resp. Stmt., Ex. 1 (May 19, 2010 Ltr.) at BY 00038 ("[T]he following allegations will be accepted for investigation: . . . on November 24, 2009, complainant received notification that he was not selected for an Assistant Section Chief position in the Communications Exploitation Section of the FBI's Counterterrorism Division[.]"). The Attorney General observes, accurately, that agencies do not waive a defense based on administrative exhaustion merely by accepting an administrative complaint for investigation. *See* Def.'s Mem. at 13; Def.'s Reply Mem. at 4-5. But preserving a defense is not the same as proving it. The fact that the FBI's EEO Office in fact intended to conduct an investigation covering Youssef's non-selection claim is some evidence that Youssef's administrative complaint was sufficiently specific to reasonably lead to an investigation addressing that claim.[5]

Ultimately, "[t]he exhaustion requirement is a practical and pragmatic one," *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996) (quotation marks omitted), and "should not be construed to place a heavy technical burden" on plaintiffs, *Park*, 71 F.3d at 907 (quotation marks omitted). The back-and-forth that occurred between Youssef and the FBI's EEO Office concerning the scope of his hostile work environment allegations, a process that was initiated and encouraged by the FBI's EEO Office, is precisely the sort of informal dialogue between agencies and employees that courts should encourage. *See Wade v. Sec'y of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986) ("[T]he purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good

---

[5] The Attorney General's assertion that Youssef did not complete counseling on his broader allegations of a hostile work environment is irrelevant because it is undisputed that Youssef did complete counseling on his non-selection allegations. The doctrine of administrative exhaustion does not contemplate rigid adherence to a regime of legal formalism at each successive stage.

14

faith effort by the employee to cooperate with the agency and [the] EEOC and to provide all relevant, available information is all that exhaustion requires."). The Court heartily commends the FBI for engaging in this informal process, but the FBI cannot now credibly claim that Youssef failed to exhaust his administrative remedies when it affirmatively sought out, and obtained, all the information that it needed to investigate and conciliate Youssef's non-selection allegations long before it commenced its investigation.

In reaching this conclusion, the Court does not excuse the imprecision of Youssef's administrative complaint. But because the FBI's EEO Office affirmatively sought and obtained timely clarification about the nature of Youssef's complaint, the Court has no occasion to address the hypothetical scenario in which an employee's administrative complaint identifies only a sweeping and non-specific hostile work environment claim and the employee later attempts to bring a civil action based upon a discrete component act not explicitly mentioned in his administrative complaint. Nonetheless, the Court cautions future litigants that a plaintiff who fails to sufficiently identify the "action(s) or practice(s) that form the basis of the complaint" does so at his peril. 29 C.F.R. § 1614.106(c).

        *B.*      *The Scope of Youssef's Informal Counseling*

The Attorney General's second, narrower argument is that Youssef cannot pursue his national-origin discrimination claim because, although it is uncontested that he completed informal counseling concerning his non-selection for the Assistant Section Chief position, his allegations at that point focused on retaliation and not national-origin discrimination. *See* Def.'s Mem. at 7-12. In this regard, it is true that when Youssef met with an EEO counselor, his allegations appear to have been confined to his belief that his non-selection was based on his prior EEO activity. *See* Def.'s Stmt., Ex. 2 (Report of Counseling) at 4, 6. It is also true that

retaliation is "ideologically distinct" from national-origin discrimination. *Casole v. Johanns*, 577 F. Supp. 2d 138, 142 (D.D.C. 2008). Seizing on these twin observations, the Attorney General cites to two district court cases faulting employees for conflating ideologically distinct categories of discrimination. *See* Def.'s Mem. at 13; Def.'s Reply at 8. However, the Attorney General fails to recognize that neither of the authorities he relies upon faults an employee for failing to differentiate between categories of discrimination during informal counseling. Rather, both cases stand for the principle that employees must differentiate between ideologically distinct categories of discrimination in their administrative complaint. *See Bell v. Donley*, 724 F. Supp. 2d 1, 9 (D.D.C. 2010); *Oliver v. Napolitano*, 729 F. Supp. 2d 291, 298-99 (D.D.C. 2010), *aff'd*, No. 11-5163, 2011 WL 6759576 (D.C. Cir. Dec. 8, 2011). Youssef did not run afoul of this principle in this case because his administrative complaint clearly identified both national-origin discrimination and retaliation as theories for recovery. *See* Def.'s Stmt., Ex. 4 (Compl. of Discrimination) at 1.

Meanwhile, the Attorney General has failed to point this Court to any authority suggesting that the same level of exactitude is required at the informal counseling stage. In fact, all that is required at the informal counseling stage is that an employee identify his concerns with enough specificity "to enable the agency . . . to try to informally resolve the matter before an administrative charge is filed." *Artis v. Bernanke*, 630 F.3d at 1034 (quotation marks omitted). In other words, an employee must raise his concerns "in a manner that lends itself to potential resolution." *Artis v. Greenspan*, 158 F.3d at 1306. Youssef satisfied this lenient standard. Over multiple counseling sessions, the EEO counselor was apprised of the same allegations that Youssef intends to pursue in this case. *See* Def.'s Stmt., Ex. 2 (Report of Counseling) at 4-8. The EEO counselor met with one of the members of the board that was responsible for passing

over Youssef for the Assistant Section Chief position, and the counselor had the opportunity to, and in fact did, inquire about the reasons for Youssef's non-selection.  *See id.*  Youssef's participation in informal EEO counseling was sufficient to lend his dispute to potential resolution.

## V.  CONCLUSION AND ORDER

The remaining arguments tendered by the parties are either without merit or need not be reached in light of the basis for the Court's decision.  For the reasons set forth above, the Court concludes that Youssef exhausted his two non-selection claims.  Accordingly, it is, this 7th day of August, 2012, hereby

**ORDERED** that the Attorney General's [21] Motion for Summary Judgment is DENIED.

**SO ORDERED.**

\_\_\_\_\_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge