## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
BASSEM YOUSSEF,                                        )
                                                       )
                                    Plaintiff,         )
                                                       )
v.                                                     )     Civil Action No.  1:11-CV-01362 (CKK)
                                                       )
ERIC HOLDER,                                           )
ATTORNEY GENERAL                                       )
                                                       )
                                    Defendant.         )
_____)


## PLAINTIFF'S REPORT REGARDING EXPERT AND LAY OPINION TESTIMONY

### I.      INTRODUCTION.

Plaintiff Bassem Youssef, through counsel, hereby files his Report Regarding Expert and

Lay Opinion Testimony.  This report sets forth the expert and/or lay opinion testimony of Mr.

Bassem Youssef and Mr. Edward Curran.  These are the two witnesses in the control of the

plaintiff who will be asked to render opinion testimony in Mr. Youssef's case-in-chief.  Mr.

Youssef may also call two human resources specialists as adverse witnesses in his case, both of

which were identified by the FBI as witnesses in this proceeding.  These two witnesses are Mary

Louise Felder and Tracy North.  These witnesses are not in the control of the plaintiff, but will be

questioned on subject areas consistent with their deposition testimony and the representations as

to their expertise/involvement in this case as set forth in the FBI's Rule 26 report and other

filings by the FBI.

### II.     LEGAL STANDARD

This report concerns the potential lay opinion testimony or expert testimony to be offered

in Mr. Youssef's case-in-chief and testimony that is reasonably anticipated to be introduced in

Mr. Youssef's rebuttal case.  The distinction between expert testimony and lay opinion testimony is significant, and was summarized by this Court in *Youssef v. FBI*, C.A. 03-1551, Second Pretrial Order, p. 14, n. 8 (May 21, 2010) (hereinafter, "*Youssef I, Second Pretrial Order*").  This Court explained as follows:

> "The Court notes that the primary distinction between lay opinion testimony under FRE 701 and expert opinion testimony under FRE 702 is that lay opinions must be based on the witnesses personal knowledge (described in the text of the rule as 'the perception of the witness'), whereas expert opinions are based on the witnesses' application of his own specialized knowledge to the facts of the particular case.  *See* FRE 701, advisory comm. note (2000 amendments) ('[Rule 701] testimony is not based on specialized knowledge within the scope of rule 702, but rather is based upon a layperson's personal knowledge')."

The determination of whether testimony is an expert opinion under FRE 702, or a lay opinion under FRE 701, depends upon whether the testimony is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  This determination is subjective but draws on the history and traditional usage of expert witnesses.  Under Rule 701, lay witnesses are still permitted to provide lay opinion testimony so long as it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Given the context of the proposed testimony, and the fact that much of the testimony may be admissible under FRE 701, some of the objections to the testimony may be better offered during trial, in the context of the witness's actual testimony.  *See*, *DAG Enterprises v. Exxon Mobil*, 2003 U.S. Dist. LEXIS 26406 (D.C.D.C. 2003).

Lay opinion testimony can be admitted on a wide variety of subject matters.  For example, in *U.S. v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008), the court held that a lay witness could testify about the meaning of conversations between conspirators, derived solely from the witness's insider perceptions as a member of that conspiracy.

FRE 701 and 702 distinguish between lay and expert testimony, not lay and expert

witnesses.  A witness may provide both lay and expert opinions in the same case.  *U.S. v. Freeman*, 498 F.3d 893, 903-04 (9th Cir. 2007).   Plaintiff maintains that the proffered testimony of Mr. Youssef and Mr. Curran is admissible pursuant to both rules of evidence.

## II.    MR. CURRAN'S QUALIFICATIONS AND EXPECTED TESTIMONY

Mr. Curran worked for 38 years for the FBI.  Most of his experience is in counterintelligence and intelligence.  *See* Exhibit 1, Resume of Edward J. Curran.  Mr. Curran was Mr. Youssef's ASAC, a supervisory position, while they worked in Los Angeles.  Ever since, Mr. Curran has stayed familiar with Mr. Youssef's career.  Mr. Curran became a GS-15 Unit Chief after 17 years with the FBI.  He was promoted to an ASAC position in 1992 and was further promoted into the Senior Executive Service in 1994.  He retired from the FBI in December 2000 as an SES Level 4.

Mr. Curran has remained active in law enforcement since retiring from the FBI.  *See* Ex. 1.  In 2002, he was named the Deputy Director of the Office of Counterterrorism, State of New Jersey.  In this capacity, he worked closely with FBI officials, primarily through the Joint Terrorism Task Form.  In February 2006, Mr. Curran became the Director of the International and Domestic Liaison, New York City Police Department (NYPD), Intelligence Division.  He held this position until 2014.  In this position, Mr. Curran worked extensively with FBI officials on an operational level concerning ongoing counterterrorism investigations.

As a long-term supervisor and manager within the FBI he worked and had direct experience as a member of various FBI Career Boards.  In this capacity, Mr. Curran gained a thorough understanding of the FBI's career development process.  These processes were substantially identical to the procedure used by the FBI during the selection process for the Assistant Section Chief position at issue in this case.  Furthermore, after retiring from the FBI he

has maintained contacts with various FBI officials and remains familiar with the FBI's

promotional process.  Mr. Curran also is familiar with the written rules governing the FBI

promotional process for GS-15 employees.

Mr. Curran was also directly involved in this case.  Mr. Curran was the formal "verifier"

on key parts of the FD-954 that Mr. Youssef submitted in support of his application for the

Assistant Section Chief position.  Mr. Curran's identity as the "verifier" was set forth in that

document.

Plaintiff intends to call Mr. Curran as a lay opinion witness and as a qualified expert on

the following:

1.      *The Career Board Selection Process.*   Mr. Curran will testify as to the role of

career boards in the FBI promotional process, the role of the Chairman of a Career Board, and

the procedures used by Career Boards.  This would include the right/responsibility of Career

Board members to interview candidates in order to understand their qualifications, especially if

they were not familiar with significant achievements set forth in the FD-954 (the document

reviewed by the Career Board members when rating candidates).  He will also render an opinion

that the failure to interview Mr. Youssef, combined with the fact that the Chairman of the Career

Board did talk with other applicants, was inappropriate.  Mr. Curran will also testify that Career

Board members should review the complete FD-954, and take into consideration years of

experience, the fact that the applicant was employed in the section for which the promotion

would occur and other career milestones reflected in the FD-954.

2.      *The Reasonableness of Mr. Youssef's FD-954 and the Knowledge of*

*Counterterrorism Exhibited by the Career Board Members who Rated Mr. Youssef.*  Mr. Curran

will offer lay opinion testimony concerning the reasonableness of Mr. Youssef's description of

his past experiences set forth in his FD-954.  Mr. Curran will testify based upon his direct personal knowledge and his perceptions developed from years of experience working with FBI agents and managers in the counterterrorism area, that it was reasonable for Mr. Youssef to assume that the members of his Career Board would be fully familiar with the organizations, persons and achievements referenced in Mr. Youssef's FD-954.  This would include knowledge as to the significance of the Director of Central Intelligence Award, the identity of the Blind Sheik and his role as the spiritual leader of Osama bin Laden, the role of the terrorist group Al Gama'a Al Islamiyah (the Islamic Group) in the World Trade Center bombings, as well as other items set forth in Mr. Youssef's FD-954.   He will render an opinion that the representations made in Mr. Youssef's FD-954 were fully appropriate, clearly stated and should have informed reasonable managers with experience in counterterrorism that Mr. Youssef was the most qualified candidate.  The failure of the Career Board members to have knowledge of key aspects of counterterrorism, even if that testimony was true, could have and should have been cured through an interview process.

3.      *Mr. Youssef had the qualifications necessary to be promoted to the Assistant Section Chief and Can Compare Mr. Youssef's Qualifications set forth in his FD-954 to that of Mr. Powers.*  Mr. Curran will testify, based upon his personal knowledge of the FBI, and its agents and managers, his knowledge of the FBI promotional process, and his direct knowledge of Mr. Youssef's expertise, that Mr. Youssef was fully qualified to be promoted to the Assistant Section Chief position.  He will further be asked to compare some of the qualifications set forth in the FD-954 of Mr. Powers (the candidate selected) and set forth in the FD-954 of Mr. Youssef. He will further explain how Mr. Youssef's statement of qualifications was far superior to Mr. Powers' and the ratings given to the two candidates were radically out of sync with any

reasonable understanding of counterterrorism, international relations, and the needs of the FBI's counterterrorism program.

4.      *Within the limits set forth in this Court's Second Pretrial Order Mr. Curran will offer lay opinion testimony as to the baseline of Mr. Youssef's reputation and the impact of the denial of the promotion on that reputation within the counterterrorism community.*  This Court has previously set forth the type of proof necessary for Mr. Youssef to establish injury to his reputation under Title VII. *See Youssef I, Second Pretrial Order*, pp. 8-10.  Mr. Curran will offer opinion testimony consistent with this Court's Second Pretrial Order in order to establish a baseline for Mr. Youssef's professional reputation, and how a promotion from a Unit Chief to an Assistant Section Chief would have impacted his reputation.  *See Youssef I, Second Pretrial Order*, pp. 9-10 ("Plaintiff may elicit testimony from Curran . . . regarding Youssef's good reputation in order to establish a baseline against which later harms to Youssef's reputation may be measured").

Additionally, it is expected that the FBI will argue that a Unit Chief and an Assistant Section Chief are both GS-15 positions, so that a denial of the promotion at issue in this case either did not impact Mr. Youssef's reputation within the FBI or any such impact would have been minimum.  However, Mr. Curran can offer lay opinion and/or expert testimony as to the significant adverse impact on Mr. Youssef's reputation caused by the denial of this promotion. This testimony is consistent with the testimony permitted by this Court in *Youssef I, Second Pretrial Order*, pp. 14-15.  The differences between a GS-15 Unit Chief and a GS-15 Assistant Section Chief within the context of the FBI is "not a topic that is within the common knowledge of the average juror," and thus Mr. Curran's "testimony on this topic will assist the jury to understand the evidence and determine a fact in issue." *Id.*, p. 15.

Furthermore, Mr. Youssef retired from the FBI in September 2014.  This retirement has impacted the scope of reputational damage material to this case.  Prior to September 2014, the impact of the denial of the promotion was highly relevant to Mr. Youssef's standing within the FBI and Mr. Youssef is entitled to damages for this harm.  However, after September 2014, the impact of the denial of the promotion has relevance to Mr. Youssef's post-retirement standing among his former FBI peers now in private practice (or working with other law enforcement agencies), and within the general law enforcement community, which is familiar with the rankings of retired FBI agents.  Mr. Curran can testify as to the standing within these communities of a retired former Unit Chief as compared with a retired Assistant Section Chief, especially in the context of Mr. Youssef's career (i.e. he held a Unit Chief position for eleven years, a time period far in excess of most FBI agents).  Mr. Curran, who has extensive experience working as a former FBI manager in non-FBI related law enforcement positions, can offer opinion testimony as to how the promotion to an Assistant Section Chief would impact Mr. Youssef's reputation in other law enforcement contexts relevant to Mr. Youssef's post-FBI employment and professional standing.

### III.   MR. YOUSSEF'S QUALIFICATIONS AND EXPECTED TESTIMONY

Mr. Youssef worked in the FBI for 26 years and in management for 17 years.  Since 2000, he has had an opportunity to fully understand the FBI's promotional process, and he has served as a member of at least 25 Career Boards and chaired over 15 Career Boards.  As a manager who was a member of and who also chaired Career Board meetings, he reviewed applications and numerous FD-954 applications that contain information about an employee's employment history and qualifications.  Mr. Youssef was formally trained by the FBI in the Career Board process, and was fully familiar with the rules governing Career Boards at the time

when his Assistant Section Chief application was reviewed.

Mr. Youssef became fully familiar with the employee evaluation process and fully familiar with the evaluation of employee performances. He was personally responsible for issuing approximately 70 Performance Appraisal Reports and, as such, he understood the FBI rules and procedures governing these reports.

Plaintiff proposes that Mr. Youssef be qualified as an expert and/or be permitted to give lay opinion testimony on the following:

1.      *The Career Board Selection Process.* Mr. Youssef will testify as to the role of career boards in the FBI promotional process, the role of the Chairman of a Career Board, and the procedures used by Career Boards. This would include the right/responsibility of Career Board members to interview candidates in order to understand their qualifications, especially if they were not familiar with significant achievements set forth in the FD-954 (the document reviewed by the Career Board members when rating candidates). He will also render an opinion that the failure to interview Mr. Youssef, combined with the fact that the Chairman of the Career Board did talk with other applicants, was inappropriate. Mr. Youssef will also testify that Career Board members should review the complete FD-954, and take into consideration years of experience, the fact that the applicant was employed in the section for which the promotion would occur and other career milestones reflected in the FD-954.

2.      *The Reasonableness of Mr. Youssef's FD-954 and the Knowledge of Counterterrorism Exhibited by the Career Board Members who Rated Mr. Youssef.* Mr. Youssef will offer lay opinion testimony concerning the reasonableness of the descriptions of his past experiences provided in his FD-954. He will testify that it was reasonable for him to assume that managers in the FBI's counterterrorism program who were members of his Career Board would

be fully familiar with the organizations, persons and achievements referenced in Mr. Youssef's

FD-954.  This would include knowledge as to the significance of the Director of Central

Intelligence Award, the identity of the Blind Sheik and his role as the spiritual leader of Osama

bin Laden, the role of the terrorist group Al Gama'a Al Islamiyah in the World Trade Center

bombings, as well as other items set forth in his FD-954.  This testimony would be based upon

his direct personal knowledge and his perceptions developed from years of experience working

with FBI agents and managers in the counterterrorism area.

3.      *Mr. Youssef had the qualifications necessary to be promoted to the Assistant

Section Chief and Can Compare Mr. Youssef's Qualifications set forth in his FD-954 to that of

Mr. Powers.*  Mr. Youssef will testify, based upon his personal knowledge of the FBI, and its

agents and mangers, to his knowledge of the FBI promotional process, and his direct knowledge

that he was fully qualified to be promoted to the Assistant Section Chief position.  He will

further be asked to compare some of the qualifications set forth in the FD-954 of Mr. Powers (the

candidate selected) and set forth in Mr. Youssef's FD-954, and explain how his statement of

qualifications was far superior to Mr. Powers' and the ratings given to the two candidates were

radically out of sync with any reasonable understanding of counterterrorism, international

relations, and the needs of the FBI's counterterrorism program.

4.      *Within the limits set forth in this Court's Second Pretrial Order Mr. Curran will

offer lay opinion testimony as to the baseline of Mr. Youssef's reputation and the impact of the

denial of the promotion on that reputation within the counterterrorism community.*  This Court

has previously set forth the type of proof necessary for Mr. Youssef to establish injury to his

reputation under Title VII. *Youssef I, Second Pretrial Order*, pp. 8-10.  Mr. Youssef will offer

opinion testimony consistent with this Court's Second Pretrial Order establishing a baseline for

his professional reputation and how a promotion from a Unit Chief to an Assistant Section Chief would have impacted this reputation.  *See Youssef I, Second Pretrial Order*, pp. 9-10 ("Plaintiff may elicit testimony from Curran . . . regarding Youssef's good reputation in order to establish a baseline against which later harms to Youssef's reputation may be measured").

Additionally, it is expected that the FBI will argue that a Unit Chief and an Assistant Section Chief are both GS-15 positions, so that a denial of the promotion at issue in this case either did not impact Mr. Youssef's reputation within the FBI or any such impact would have been minimum.  However, Mr. Youssef will offer lay opinion and/or expert testimony as to the significant adverse impact on his reputation caused by the denial of the promotion.  This testimony is consistent with the testimony permitted by this Court in *Youssef I, Second Pretrial Order*, pp. 14-15.  The differences between a GS-15 Unit Chief and a GS-15 Assistant Section Chief within the context of the FBI is "not a topic that is within the common knowledge of the average juror" and his "testimony on this topic will assist the jury to understand the evidence and determine a fact in issue."  *See Id.*, p. 15.

Furthermore, Mr. Youssef retired from the FBI in September 2014.  This retirement has impacted the scope of reputational damage material to this case.  Prior to September 2014, the impact of the denial of the promotion was highly relevant to Mr. Youssef's standing within the FBI and Mr. Youssef is entitled to damages for this alleged harm.  However, after September 2014, the impact of the denial of the promotion has relevance to Mr. Youssef's post-retirement standing among his former FBI peers, now in private practice (or working with other law enforcement agencies) and within the general law enforcement community, which is familiar with the rankings of retired FBI agents.  Mr. Youssef can testify as to the standing within these communities of a retired former Unit Chief as compared with a retired Assistant Section Chief,

especially in the context of Mr. Youssef's career (i.e. he held a Unit Chief position for eleven years, a time period far in excess of most FBI agents).

     5.     *Knowledge of the Performance Appraisal System*.  Mr. Youssef can offer lay opinion and expert testimony as to the FBI Performance Appraisal Report system and the procedure for rating employees.  Based upon this knowledge he can offer testimony that his 2009 Performance Appraisal Report was not properly conducted.  Mr. Youssef can also offer testimony that he was not properly rated by two FBI managers who, at the time, were also members of the Assistant Section Chief Career Board (Zarone and Fernandez).  He can also testify that his participation in an EEO proceeding, regardless if it was associated with a federal court proceeding or an Inspector General proceeding, were in fact official aspects of his work, and he could not be downgraded in his performance due to "time away" from his unit based upon his participation in these activities.

### IV.    MS. FELDER'S QUALIFICATIONS AND EXPECTED TESTIMONY

     Mary Louise Felder, also known as Marylou Felder, was employed by the FBI as Section Chief for the Administration Section, Counterterrorism Division.  She was listed by the FBI as a witness for the defendant and was subsequently deposed by Mr. Youssef's counsel.  She may be called as an adverse witness, and as part of that testimony may be requested to offer expert or lay opinion testimony.  She is expected to testify concerning the reasons for reversing ratings on Mr. Youssef's 2009 Performance Appraisal Report, the process involved in Performance Appraisal Report reversals, and procedures, policies and incorporated materials surrounding Performance Appraisal Report reviews for persons above the rank of Unit Chief.  She will also testify as to the right of Mr. Youssef to participate in his protected activities as established under Title VII of the Civil Rights Act.  Ms. Felder will testify concerning the fact that within the FBI, Mr. Youssef

had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings given this right. Ms. Felder is expected to testify on all matters for which she was questioned during her deposition.

## V.    MS. NORTH'S QUALIFICATIONS AND EXPECTED TESTIMONY

Tracy North was a Deputy Assistant Director in the Counterterrorism Division. She was listed by the FBI as a witness for the defendant and was subsequently deposed by Mr. Youssef's counsel. She may be called as an adverse witness and as part of that testimony, may be requested to offer expert or lay opinion testimony. She may testify as to all matters related in her deposition. She may testify as to the policies of the Career Board, including conflicts of interest and she may testify as to her knowledge of Mr. Youssef's protected activities. She may testify that it is improper for the FBI to take into consideration an employee's participation in EEO activities in rating their performance. Furthermore, she may testify that an employee has the right to be absent from his or her position when participating in an EEO proceeding.


Respectfully submitted,


/s/ Stephen M. Kohn
Stephen M. Kohn
D.C. Bar No. 411513
/s/ David K. Colapinto
David K. Colapinto
D.C. Bar No. 416390
KOHN, KOHN, COLAPINTO, LLP.
3233 P Street, N.W.
Washington, DC 20007
Phone: (202) 342-6980
Fax:    (202) 342-6984
sk@kkc.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing memorandum is filed electronically and will be

made available to all counsel of record through this Court's electronic case filing system.

By:   /s/ David K. Colapinto
        David K. Colapinto