**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| BASSEM YOUSSEF, | ) | |
| | ) | Civil Action 1:11-CV-01362 (CKK) |
| | ) | |
| Plaintiff, | ) | ECF |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC HOLDER, | ) | |
| United States Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## JOINT PRETRIAL STATEMENT

Plaintiff Bassem Youssef and Defendant Eric Holder, United States Attorney General,

pursuant to Local Civil Rule 16(b) and this Court's Orders file this Joint Pretrial Statement.


I.      **Parties and Counsel**

|  |  |
|---|---|
| **Plaintiff:** | Bassem Youssef |
| | c/o Kohn, Kohn, & Colapinto, LLP |
| | 3233 P Street, N.W. |
| | Washington, D.C. 200007 |
| | (202) 342-6980 |
| | Fax: (202) 342-6984 |
| | |
| **Plaintiff's Counsel:** | Stephen M. Kohn |
| | sk@kkc.com |
| | David K. Colapinto |
| | dc@kkc.com |
| | Kohn, Kohn, & Colapinto, LLP |
| | 3233 P Street, N.W. |
| | Washington, D.C. 20007 |
| | (202) 342-6980 |
| | Fax: (202) 342-6984 |
| | |
| **Defendant:** | Eric Holder |
| | United States Attorney General |
| | 950 Pennsylvania Avenue, NW |

Washington, D.C. 20530-0001

(Defendant reserves the right to designate an appropriate representative of the FBI to sit at counsel table during the trial.)

**Defendant's Counsel:** John G. Interrante
Joshua M. Kolsky
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW, Room E-4808
Washington, D.C. 20530
Tel:     (202) 252-2519
Fax:     (202) 252-2599
Email:  John.Interrante@usdoj.gov
          Joshua.Kolsky@usdoj.gov

Kathleen O'Neill-Taylor
Assistant General Counsel
Employment Law Unit I
Office of the General Counsel
Federal Bureau of Investigation

## II.      Joint Neutral Statement of the Case

Mr. Youssef, the Plaintiff in this case, was employed by the FBI from 1988 until he retired on September 16, 2014.  The final position he held within the FBI was Unit Chief/Supervisory Special Agent.

Mr. Youssef brought this action under Title VII of the Civil Rights Act, claiming that he was retaliated against by the FBI when he was not selected for an Assistant Section Chief position in 2009.  Mr. Youssef maintains that he was retaliated against because he was pursuing a claim of discrimination at the time of the selection decision.

The FBI denies that it retaliated against Mr. Youssef, and maintains that it properly evaluated Mr. Youssef and the other applicants for the job on the basis of their applications.  Specifically, the FBI maintains that Mr. Youssef's application was considered by a Local Career Board assembled by the FBI under its promotion policies and procedures for mid-level supervisors, and that the Local Career Board properly evaluated the applicants for the position and selected the applicant that had best demonstrated his qualifications for the job in his application.

## III.     Statement of Plaintiff's Claims.

A.   Plaintiff's Statement of the Case

Mr. Youssef, an employee of the FBI, brought this action against the FBI alleging retaliation in his non-selection for an Assistant Section Chief position in the FBI's Communications Exploitation Section.   Mr. Youssef exhausted his administrative remedies and timely filed this action in U.S. District Court under Title VII of the Civil Rights Act of 1964, *as amended*.

Mr. Youssef was retaliated against when he was denied a promotion to the Assistant Section Chief position.  The Assistant Section Chief position was the position held by his immediate supervisor and would have been the next logical step in his career.

Critical evidence surfaced as a result of Mr. Youssef's 2009 Performance Appraisal Report.  This evaluation of Mr. Youssef's performance occurred nearly simultaneous with the FBI's decision not to promote Mr. Youssef.  Thus, evidence of retaliatory motive by the managers responsible for the downgraded review is extremely probative of these managers animus toward Mr. Youssef's protected activities, especially because the two managers involved in downgrading the performance review also served as the chairman and a member of the four-member Career Board.  This board would ultimately be responsible for denying Mr. Youssef the promotion.

The first Career Board member involved in the performance review was Mr. Zarone.  Mr. Zarone held the position of Assistant Section Chief (the very position Mr. Youssef was applying for) and was Mr. Youssef's immediate supervisor for the time period relevant to this case.

During the performance review process, Mr. Zarone directly criticized Mr. Youssef's participation in his civil rights case.  He referred to Mr. Youssef's lawful activities as a distraction.  Other witnesses for the FBI confirmed that Mr. Youssef's civil rights activities were lawful and that it was against the law (and FBI policy) for his participation in these civil rights activities to be used against him in any context, including a performance review.

Mr. Zarone specifically referenced civil rights related court proceedings for which Mr. Youssef was participating.  These proceedings concerned allegations that the FBI had engaged in retaliatory conduct because Mr. Youssef had raised concerns that the FBI was discriminating against Arab Americans.

In a document written by Mr. Zarone, Zarone justified his finding that there was a "drop of performance level" because Zarone felt that Youssef participation in his civil rights proceeding was a "distracter."  Based on his hostility toward Mr. Youssef's admittedly protected activities, Zarone lowered Mr. Youssef's ratings in five "critical" performance areas.

The first area in which his performance was downgraded was "Organizing, Planning, and Coordinating."  Mr. Youssef was lowered from Outstanding (5) to Excellent (4) from 2008 to 2009.

The second area in which his performance was downgraded was "Acquiring, Applying, and Sharing Job Knowledge."  Mr. Youssef was lowered from Outstanding (5) to Excellent (4) from 2008 to 2009.

The third area in which his performance was downgraded was "Communicating Orally and In Writing."  Mr. Youssef was lowered from Outstanding (5) to Excellent (4) from 2008 to 2009.

The fourth area in which his performance was downgraded was "Maintaining High Professional Standards."  Mr. Youssef was lowered from Excellent (4) to Successful (3) from 2008 to 2009.

The fifth area in which his performance was downgraded was "Achieving Results."  Mr. Youssef was lowered from Excellent (4) to Successful (3) from 2008 to 2009.

This downgraded performance appraisal was reviewed and approved by Mr. Youssef's second line supervisor, Section Chief Armando Fernandez.  Mr. Fernandez agreed with Zarone's animus-tainted downgrades.

In addition to serving as Mr. Youssef's second line supervisor, and in addition to reviewing, approving and signing the downgraded performance review, Mr. Fernandez also served as the Chairman of the Career Board that had the responsibility for selecting the new Assistant Section Chief (the position for which Mr. Youssef was applying).  Mr. Fernandez had the responsibility to select three "voting" members of the Career Board, for which he would Chair.  Mr. Fernandez personally selected Mr. Zarone to serve on the Career Board, and also personally selected the other two members.  Furthermore, whoever was selected to the Assistant Section Chief position would become a direct report to Mr. Fernandez.  Thus, Mr. Fernandez had a  vested personal interest in the outcome of the Career Board's decision.

After Mr. Fernandez and Mr. Zarone signed and approved Mr. Youssef's lowered performance rating, the review was presented to Mr. Youssef for his signature.  Mr. Youssef declined to sign this review and raised a concern to his management that the downgrades were not justifiable and constituted retaliation for his protected civil rights activities. Mr. Youssef filed an internal grievance regarding his review to top manager within the FBI's Counterterrorism Division, Assistant Director Mr. Heimbach.

Mr. Heimbach reviewed Mr. Youssef's grievance, and overturned Mr. Fernandez and Mr. Zarone's ratings in two "critical" performance categories.  He upgraded Mr. Youssef from "Excellent" to "Outstanding"  in "Organizing, Planning,

and Coordinating." He also upgraded Mr. Youssef's ratings from "Excellent" to "Outstanding" in "Acquiring, Applying, and Sharing Job Knowledge." Mr. Heimbach then instructed that Mr. Fernandez and Mr. Zarone's Performance Appraisal Report be replaced with the upgraded review.

While the appeal of the performance review was ongoing, Mr. Fernandez selected Zarone and two other FBI officials to serve on the Career Board, called the Career Board into a formal meeting, and had the Board members "rank" the candidates. Mr. Youssef was given the lowest grade, and a junior agent, Mr. Powers, was selected for the job.

When ranking Mr. Youssef versus Mr. Powers, all of the Career Board members feigned ignorance of the importance of accomplishments set forth in Mr. Youssef's job application. These accomplishments concerned matters for which any FBI employee, especially managers in the counterterrorism division (for which all of the Career Board members were). For example, all of the Career Board members claimed that they did not know who was Osama Bin Laden's spiritual leader, and the role of this leader in the first World Trade Center bombing case. They also feigned ignorance as to the significance of Mr. Youssef having been awarded the DCI Award. This testimony lacked any credibility, as none of the Career Board members asked anyone what the DCI award was. The reason they did not ask is that, as counterterrorism managers, they clearly would have known the importance of the award, which is highly sought after within the entire intelligence community, and is given on the *recommendation* of the Director of the FBI, but must be approved by the Director of Central Intelligence. Feigning ignorance of this award is comparable to a member of the U.S. military claiming they did not know the significance of the Medal of Honor. There were other severe credibility issues related to the rankings given by the Career Board members.

Mr. Youssef was denied the promotion despite having more years of service in the FBI than Mr. Powers, twice the amount of experience as a Supervisory Special Agent then Mr. Powers, twice the amount of experience within counterterrorism division as did Mr. Powers, and nearly five times experience as an overseas Legal Attaché. Mr. Youssef was also denied the promotion despite having served as a Unit Chief (a position directly below the Assistant Section Chief position) for six years, while Mr. Powers never served as such a Chief (despite the fact that the main responsibility of an Assistant Section Chief is supervising Unit Chiefs). In addition, and of particular significance, Mr. Youssef worked for over seven years within the CXS Section of the FBI (the section for which the Assistant Section Chief would have responsibility) while Mr. Powers never worked within that section at all.

According to the FD-954 Forms given to all of the Career Board members, Mr. Youssef was already a Supervisory Special Agent in the FBI while Mr. Powers was still a road patrol officer in a state police department.

The denial of the promotion was retaliatory in violation of Title VII of the Civil Rights Act of 1964, *as amended*.

**Defendant's Objections:**

Defendant's objections to Plaintiff's statement of the case are set forth separately in objections to be filed with the Joint Pretrial Statement.  *See* Exhibit 7.

B.  Plaintiff's Statement of the Claims

1.  Mr. Youssef is requesting that the jury find that he was denied the promotion to Assistant Section Chief because he engaged and participated in the protected activities under Title VII of the Civil Rights Act of 1964 and opposed of discriminatory practices.

2.  Mr. Youssef is requesting the jury find that this denial of a promotion caused Mr. Youssef to suffer compensatory damages that include, but are not limited to, emotional distress, loss of reputation, and humiliation, and award him appropriate damages for these losses.

3.  Mr. Youssef is requesting the Court to grant economic damages and equitable relief including, but not limited to, retroactively granting Mr. Youssef the promotion, notice posting in the FBI of employee rights, all economic damages that resulted from the denial to promote Mr. Youssef, and all reasonably incurred attorney fees and costs.

**IV.     Statement of Defendant's Defenses to Plaintiff's Claims.**

1.  Defendant denies liability because Mr. Youssef's non-selection for the ASC position was not "materially adverse" within the meaning of Title VII.

2.  Defendant further denies liability because the selection of Mr. Powers for the ASC position was based on legitimate,  nonretaliatory reasons, i.e., Mr. Powers demonstrated in his FD-954 that he was the best qualified candidate.

3.  Mr. Youssef's non-selection was not because of any protected EEO activity.

4.  Even if the jury were to find that the FBI retaliated against Mr. Youssef, he has proffered insufficient evidence to support a claim for compensatory damages arising from his nonselection based on non-reputational harm.  At the outset, Mr. Youssef's sole proffered admissible evidence of harm involves his self-serving testimony.  In addition, the ASC position did not involve an increase in salary and the next step for Youssef in the recognized promotional track for FBI special agents was an ASAC field position, which

Youssef did not pursue.  The ASC headquarters position was not the next step required for Mr. Youssef's advancement as a special agent.

5.  Mr. Youssef has proffered insufficient evidence to support an award of damages for alleged reputational harm based on his nonselection for the ASC position.  Mr. Youssef has previously asserted in the Youssef I case that his reputation was harmed prior to the alleged retaliatory conduct in this case, and therefore cannot have been harmed by any alleged subsequent retaliatory conduct.  If Mr. Youssef or Mr. Curran should testify differently in this case, Defendant will seek to impeach the witnesses with their prior inconsistent testimony in the Youssef I case.

6.  Even if the jury were to find that the FBI retaliated against Mr.  Youssef, he is not entitled to equitable relief.  He cannot recover back pay because the ASC position would not have involved an increase in salary, and retroactive promotion and reinstatement are not appropriate because Mr. Youssef has since voluntarily retired without claiming constructive discharge.  [The parties have agreed to stipulate to bifurcation of the liability/compensatory damages and equitable relief phases of the litigation, as the Court ordered in Youssef I.]

## V.        Parties' Proffered Undisputed Facts and Stipulated Facts

### A.  Plaintiff's Proposal:

1.  Mr. Bassem Youssef was born in Cairo, Egypt on November 8. 1958.  He is an American citizen.

2.  On March 7, 1988, Mr. Youssef joined the FBI as a Special Agent.  On September 16, 2014, Mr. Youssef retired as a Supervisory Special Agent and Unit Chief within the FBI's Counterterrorism Division.

3.  Mr. Youssef worked in the Communication Exploitation Section of the Counterterrorism Division.

4.  The Communication Exploitation Section is comprised of four units:

    i.    The Document Exploitation Unit
    ii.   The Communication Analysis Unit
    iii.  The Electronic Communications Analysis Unit
    iv.   The Electronic Operations Unit

5.  The managerial structure of the Communication Exploitation Section at the time relevant to the case is as follows:

    i.    Mr. Armando Fernandez was the Section Chief.

    ii.  Mr. Arthur Zarone was the Assistant Section Chief and therefore worked under Mr. Armando Fernandez.

    iii.  Mr. Bassem Youssef was the Unit Chief of the Document Exploitation Unit, which was one of the four units within the Communication Exploitation Section.  Therefore, Mr. Youssef worked under Mr. Zarone.

6.  On October 9, 2009, Mr. Youssef was given his 2009 Performance Appraisal Report.

7.  Mr. Youssef's rating officials were:

    i.  Section Chief, Mr. Armando Fernandez
    ii.  Assistant Section Chief, Mr. Arthur Zarone

8.  Mr. Zarone and Mr. Fernandez wrote and signed the 2009 Performance Appraisal Report of Mr. Bassem Youssef.

9.  Mr. Youssef refused to sign the October 9, 2009 Performance Appraisal Report.

10.  Mr. Youssef was lowered in each critical area specified in the Performance Appraisal Report from the 2008 report to the 2009 report.

11.  The five critical elements for which Mr. Youssef was downgraded from the prior year were the following:

    i.  Organizing, Planning, and Coordinating
        a.  Lowered from Outstanding to Excellent
    ii.  Acquiring, Applying, and Sharing Job Knowledge
        a.  Lowered from Outstanding to Excellent
    iii.  Maintaining High Professional Standards
        a.  Lowered from Excellent to Successful
    iv.  Communicating Orally and In Writing
        a.  Lowered from Outstanding to Excellent
    v.  Achieving Results
        a.  Lowered from Excellent to Successful

12.  Mr. Youssef felt this recorded drop in performance was retaliatory and filed a grievance within the FBI.

13.  Mr. Zarone's recorded the reason for Mr. Youssef's reported drop in performance as a result of two "distracters," a "legal matter" and the "OIG Report.  The "legal matter" was Mr. Youssef's civil rights case.

14. Mr. Youssef appealed his 2009 Performance Appraisal Report internally within the FBI pursuant to FBI grievance procedures.

15. The appeal of Mr. Youssef's 2009 Performance Appraisal Report went to Mr. Michael J. Heimbach, the Assistant Director of the FBI's Counterterrorism Division.

16. On November 20, 2009, Mr. Heimbach approved Mr. Youssef's appeal in part, and ordered that Mr. Zarone and Mr. Heimbach increase Mr. Youssef's rating in the following two critical areas:

    i.   Organizing, Planning, and Coordinating
        a.  Increased from Excellent to Outstanding
    ii.  Acquiring, Applying, and Sharing Job Knowledge
        a.  Increased from Excellent to Outstanding

17. On September 18, 2009, the Communication Exploitation Section of the FBI's Counterterrorism Division began accepting applications for the position of Assistant Section Chief. Mr. Zarone, who held that position at that time, had obtained a promotion and would be leaving that position.

18. Mr. Fernandez was the chairman of the Career Board that would select the applicant who received the position of Assistant Section Chief.

19. Mr. Fernandez appointed Mr. Arthur Zarone, Mr. Hipolito Castro, and Mr. Erkan Chase to the Career Board.

20. On October 23, 2009, the three persons chosen by Mr. Fernandez, including Mr. Zarone, met to rank each of the candidates for the job.

21. On October 23, 2009, Mr. Fernandez reviewed these rankings and determined Mr. Powers had the highest ranking and Mr. Youssef had the lowest ranking. Based on this ranking, Mr. Youssef was denied the promotion, and Mr. Powers was named the new Assistant Section Chief.

22. Before the Career Board met, Mr. Zarone personally introduced Mr. Fernandez to Mr. Powers. Mr. Powers was the only applicant to receive this treatment.

**Defendant's Objections:**

Defendant has objected to Plaintiff's proposal on the grounds that the proposed undisputed facts are either irrelevant to the single disputed retaliation claim or are factually inaccurate. Defendant has reviewed Plaintiff's proposal and submitted the following neutral counterproposal which does not include objectionable statements. The parties discussed the

proposed undisputed facts at the March 3, 2015 conference and will continue to discuss proposed stipulations of fact.

**B. Defendant's Counter-Proposal:**

1. On March 7, 1988 Mr. Youssef joined the FBI as a Special Agent.

2. Mr. Youssef worked in the Communication Exploitation Section (CES) of the FBI's Counterterrorism Division in 2009.  The managerial section of the CES was as follows:

   (a) Mr. Armando Fernandez was the Section Chief.
   (b) Mr. Arthur Zarone and Mr. Erkan Chase were Assistant Section Chiefs.
   (c) Mr. Bassem Youssef was the Unit Chief of the Communication Analysis Unit, one of four units within CES.

3. On September 18, 2009, CES posted a vacancy announcement for the Assistant Section Chief position that was being vacated by Mr. Zarone due to a promotion.

4. Mr. Fernandez was designated to select and preside over a Local Career Board (LCB) that would be impaneled to review the FD-954 Forms of the applicants for the ASC position and recommend a candidate for the position.  Mr. Fernandez served as the **non-voting** Chairman of the LCB, which consisted of the following three voting members: (a) Mr. Arthur Zarone, (b) Mr. Hipolito Castro, and (c) Mr. Erkan Chase.

5. On October 23, 2009, the LCB met and formally presented their rankings for each of the four candidates for the job.  Mr. Fernandez, as Chairman, presided over the meeting, but cast no votes.   The LCB gave Mr. Powers the highest overall ranking of the four candidates and Mr. Powers was the consensus choice of the LCB voting members. **The FBI's Employee Development and Selection Program ("EDSP") took the ratings of the three LCB voting members, put them in a computer, and produced the final ranking of the four candidates. The EDSP forwarded the recommended rankings to the Special Agent Mid-Level Management Selection (SAMMS) Board, which independently considered the FD-954s of the four candidates, and made the final selection determination.  Mr. Powers was officially selected for the Assistant Section Chief position by the SAMMS Board.**

<u>Plaintiff's Objections</u>:

Plaintiff has objected to the bolded language above. The parties discussed the proposed undisputed facts at the March 3, 2015 conference and will continue to discuss proposed stipulations of fact.

**VI.      Witnesses**

A.  <u>Witnesses to Be Called by Plaintiff</u>

Defendant's "general objections" to Plaintiff's proffered testimony are set forth separately in objections to be filed with the Joint Pretrial Statement.

    1.  Ed Curran                                      1.5 hours

As set forth in his testimony and deposition in Mr. Youssef's other Title VII case, Mr. Curran was an experienced manager within the FBI with direct knowledge of the FBI's promotional practices.  Mr. Curran knows Mr. Youssef, and can testify as to his reputation and the impact of the denial of a promotion on that reputation.  Mr. Curran can also testify to the impact of that denial on Mr. Youssef's reputation outside the FBI, and the impact of the fact that Mr. Youssef, by being denied this promotion, worked for over nine years as a Unit Chief.  In addition to his extensive experience as an FBI manager, Mr. Curran also had a senior executive position with the New York City Police Department working on counterterrorism and, prior to that, worked with the Office of Counterterrorism in the State of New Jersey.  Mr. Curran was deposed and testified in the earlier case.  All prior information contained in his deposition and prior testimony is hereby incorporated by reference.  Mr. Curran is a non-retained expert witness/opinion witness on matters related to the FBI's promotional practices, the impact the denial of Mr. Youssef's promotion would have on his reputation, along with expressing opinion testimony as to whether or not the members of the Career Board reasonably could be as ignorant on matters of counterterrorism as reflected in their testimony.   He may offer direct opinion and expert testimony regarding the damages incurred or suffered by Mr. Youssef.  This includes, but is not limited to, damages to career and reputation due to denial of promotion.

Mr. Curran may also testify concerning the importance of the promotion to Mr. Youssef in attaining post-retirement employment and the underlying fact that Mr. Youssef was more qualified for the promotion than Mr. Powers.  Mr. Curran will testify about informal Career Board practices and will offer testimony that would impeach the Career Board's justifications for how they rated Mr. Youssef.  Mr. Curran's proposed expert and opinion testimony is set forth in Exhibit 1.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Curran are set forth separately in objections to be filed with the Joint Pretrial Statement.

    2.   Bassem Youssef                    5 hours
        c/o Kohn, Kohn, and Colapinto, LLP
        3233 P Street NW
        Washington, D.C. 20007

        Mr. Youssef will testify as to every aspect of the case and will provide rebuttal testimony to every aspect of the FBI's case.  Mr. Youssef will provide information concerning the damages he suffered, including monetary damages, damages to reputation, humiliation and emotional distress.  Mr. Youssef shall provide testimony concerning the pretextual nature of the FBI's claims, his protected activity and the causal connection between his protected activity and the adverse FBI actions, and the pretextual nature of the 2009 performance report by Mr. Fernandez and Mr. Zarone.  He will also discuss his ultimate reasoning to retire from the FBI on September 16, 2014.  He will also provide testimony concerning his protected class and his involvement in a protected activity.  Mr. Youssef will testify concerning the fact that within the FBI, he had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Mr. Youssef will testify to all subject areas for which he was deposed and may testify to prior depositions of his other Title VII case.  Mr. Youssef will be expected to testify to all subject areas in his deposition.  Mr. Youssef may also provide corroborating testimony as to the testimony given by all other witnesses identified herein. Mr. Youssef's proposed expert and opinion testimony is set forth in Exhibit 1.

        *Additional testimony proffered on March 11:*

        It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Youssef are set forth separately in objections to be filed with the Joint Pretrial Statement.

    3.   Armando Fernandez               1 hour
        FBI Headquarters
        935 Pennsylvania Avenue, NW
        Washington, D.C. 20535-0001

Armando Fernandez may be called as a hostile witness in Plaintiff's case and chief.  Mr. Fernandez served as the Section Chief of the Communications Exploitation Section in the Counterterrorism Division. Mr. Fernandez is expected to offer testimony concerning employment performance and reputation, specifically regarding the reasons for downgrading Mr. Youssef's 2009 Performance Appraisal Report and his reasons for approving the downgrading of Mr. Youssef's 2009 Performance Appraisal Report.  He will testify as to why the 2009 ratings were too low and why the lowering of the ratings actively reflected animus on behalf of witness and FBI.  Mr. Fernandez will also provide testimony concerning his knowledge of Mr. Youssef's protected activities and why Mr. Fernandez's position on this matter was pretextual and retaliatory.  Mr. Fernandez will also testify regarding his basis for selecting Daniel Powers over Mr. Youssef for the Assistant Section Chief position.  He will provide testimony as to why Mr. Youssef's rankings were too low in the individual and final assessment of applicants for the Assistant Section Chief position, why Mr. Youssef was more qualified for the position than was Mr. Powers, why the rankings were pretextual, the knowledge that Mr. Fernandez had of Mr. Youssef's protected activities, and will provide direct and circumstantial evidence of animus in the FBI towards Mr. Youssef's protected activities.  Mr. Fernandez will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Mr. Fernandez is expected to testify on all matters of which he was questioned during his deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Fernandez are set forth separately in objections to be filed with the Joint Pretrial Statement.

4.   Arthur Zarone                                             1 hour
      FBI Headquarters
      935 Pennsylvania Avenue, NW
      Washington, D.C. 20535-0001

Arthur Zarone will be called as a hostile witness in Plaintiff's case and chief.  Mr. Zarone served as the Assistant Section Chief within the

Communications Exploitation Section in the Counterterrorism Division.  He will testify to Mr. Bassem Youssef's employment performance and reputation. He will also provide explanation for downgrading Mr. Youssef's 2009 Performance Appraisal Report. He will testify as to why the 2009 ratings were too low and why the lowering of the ratings actively reflected animus on behalf of witness and FBI.  He will provide testimony concerning Mr. Youssef's qualifications for the Assistant Section Chief position.  Mr. Zarone had knowledge of Mr. Youssef's protected EEO activity and why Mr. Zarone's position in this matter was pretextual and retaliatory.  Mr. Zarone will also provide testimony concerning the basis for the decision to select Daniel Powers over Mr. Youssef for the Assistant Section Chief position.  He will provide testimony as to why Mr. Youssef's rankings were too low in the individual and final assessment of applicants for the Assistant Section Chief position, why Mr. Youssef was more qualified for the position than was Mr. Powers, why the rankings were pretextual, the knowledge that Mr. Zarone had of Mr. Youssef's protected activities, and will provide direct and circumstantial evidence of animus in the FBI towards Mr. Youssef's protected activities.  Mr. Zarone will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Mr. Zarone is expected to testify on all matters of which he was questioned during his deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Zarone are set forth separately in objections to be filed with the Joint Pretrial Statement.

5.  Erkan A. Chase                                              1 hour
    FBI Headquarters
    935 Pennsylvania Avenue, NW
    Washington, D.C. 20535-0001

Erkan Chase served in the Communications Exploitation Section as the Assistant Section Chief within the Counterterrorism Division. Mr. Chase will provide testimony as to Mr. Youssef's employment performance and reputation, Mr. Youssef's qualifications for the Assistant Section Chief position, knowledge of plaintiff's protected EEO activity, the basis for the decision to select Daniel Powers over Mr. Youssef for the Assistant Section

Chief position, and why his position on this matter was pretextual and retaliatory. He will provide testimony as to why Mr. Youssef's rankings were too low in the individual and final assessment of applicants for the Assistant Section Chief position, why Mr. Youssef was more qualified for the position than was Mr. Powers, why the rankings were pretextual, the knowledge that Mr. Chase had of Mr. Youssef's protected activities, and will provide direct and circumstantial evidence of animus in the FBI towards Mr. Youssef's protected activities. Mr. Chase will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue his FBI Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity. Mr. Chase is expected to testify on all matters of which he was questioned during his deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Chase are set forth separately in objections to be filed with the Joint Pretrial Statement.

> 6.  Hipolito Castro                                             1 hour
>     FBI Headquarters
>     935 Pennsylvania Avenue, NW
>     Washington, D.C. 20535-0001

Hipolito Castro served within the Counterterrorism Division as an Assistant Section Chief of the Terrorist Financing Operations Section. Mr. Castro will provide testimony as to Mr. Youssef's employment performance and reputation, Mr. Youssef's qualifications for the Assistant Section Chief position, knowledge of plaintiff's protected EEO activity, the basis for the decision to select Daniel Powers over Mr. Youssef for the Assistant Section Chief position, and why his position on this matter was pretextual and retaliatory. He will provide testimony as to why Mr. Youssef's rankings were too low in the individual and final assessment of applicants for the Assistant Section Chief position, why Mr. Youssef was more qualified for the position than was Mr. Powers, why the rankings were pretextual, the knowledge that Mr. Castro had of Mr. Youssef's protected activities, and will provide direct and circumstantial evidence of animus in the FBI towards Mr. Youssef's protected activities. Mr. Castro will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue

his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Mr. Castro is expected to testify on all matters of which he was questioned during his deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Mr. Castro are set forth separately in objections to be filed with the Joint Pretrial Statement.

      7.   Jeanine Santa                30 minutes
          FBI Headquarters
          935 Pennsylvania Avenue, NW
          Washington, D.C. 20535-0001

Jeanine Santa served as an FBI official.  She is expected to testify regarding Mr. Zarone's knowledge of Mr. Youssef's protected activities. Ms. Santa will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Ms. Santa was deposed in this proceeding and her testimony may include, but will not be limited to, all subject areas in her deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Ms. Santa are set forth separately in objections to be filed with the Joint Pretrial Statement.

      8.   S. Mary Louise Felder            1 hour
          FBI Headquarters
          935 Pennsylvania Avenue NW

Washington, D.C. 20535-0001

Mary Louise Felder, also known as Marilou Felder, was employed by the FBI as Section Chief for the Administration Section, Counterterrorism Division.  She is expected to testify concerning the reasons for reversing ratings on Plaintiff's 2009 Performance Appraisal Report, the process involved in Performance Appraisal Report reversals, and procedures, policies and incorporated materials surrounding Performance Appraisal Report reviews for persons above the rank of Unit Chief.  She will also testify as to the right of Mr. Youssef to participate in his protected activities as established under Title VII of the Civil Rights Act.  Ms. Felder will testify concerning the fact that within the FBI, Mr. Youssef had the right to file and fully pursue his Title VII discrimination case and it would be inappropriate to lower his ratings when he has a right to pursue that protected activity.  Ms. Felder is expected to testify on all matters for which she was questioned during her deposition.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Ms. Felder are set forth separately in objections to be filed with the Joint Pretrial Statement.

9.  Tracy North
    FBI Headquarters
    935 Pennsylvania Avenue NW
    Washington, D.C. 20535-0001

Tracy North was a Deputy Assistant Director in the Counterterrorism Division. She may testify as to all matters related in her deposition. She may testify as to policies of the Career Board including conflicts of interest and she may testify as to her knowledge of Mr. Youssef's protected activities. She may testify that it is improper for the FBI to take into consideration an employee's participation in EEO activities in their performance ratings. Furthermore, that an employee has the right to be absent from his or her position when participating in an EEO proceeding.

*Additional testimony proffered on March 11:*

It is against the policy of the FBI and the Department of Justice to retaliate against any FBI employee because that employee participates in an Inspector General investigation. This would include, but not be limited to, downgrading an employee's performance appraisal in any manner whatsoever. Furthermore, any such retaliation may also violate the federal criminal obstruction of justice laws.

Defendant's objections to Ms. North are set forth separately in objections to be filed with the Joint Pretrial Statement.

10. Valerie Caproni

Ms. Caproni will testify concerning the Inspector General National Security Letters investigation, the EEO investigation into the IG investigation, the non-disclosure statement the FBI required Mr. Youssef to sign regarding the NSL investigation, the agreement to modify the FBI's non-disclosure agreement, her comments made before the United States Congress concerning Bassem Youssef, and her knowledge of his EEO activities. Ms. Caproni will be asked to confirm that when she testified before Congress that Mr. Youssef "is in litigation with the FBI," she understood that litigation to be Mr. Youssef's Title VII case. She may also be questioned as to her statement before the EEO. Ms. Caproni is a hostile witness.

Defendant's objections to U.S. District Court Judge Valerie Carponi are set forth separately in objections to be filed with the Joint Pretrial Statement.

11. Inspector General

The Inspector General is expected to give opinion and expert testimony that Mr. Youssef's participation in an IG investigation is protected as a matter of law and policy, and that it would be illegal to downgrade an employee's Performance Appraisal Report based on the fact that the employee provided testimony to the IG or participated in an IG investigation.

Defendant's objections to the Inspector General are set forth separately in objections to be filed with the Joint Pretrial Statement.

*Additional witness proffered on March 11:*

12. Deputy Attorney General

The Deputy Attorney General is expected to give opinion and expert testimony that Mr. Youssef's participation in an IG investigation is protected as a matter of law and policy, and that it would be illegal to

downgrade an employee's Performance Appraisal Report based on the fact that the employee provided testimony to the IG or participated in an IG investigation.

13. Other Witnesses:

Plaintiff reserves the right to call any witness necessary to introduce a document into evidence.  Plaintiff also reserves the right to call any witness on the defendants' witness list.

B.  <u>Witnesses to Be Called by Defendant</u>

Defendant expects to call the following witnesses or introduce their deposition testimony in its case-in-chief:

I.      Local Career Board voting members.

Hipolito Castro, Jr. (retired)                                                                     1 hr.
(formerly Supervisory Special Agent
New Haven Field Office
Federal Bureau of Investigation
600 State Street
New Haven, CT  06511
(203) 777-6311)

Although Mr. Castro is no longer an FBI employee and he resides outside the subpoena power of the Court, the FBI will arrange for his voluntary presence to testify at trial.  See below for description of testimony.

Plaintiff's objections to Mr. Castro are set forth separately in objections to be filed with the Joint Pretrial Statement.  *See* Exhibit 6.[1]

Erkan A. Chase                                                                                     1 hr
(formerly Assistant Section Chief
Foreign Terrorist Tracking Task Force
Counterterrorism Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Chase now works in the Domestic Terrorism Operations Section of the Counterterrorism Division of the FBI. See below for description of testimony.

---

[1] Defendant's responses to Plaintiff's objections are included as Exhibit 8.

Plaintiff's objections to Mr. Chase's are set forth separately in objections to be filed with the Joint Pretrial Statement.

Arthur J. Zarone (retired)                                                                     1.5 hrs.
(formerly Assistant Section Chief
Tactical Support Branch
Tactical Section
Critical Incident Response Group
Training Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Zarone works as a contractor in the Operations Branch II of the Counterterrorism Division of the FBI. See below for description of testimony.

Plaintiff's objections to Mr. Zarone are set forth separately in objections to be filed with the Joint Pretrial Statement.

Proffered testimony of Mssrs. Castro, Chase and Zarone. Each served as a voting member of the Local Career Board for Vacancy #20091000, the vacancy at issue in this action, and may be called to testify about the application requirements for this position, their review, assessment, and scoring of the FD-954's of the four candidates for this position, including Mr. Youssef, and the LCB proceedings related to this vacancy. The witnesses may also testify that any knowledge that Mr. Youssef had a pending lawsuit did not influence their scoring of his description of the various competencies for the vacancy. Mr. Zarone may also testify about the performance-based reasons for any differences between Mr. Youssef's 2008 and 2009 PAR.

II.     Local Career Board Chairman (non-voting).

Armando Fernandez                                                                         1.0 hrs
(formerly Section Chief
Communications Exploitation Section
Counterterrorism Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Fernandez served as the non-voting Chairman of the Local Career Board for Vacancy #20091000, the vacancy at issue in this action, and presided over the LCB proceedings. Mr. Fernandez is unavailable to testify as a n FBI employee and he resides outside the subpoena power of the Court. Pursuant to the Court's February 11, 2015, the FBI has designated portions of Mr. Fernandez's deposition to be introduced as either part of its case-in-chief or as rebuttal trial testimony. Plaintiff has had an opportunity to review the proffered testimony and counterdesignate portions of the deposition, but has declined to do so. *See* Attached designations (Exhibit 2).

Plaintiff's objections to Mr. Fernandez are set forth separately in objections to be filed with the Joint Pretrial Statement.

III.    Mr. Youssef's 2009 performance deficiencies and FBI promotional policies and practices.

Valerie Parlave                                                                      1.5-2.0 hrs
Executive Assistant Director
Human Resources Branch
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000

In November 2009, Ms. Parlave was the Section Chief of the Employee Development and Selection Program Section, Human Resources Division, and in that capacity she attended the meeting of the SAMMS Board selecting Daniel Powers for the position of Assistant Section Chief following his recommendation by the Local Career Board. Ms. Parlave may testify about the FBI's promotional policies and practices for special agents, including testimony that the denial of a lateral Assistant Section Chief position would not negatively impact the reputation or restrict the career path of an FBI agent that was serving as a Unit Chief. Ms. Parlave testified about similar issues at the Youssef I trial and was specifically disclosed to Plaintiff's counsel in this matter in writing on January 20, 2015. As noted previously, Ms. Parlave will testify in lieu of Doug Price, who is no longer assigned to FBI headquarters.

Plaintiff's objections to Ms. Parlave are set forth separately in objections to be filed with the Joint Pretrial Statement.

Michael J. Heimbach (retired)                                                        1.0 hrs
(formerly Assistant Director
Counterterrorism Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Heimbach's current position is:

        Vice President for Global Security and Safety
        ESPN
        935 Middle Street
        Bristol, CT  06010

Mr. Heimbach is no longer an FBI employee and he resides outside the subpoena power of the Court. Because Plaintiff did not depose Mr. Heimbach during discovery, Defendant may seek Mr. Heimbach's voluntary appearance as a trial witness.

Mr. Heimbach may testify about Mr. Youssef's performance failures in 2009 and Mr. Youssef's request for reconsideration of his 2009 Performance Appraisal Rating. Mr. Heimbach may also testify about the FBI's promotional policies and practices for special agents, including testimony that the denial of a lateral Assistant Section Chief position would not negatively impact the reputation or restrict the career path of an FBI agent that was serving as a Unit Chief.

Plaintiff's objections to Mr. Heimbach are set forth separately in objections to be filed with the Joint Pretrial Statement.

Michael B. Ward (retired)                                                     1.0  hrs
(formerly Deputy Assistant Director
Counterterrorism Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Ward is no longer an FBI employee and he resides outside the subpoena power of the Court. Because Plaintiff did not depose Mr. Ward during discovery, Defendant may seek Mr. Ward's voluntary appearance as a trial witness.

Mr. Ward may testify about Mr. Youssef's performance failures in 2009, and Mr. Youssef's request for reconsideration of his 2009 Performance Appraisal Rating. Mr. Ward may also testify about the FBI's promotional policies and practices for special agents, including testimony that the denial of a lateral Assistant Section Chief position would not negatively impact the reputation or restrict the career path of an FBI agent that was serving as a Unit Chief.

Plaintiff's objections to Mr. Ward are set forth separately in objections to be filed with the Joint Pretrial Statement.

Defendant may also call one or more of the following witnesses:

Douglas Price                                                               1.5 hrs
(formerly Section Chief
Executive Development and Selection Program
Human Resources Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Price's current position is:

Douglas Price
Special Agent in Charge
Phoenix Field Office
2171 N. 7th Street
Phoenix, Arizona 85024

Mr. Price was deposed by Plaintiff as a Rule 30(b)(6) witness, who was designated because he was EDSP Section Chief at the time of deposition.  He may testify as alternative to Ms. Parlave or to supplement her proffered testimony, as may be appropriate.  Mr. Price is familiar with the policies and procedures for promotion within the FBI.

Plaintiff's objections to Mr. Price are set forth separately in objections to be filed with the Joint Pretrial Statement.


Daniel Powers                                                                           1.0 hrs.
(formerly Assistant Section Chief
Communications Exploitation Section
Counterterrorism Division
Federal Bureau of Investigation
Washington, DC  20535
(202) 324-3000)

Mr. Power's current position is:

Daniel Powers
Section Chief
Internal Security Section
Security Division
FBI Headquarters
Washington, DC  20535

Mr. Powers may testify about the work-related experience described in his FD-954 to rebut testimony by Mr. Youssef or any other witness called by Plaintiff about the relative qualifications of the candidates for the vacancy at issue.  Mr. Powers may also testify about the alleged "meeting" with Mr. Fernandez and Mr. Zarone prior to the selection decision.  The FBI notes that by email dated December 6, 2012, Plaintiff's counsel wrote government counsel that, "We have decided not to depose Powers."

Plaintiff's objections to Mr. Powers are set forth separately in objections to be filed with the Joint Pretrial Statement.

Defendant reserves the right to call any witness necessary to introduce a document into evidence.  Defendant also reserves the right to call any witness on the plaintiff's witness list as part of its case-in-chief and to call rebuttal and impeachment witnesses, as may be appropriate.

## VII.        Exhibits

A.  Joint Exhibits:

1.  Exhibit 1: Job Posting Information Form (ASC position)

Formerly: Defendant Exhibit 6 / Plaintiff Exhibit 9

2. Exhibit 2: FD-954 of Daniel Powers (October 2, 2009)
   Formerly: Defendant Exhibit 8 / Plaintiff Exhibit 10

3. Exhibit 3: FD-954 of Bassem Youssef (October 2, 2009)
   Formerly: Defendant Exhibit 9 / Plaintiff Exhibit 11

4. Exhibit 4: LCB scoring matrices (voting members' matrices, chair's matrix, final matrix) (October 23, 2009)
   Formerly: Defendant Exhibit 7 / Plaintiff Exhibits 13, 14

5. Exhibit 5: Local Career Board Chairperson Training PowerPoint Presentation
   Formerly: Defendant Exhibit 3 / Plaintiff Exhibit 16

6. Exhibit 6: ASAPP Training Guide, Chapter 7, Conducting an LCB
   Formerly: Defendant Exhibit 4 / Plaintiff Exhibit 17

7. Exhibit 7: October 23, 2009 LCB transcript (ECF 42-4, 23-35 of 84)
   Formerly Defendant Exhibit 10

8. Exhibit 8: Organizational Chart of FBI's Communications Exploitation Section (FBI 787)
   Formerly: Defendant Exhibit 18

9. Exhibit 9: Organizational Chart of FBI's Counterterrorism Division Chart (FBI 1811)
   Formerly: Defendant Exhibit 19

10. Exhibit 10:  Organizational Chart of FBI (publicly available)
    Formerly: Defendant Exhibit 20

B. Plaintiff's Exhibits

Plaintiff reserves the right to mark and have admitted into evidence additional exhibits for purposes of impeachment or rebuttal and the right to use enlargements and other demonstrative exhibits derived from testimony or other evidence at trial that are not identified in the exhibit list below.  Plaintiff also reserves the right to move into evidence any of defendant's exhibits.

Defendant's general objections to Plaintiff's proffered exhibits are set forth separately in Defendants' objections to be filed with the Pretrial Statement.

Below is the plaintiff's list of exhibits:

1.  Exhibit 1: Plaintiff Bassem Youssef's Performance Appraisal Reports.

Defendant's objections to Exhibit 1 are set forth separately in objections to be filed with the Joint Pretrial Statement.

2.  Exhibit 2: Recommendation for Intelligence Community Award (DCI Award).

Defendant's objections to Exhibit 2 are set forth separately in objections to be filed with the Joint Pretrial Statement.

3.  Exhibit 3: Plaintiff Bassem Youssef's Performance Appraisal Report (October 23, 2008).

Defendant's objections to Exhibit 3 are set forth separately in objections to be filed with the Joint Pretrial Statement.

4.  Exhibit 4: Plaintiff Bassem Youssef's Performance Appraisal Report (October 9, 2009).

Defendant's objections to Exhibit 4 are set forth separately in objections to be filed with the Joint Pretrial Statement.

5.  Exhibit 5: Summary Assessment of Bassem Youssef.

Defendant's objections to Exhibit 5 are set forth separately in objections to be filed with the Joint Pretrial Statement.

6.  Exhibit 6: Youssef to Venture (November 12, 2009).

Defendant's objections to Exhibit 6 are set forth separately in objections to be filed with the Joint Pretrial Statement.

7.  Exhibit 7: Email from Youssef to Michael Heimbach (November 4, 2009).

Defendant's objections to Exhibit 7 are set forth separately in objections to be filed with the Joint Pretrial Statement.

8.  Exhibit 8: Email from Heimbach to Youssef: Response to PAR Grievance (November 20, 2009).

Defendant's objections to Exhibit 8 are set forth separately in objections to be filed with the Joint Pretrial Statement.

9.  Exhibit 9: Job Posting Information Form (September 18, 2009).

Defendant has no objections to Exhibit 9.

  10. Exhibit 10: FD-954 of Bassem Youssef (October 2, 2009).

Defendant has no objections to Exhibit 10.

  11. Exhibit 11: FD-954 of Daniel Powers (October 2, 2009).

Defendant has no objections to Exhibit 11.

  12. Exhibit 12: "FBI's Least Wanted," Mother Jones (May/June 2009).

Defendant's objections to Exhibit 12 are set forth separately in objections to be filed with the Joint Pretrial Statement.

  13. Exhibit 13: Chairperson Internal LCB Matrix (October 23, 2009).

Defendant has no objections to Exhibit 13.

  14. Exhibit 14: LCB Matrix of Mr. Castro, Mr. Chase, and Mr. Zarone (October 23, 2009).

Defendant has no objections to Exhibit 14.

15.  Riyadh Inspection Report

  Defendant's objections to Exhibit 15 are set forth separately in objections to be filed with the Joint Pretrial Statement.

16.  Chapter 7, Conducting a Local Career Board, FBI bates numbers 2739-2817.

  Defendant's objections to Exhibit 16 are set forth separately in objections to be filed with the Joint Pretrial Statement.

17. Local Career Board Chairperson Training, FBI bates-stamped numbers 2852-2908.

  Defendant's objections to Exhibit 17 are set forth separately in objections to be filed with the Joint Pretrial Statement.

18. Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Second Request for Production of Documents

  Defendant's objections to Exhibit 18 are set forth separately in objections to be filed with the Joint Pretrial Statement.

19. FD-954 Form of Matthew P. Desmond (October 2, 2009)

Defendant has no objections to Exhibit 19.

20. FD-954 Form of Richard A. Davidson (October 2, 2009)

Defendant has no objections to Exhibit 20.

21. Signed Sworn Statement of Erkan A. Chase (September 16, 2010)

Defendant's objections to Exhibit 21 are set forth separately in objections to be filed with the Joint Pretrial Statement.

22. Signed Sworn Statement of Hipolito Castro, Jr. (September 16, 2010)

Defendant's objections to Exhibit 22 are set forth separately in objections to be filed with the Joint Pretrial Statement.

23. Signed Sworn Statement of Armando Fernandez (September 14, 2010)

Defendant's objections to Exhibit 23 are set forth separately in objections to be filed with the Joint Pretrial Statement.

24. Signed Sworn Statement of Arthur J. Zarone (October 19, 2010)

Defendant's objections to Exhibit 24 are set forth separately in objections to be filed with the Joint Pretrial Statement.

25. Report of Counseling by Regina Fields

Defendant has had not the opportunity to respond to this exhibit because it was first disclosed on March 11, 2015.

26. Testimony of Valerie Caproni before House Judiciary Committee (March 20, 2007) (excerpt)

Defendant's objections to Exhibit 26 are set forth separately in objections to be filed with the Joint Pretrial Statement.

27. Kohn to Venture (October 9, 2007)

Defendant's objections to Exhibit 27 are set forth separately in objections to be filed with the Joint Pretrial Statement.

28. FBI Non-Disclosure Statement

Defendant's objections to Exhibit 28 are set forth separately in objections to be filed with the Joint Pretrial Statement.

29. Nondisclosure Agreement Signed By Stephen Kohn (November 19, 2007)

Defendant's objections to Exhibit 29 are set forth separately in objections to be filed with the Joint Pretrial Statement.

30. Addendum to Non-Disclosure Agreement (November 19, 2007)

Defendant's objections to Exhibit 30 are set forth separately in objections to be filed with the Joint Pretrial Statement.

31. Signed Sworn Statement of Valerie Caproni (October 17, 2010) (rebuttal, if needed)

Defendant's objections to Exhibit 31 are set forth separately in objections to be filed with the Joint Pretrial Statement.

32. Emails concerning the remarks made against Youssef at a meeting ("hang him")

Defendant's objections to Exhibit 32 are set forth separately in objections to be filed with the Joint Pretrial Statement.

C.  Defendant's Exhibits

Defendant expects to introduce the following exhibits into evidence:

The following exhibits attached to Defendant's memoranda in support of motion for summary judgment may be introduced at trial, and copies were provided to Plaintiff pursuant to the Court's February 25, 2015:

1. Deposition of Mr. Youssef (Excerpt of Youssef Nov. 20, 2012 Dep. at 76-77, 86) (ECF 42-2, 62-64 of 99) & (Youssef Nov. 20, 2012 Dep. at 1, 138-139, 154) (ECF 51-2, 26-29 of 74).
2. Automated Selection and Promotion Program (ASAPP) materials (excerpt) (ECF 42-3, 2-23 of 70).
3. Local Career Board Chairperson training (excerpt) (ECF 42-3, 34-47 of 70), which the parties have agreed to re-designate as JX5.
4. ASAPP Training Guide, Chapter 7, Conducting an LCB (excerpt) (ECF 42-3, 49-52 of 70), which the parties have agreed to re-designate as JX6.
5. December 10, 2003 Memorandum (ECF 42-3, 54-60 of 70).
6. Job Posting Information Form (ASC position) (ECF 42-3, 62-64 of 70), which the parties have agreed to re-designate as JX1.
7. LCB scoring matrices (voting members' matrices, chair's matrix, final matrix) (ECF 42-3, 66-70 of 70), which the parties have agreed to re-designate as JX4.
8. Daniel Powers FD-954 (ECF 42-4, 2-11 of 84), which the parties have agreed to re-designate as JX2.
9. Bassem Youssef FD-954 (ECF 42-4, 13-21 of 84), which the parties have agreed to re-designate as JX3.

10. October 23, 2009 LCB transcript (ECF 42-4, 23-35 of 84), which the parties have agreed to re-designate as JX7.
11. October 23, 2009 Memorandum (ECF 42-4, 37-40 of 84).
12. November 18, 2009 SAMMS Board Agenda (ECF 42-4, 81-84 of 84).
13. FBI memorandum regarding Intelligence Community awards program; Youssef National Intelligence Certificate of Distinction; List of FBI recipients of Intelligence Community awards, Ex. 3 of reply (ECF 51-2, 45-54 of 74).
14. Emails regarding renewal of CAU telecommunications contract; FBI memorandum requesting approval of 60-day extension of CAU telecommunications contract, Ex. 4 of reply (ECF 51-2, 56-67 of 74, FBI 2930-31; 2912-26).

The following additional exhibits produced during discovery may be introduced at trial:

15. FD-954 Verification Form for Vacancy 2009/1000 (certified by Paule B. Louis on October 20, 2009) (FBI 307-371).
16. Richard Davidson FD-954 (FBI 340-349).
17. Matthew Desmond FD-954 (FBI 360-369).

The following exhibits attached to Defendant's counsel's February 25, 2015 email to Plaintiff's counsel may be introduced at trial:

18. Organizational Chart of FBI's Communications Exploitation Section (FBI 787), which the parties have agreed to re-designate as JX8.
19. Organizational Chart of FBI's Counterterrorism Division Chart (FBI 1811), which the parties have agreed to re-designate as JX9.
20. Organizational Chart of FBI (publicly available), which the parties have agreed to re-designate as JX10.

Defendant reserves the right to mark and have admitted into evidence additional exhibits for purposes of impeachment or rebuttal and the right to use enlargements and other demonstrative exhibits derived from testimony or other evidence at trial that are not identified in the exhibit list below.  Defendant also reserves the right to move into evidence any of plaintiff's exhibits.

Plaintiff's objections to Defendant's exhibits are set forth separately in objections to be filed with the Pretrial Statement.

## VIII.   Demonstrative Aids, Physical Evidence, Videotapes:

A. <u>Plaintiff</u>

Demonstrative Aids: Seven demonstrative aids have been created.

1. Demonstrative Aid #1: "Years of Service in FBI."

Defendant's objections to Demonstrative Aid #1 are set forth separately in objections to be filed with the Joint Pretrial Statement.

2.   Demonstrative Aid #2: "Supervisory Special Agent (SSA)."

Defendant's objections to Demonstrative Aid #2 are set forth separately in objections to be filed with the Joint Pretrial Statement.

3.   Demonstrative Aid #3: "Counterterrorism Related Work."

Defendant's objections to Demonstrative Aid #3 are set forth separately in objections to be filed with the Joint Pretrial Statement.

4.   Demonstrative Aid #4: "Legal Attaché."

Defendant's objections to Demonstrative Aid #4 are set forth separately in objections to be filed with the Joint Pretrial Statement.

5.   Demonstrative Aid #5: "Communications Exploitation Section (CXS)."

Defendant's objections to Demonstrative Aid #5 are set forth separately in objections to be filed with the Joint Pretrial Statement.

6.   Demonstrative Aid #6: "Unit Chief."

Defendant's objections to Demonstrative Aid #6 are set forth separately in objections to be filed with the Joint Pretrial Statement.

7.   Demonstrative Aid #7: "Handwritten notes of Arthur Zarone's Summary Assessment of Bassem Youssef."

Defendant has no objections to Demonstrative Aid #7.

8.   Demonstrative Aid #8 is a comparison between 2008 to 2009 ratings on "Organizing Planning and Coordinating" Rating C

Defendant's objections to Demonstrative Aid #8 are set forth separately in objections to be filed with the Joint Pretrial Statement.

9.   Demonstrative Aid #9 is a comparison between 2008 to 2009 ratings on "Acquiring, Applying, and Sharing Job Knowledge."

Defendant's objections to Demonstrative Aid #9 are set forth separately in objections to be filed with the Joint Pretrial Statement.

10. Demonstrative Aid #10 is a comparison between 2008 to 2009 ratings on "Communicating Orally and In Writing."

Defendant's objections to Demonstrative Aid #10 are set forth separately in objections to be filed with the Joint Pretrial Statement.

11. Demonstrative Aid #11 is a comparison between 2008 to 2009 ratings on "Maintaining High Professional Standards."

Defendant's objections to Demonstrative Aid #11 are set forth separately in objections to be filed with the Joint Pretrial Statement.

12. Demonstrative Aid #12 is a comparison between 2008 to 2009 ratings on "Achieving Results."

Defendant's objections to Demonstrative Aid #12 are set forth separately in objections to be filed with the Joint Pretrial Statement.

The plaintiff reserves the right to enlarge any exhibit on defendant or plaintiff's exhibit list or the deposition testimony of a witness.

B.  Defendant

Defendant may use the following as demonstrative aids, which are based on proffered exhibits and testimony, to assist the jury in understanding the evidence introduced at trial:

1.  FBI Special Agent Career Path Chart.
2.  Organizational chart of the FBI as of October 2009.
3.  Organizational chart of the Counterterrorism Division of the FBI as of October 2009.
4.  Organizational chart of the Communications Exploitation Section of the FBI as of October 2009.
5.  Pie charts comparing number of ASCs and ASACs who are promoted directly to SES level positions and comparing the number of special agents below GS-15 to the number of management-level agents at GS-15 or higher within FBI organizational structure.
6.  Local Career Board composition for Vacancy Announcement 2009/1000.
7.  Summary of Competency Ratings assigned by each LCB voting member.
8.  Final Ranking of Four Candidates.
9.  Comparison of Ratings of Powers and Youssef by Three LCB Voting Members.
10. Power Point slides of LCB policies.  *See* Def.'s Ex 3 above.

The defendant reserves the right to enlarge any exhibit on defendant or plaintiff's exhibit list or the deposition testimony of a witness.

C.  Objections

Plaintiff's objections to Defendant's Demonstrative Aids are set forth separately in objections to be filed with the Joint Pretrial Statement.

## IX. Deposition Designations

A. <u>Plaintiffs Designations</u>: None

B. <u>Counter-Designations</u>: None

C. <u>Defendants' Designations</u>:  Plaintiff's objections to Defendant's designations are set forth separately in objections to be filed with the Joint Pretrial Statement.

## X. Damages Itemization

A. <u>Plaintiff's Itemization of Damages</u>

1. Lost Wages and Benefits

Lost wages and benefits will be addressed in the equitable phase of these proceedings.

2. Compensatory Damages for Emotional Distress, Humiliation and Loss of Professional Reputation

Plaintiff has suffered emotional distress, physical pain, humiliation, embarrassment, and damage to professional reputation as a result of the discrimination alleged in his complaint. Plaintiff estimates the monetary value attached to the compensatory damages he suffered is not larger then $300,000 or the legal maximum permitted under Title VII of the Civil Rights Act of 1964, as amended, whichever is larger.

3. Equitable Relief

Plaintiff will ask for equitable relief pursuant to Title VII §2000e-5. Based on the jury verdict, plaintiff would submit a request for equitable relief post-trial.  Mr. Youssef is requesting the Court to grant economic damages and equitable relief including, but not limited to, retroactively granting Mr. Youssef the promotion, changing the order in the FBI record, notice posting in the FBI of employee rights, all economic damages that resulted from the denial to promote Mr. Youssef, and all reasonably incurred attorney fees and costs.

4. Attorney Fees and Costs

Plaintiff will ask for attorney fees and costs pursuant to Title VII §2000e-5. Based on the jury verdict, plaintiff would submit a request for attorney fees post-trial.

B. Defendant's Position

1.  Lost Wages and Benefits

Even if the jury were to find that the FBI retaliated against Mr. Youssef, the Court should not award him equitable relief for lost wages and benefits.  Mr. Youssef is not entitled to recover lost wages because the ASC position would not have involved an increase in salary or any additional benefits.

2.  Compensatory Damages for Emotional Distress, Humiliation and Loss of Professional Reputation

Even if the jury were to find that the FBI retaliated against Mr. Youssef, there is insufficient evidence for the jury to award compensatory damages for any alleged emotional distress, physical pain, humiliation, and embarrassment arising from his nonselection, which is based on his proffered self-serving testimony and other evidence to which Defendant has objected.  The ASC position did not involve an increase in salary and promotion to an ASAC field position, and not the ASC position, was the next step required for Mr. Youssef's advancement as a special agent.  Nor does Mr. Youssef proffer sufficient evidence to establish an entitlement to compensatory damages based on any alleged harm to his professional reputation.  In Youssef I, Mr. Youssef attributed these same alleged harms to alleged discriminatory and retaliatory acts other than the acts he challenges in this case.

3.  Equitable Relief

Even if the jury were to find that the FBI retaliated against Mr. Youssef, he is not entitled to equitable relief.  He cannot recover any equitable relief other than lost wages and benefits (see infra at 1) because the ASC position would not have involved an increase in salary, and retroactive promotion and reinstatement are not appropriate because Mr. Youssef has since voluntarily retired without claiming constructive discharge.

4.  Attorney Fees and Costs

Plaintiff is only entitled to reasonable attorney's fees if he prevails at trial.

## XI.  Relief Sought by Plaintiff

Mr. Youssef seeks relief for:

1.  Monetary Damages

2.  Compensatory Damages for Emotional Distress, Humiliation and Loss of Professional Reputation

3.   Equitable Relief Pursuant to Title VII §2000e-5

4.   Attorney Fees and Costs

**Defendant's Objections:**   *See* above.


## XII.   Motions to be Decided/Unusual Issues of Fact or Evidence

A.   The parties will file motions in limine in accordance with the Court's briefing schedule.

B.   In addition to motions in limine, Plaintiff contends that the FBI has inappropriately classified information contained in trial exhibits, including Mr. Youssef's FD-954.  Plaintiff previously requested that the FBI reconsider these withholdings, and is now seeking formal prepublication review from the FBI to declassify these materials.

**Defendant's preliminary response:**  The FBI has properly classified any redacted information that may be included in proposed trial exhibits and proposes a redaction jury instruction relating to this information.  Although Plaintiff represented that it would seek pre-clearance review in his initial disclosures served on December 9, 2011, Plaintiff did not seek such review until on or about February 24, 2015.  Defendant objects to any attempt by the Plaintiff to delay these proceedings so that he may pursue declassification of the classified information.

C.   Plaintiff is seeking further discovery and information from the Defendants related the Defendants investigation of Mr. Fernandez, and the decision of the Defendants to demote Mr. Fernandez.  *See* Exhibit 3, Plaintiff's Objections to the Deposition Designations for Mr. Fernandez.

**Defendant's preliminary response:**  Defendant has provided contact information for Mr. Fernandez and Plaintiff will proceed as he deems appropriate.  Defendant objects to the characterization of the information sought by Plaintiff concerning Mr. Fernandez.  Defendant further objects that discovery in this case has long been closed.


## XIII.   Estimate of Trial Time

The parties estimate that the trial in this case will last approximately five days.


## XIV.   Jury Voir Dire

A.   Joint Proposed Jury Voir Dire

The parties have proposed jury voir dire and discussed areas of agreement at the March 3, 2015 conference.  Instructions that are not objected to are set forth below in regular type; objections are indicated in bold.

B.  Plaintiff's Proposed Jury Voir Dire

    1.  Are you or a close family member personally acquainted with any of the following parties, lawyers, paralegals and witnesses in this case?

       Dave K. Colapinto
       Stephen M. Kohn
       Bassem Youssef
       Daniel Powers
       Armando Fernandez
       Arthur Zarone
       Erkan Chase
       Hipolito Castro
       Jeanine Santa
       S. Mary Louise Felder
       Douglas Price
       [Any other witness who may be called.]

    2.  What is your current occupation, or, if you are retired, what was your occupation before you retired?

    3.  Have you ever been employed by a federal agency or sought employment with a federal agency?

    4.  Have you ever been a party to a lawsuit, either as a plaintiff or defendant?  If so, what type of lawsuit was it and what was the outcome?

    5.  Given your work experiences, would you tend to disbelieve the testimony of someone who was a supervisor just because he or she was a supervisor?

    6.  Given your work experiences, would you tend to believe the testimony of someone who claimed that they suffered discrimination at work?

    7.  Do you have any formal training or education in the law or law enforcement?

    8.  Is there anything about the facts of this case as they have been explained to you that bother you in any way that might affect your judgment if you are selected to be on the jury?

    9.  Have you heard anything about this case or Mr. Youssef in the press?

    10. Have you ever served as a juror?  If so, what type of case was it and what was the outcome of the trial?

**11. Is there any reason that you could not be a fair and impartial juror in this case?**

12. This trial is expected to last five (5) days.  Is there anything about the length or scheduling of the trial that would interfere with your ability to serve?

13. A Plaintiff is a person who has initiated a lawsuit.  Do you have a bias for or against a plaintiff simply because he or she has brought a lawsuit?

14. Have you ever been a witness in a civil matter, regardless of whether it went to trial? If so, explain.

15. Have you ever testified in any court proceeding?

16. Have you or a close family member ever had to fire or discipline an employee?  If so, how was the matter resolved?

17. Has an employee ever filed a grievance or lawsuit against you or a close family member?  If so, how was the matter resolved?

18. Do you have any formal training in human resources or management?

19. Do you believe that employees sue their companies too often?  If so, explain your answer.

**20. Do you feel that United States government employees should not publically criticize their employers in the courts or in the press or before Congress?**

21. Reserved.

**22. Should the fact that an American citizen was born in a Middle Eastern country ever be taken into consideration when evaluating whether that person should hold a job that investigates terrorists?  If so, explain your answer.**

23. Reserved.

24. Do you believe that employees often sue their companies even though their claims have no merit? Please explain your answer.

25. Have you ever supervised other employees?  If so, how many?

26. Have you ever owned a business?  What type?

27. Have you ever been the Plaintiff (the party who sued) in a lawsuit?  If yes, please explain.

28. Have you ever been the defendant (the party who was sued) in a lawsuit? If yes, please explain.

29. Can you award substantial damages to a Plaintiff, even if he was not fired from his job and suffered no physical injury?

30. Do you believe that monetary damages in a lawsuit should be limited to out-of-pocket losses?

31. Do you believe that damages should not be awarded for non-physical injuries such as "emotional distress" or "loss of reputation"?

32. Have you or a family member ever been accused of discriminating against an employee? If so, please explain the situation.

**Defendant's Objections:**  Defendant objected to the voir dire that have been bolded.

C.   Defendant's Proposed Jury Voir Dire

1.      The plaintiff in this case is Bassem Youssef.  Do you know him?

2.      The Defendant is Eric Holder, United States Attorney General. Mr. Holder is the head of the United States Department of Justice. Do you know, or have you heard of Mr. Holder?

3.      The lawyers for the plaintiff are Stephen Kohn and David Colapinto of the law firm Kohn, Kohn & Colapinto, LLP.  Do you know either of them?  Have you, any family members, or close friends had any dealings with their law firm?

4.      The lawyers for the Defendant are John G. Interrante and Joshua Kolsky of the U.S. Attorneys' Office for the District of Columbia.  Do you know either of them?  Kathleen O'Neill-Taylor is an attorney with the FBI Office of General, who will be sitting at trial counsel table.  Have you, any family members, or close friends had any dealings with the United States Attorney's Office or the FBI?

5.      This case involves a claim of retaliation by Plaintiff against his employer, the Federal Bureau of Investigation, a component of the Department of Justice, under Title VII of the Civil Rights Act of 1964.  Specifically, Mr. Youssef claims that the FBI retaliated against him when he was not selected for an Assistant Section Chief position.  Does any member of this jury have a positive or negative attitude toward the FBI or any of the FBI's employees? Have you, any family members, or close friends had any dealings with the Federal Bureau of Investigation?

6.      Are you or any member of your family or a close friend currently employed by the federal Government?  How many years have you/they been employed?  Were you, any member of your family, or a close friend, ever employed by the federal government?  If so, under what circumstances did that employment end?

7.      The parties expect to call or refer to the following witnesses during the trial of this case.  Please listen to these names and let me know if you know any of them:

[List witnesses for both parties.]

8.      In your current job, are you a human resource advisor or representative?  Have you ever held a job like that?  If so, have you ever been involved in advising supervisors about hiring, firing, promoting or disciplining an employee?

9.      Are you an attorney?  Have you ever practiced law?  Do you work for or with attorneys in any capacity?

**10.**      **Have you, any member of your family or close friend ever filed a charge of discrimination with the EEOC or your employer's EEO office?  If so, what type of discrimination did you/they complain about?  Was a lawsuit filed?  What was the outcome?**

11.      Have you, any member of your family or close friend ever been involved in a court case as a plaintiff, defendant or witness?  If so, what kind of case was it?  Did it go to trial?  What was the outcome?  Were you satisfied with the outcome?  How do you think that experience might influence you if you were selected to be a juror in this case?

12.      Have you, any family member or close friend ever sued the United States government or made a claim for money against the United States government or sat on a jury in a case involving the United States government?  If so, please explain.

13.      Does any member of this jury panel have a positive or negative attitude toward the operations of the Federal Government, the operations of any of its agencies or the abilities of any of its employees or officials?

14.      Is there any reason why you might feel uncomfortable if you are selected to sit as a juror in an employment discrimination case involving allegations of retaliation?

**15.**      **Have you or any of your relatives or close friends ever been accused of retaliation, been the victim of retaliation, initiated a complaint based on retaliation, worked in an environment where retaliation was allowed, or been a witness, expert, juror, or attorney in a case involving a retaliation complaint?  If so, what were the circumstances?  How do you think that experience might influence you if you are selected to be a juror in this case?**

**16.**      **This case is not a case involving discrimination on the basis of Plaintiff's race, gender, age, color, national origin, or disability, and accordingly, you may not take**

**such factors into account in deciding this case.  Is there any reason you would be unable to obey this instruction and decide this action without regard to plaintiff's or any witness's or attorney's race, gender, age, color, national origin or disability?**

17.     Do you think you would tend to believe the word of an employer or supervisor over that of an employee?  On the other hand, would you tend to believe the word of an employee over an employer or supervisor?

**18.     Have you, any family member of close friend been unfairly denied a promotion at work or treated unfairly by a supervisor?  Have you, any family member or close friend ever felt marginalized in your job?  Have you ever felt that your ideas and contributions on the job were at one time appreciated, but that you were no longer valued? If so, how do you think that those experiences might influence you if you are selected to be a juror in this case?**

19.     Do you because of any of your religious, philosophical, or political beliefs feel that you would tend to lean toward or against one of the parties or be unable to decide this case fairly and impartially?

20.     Do you have any problems with your hearing or vision or any other physical problem that might impair your ability to serve as a juror in this case?

21.     Have you ever served on a jury before?  If so, when and for what type of case were you a juror?  Did anything occur in any prior trial or jury deliberations that would affect your ability to serve as a juror in this case and deliberate upon a verdict with an open mind?

22.     Is there any reason, whether based on the brief summary of this case that the Court has given you, your personal beliefs, or based on anything else, why you feel that you might not be able to decide this case fairly and impartially?

23.     It is expected that this case may last one week.  If you are selected to serve, is there any reason why you could not devote the time necessary to come to a just and fair verdict?

**Plaintiff's Objections:**  Plaintiff objected to the voir dire that have been bolded.

## XV.  Jury Instructions

The parties have exchanged proposed jury instructions and agreed to use the Youssef I instructions as the basis for instructions in this case, subject to revisions based on the facts of this case.  A copy of the proposed jury instructions is attached as Exhibit 4.  The exhibit includes disputed proposed special instructions submitted in lieu of objections.

## XVI.  Proposed Verdict Form

**Plaintiff's proposal:**  Plaintiff revised initial proposed verdict form as part of February 27, 2015 submissions.  *See* Exhibit 5.

**Defendant's revised proposal based on Youssef I jury instructions:**

1.   Has Plaintiff Bassem Youssef proven by a preponderance of the evidence that his

nonselection for the Assistant Section Chief position was a materially adverse action?

_____Yes                              _____No

(If your answer to Question 1 is "No," please stop your deliberations, sign the form below, and
inform the bailiff that your deliberations are over.

If you answered "Yes" to Question 1, then proceed to the next question.)


2.        Has Plaintiff Bassem Youssef proven by a preponderance of the evidence that  his

nonselection for the Assistant Section Chief position was to retaliate against Plaintiff  because

Plaintiff engaged in protected activity?

_____Yes                              _____No

(If your answer to Question 2 is "No," please stop your deliberations, sign the form below, and
inform the bailiff that your deliberations are over.

If you answered "Yes" to Question 2, then proceed to the next question.)


3.        Do you find by a preponderance of the evidence that Plaintiff Bassem Youssef

suffered compensatory damages as a result of Defendant's retaliation?

_____Yes                              _____No

(If your answer to Question 3 is "No," please stop your deliberations, sign the form below, and
inform the bailiff that your deliberations are over.

If you answered "Yes" to Question 3, then proceed to the next question.)

4.      Based on a preponderance of the evidence, what sum of money, if paid now in cash, do you find would reasonably compensate Plaintiff Bassem Youssef for any compensatory damages suffered as a result of Defendant's conduct.

Answer:        $_____

(Please sign the form below and inform the bailiff that your deliberations are over.)

Date:_____          _____
                                                  Foreperson

## XVII.   Proposed Amendments to the Pleadings

Plaintiff's Position: None

## XVIII.   No Waiver of Jury Trial

Mr. Youssef does not waive his right to a jury trial.  In accordance with Federal Rule of Civil Procedure 38 and 48, he continues to demand a jury trial on all issues.

## XIX.   Miscellaneous Matters

**Plaintiff's Miscellaneous Matter:**  At the parties' March 3, 2015 meet and confer meeting an issue arose concerning the comments written by Mr. Zarone on the 2009 PAR comments concerning an IG investigation.  The parties further discussed this issue but were not able to resolve their dispute.  As a result, Plaintiff added a number of new witnesses and exhibits to the pretrial statement.  Plaintiff's position on this matter, including his response to the objections raised by the Defendant, is set forth in Plaintiff's Objections to Defendant's Pretrial and Response to the Objections raised by Defendant attached as Exhibit 6.

**Defendants' Response:** In order to meet the filing deadline for the Pretrial Statement, Defendant prepared its objections to witnesses and exhibits disclosed as of March 10, 2015.  As noted in Defendant's objections, Defendant objects to the timeliness of the disclosure and reserves its right to supplement its objections at the appropriate time.

Respectfully submitted,

/s/ Stephen M. Kohn
Stephen M. Kohn, D.C. Bar No. 411513
David K. Colapinto, D.C. Bar No. 416390
Kohn, Kohn, & Colapinto, LLP
3233 P Street, N.W.
Washington, D.C. 20007
(202) 342-6980
sk@kkc.com
dc@kkc.com

Attorneys for Plaintiff


RONALD C. MACHEN JR, DC Bar # 447889
United States Attorney for the District of
  Columbia

DANIEL F. VAN HORN, DC Bar # 924092
Chief, Civil Division


By:      /s/ _____
JOHN G. INTERRANTE, PA Bar # 61373
JOSHUA M. KOLSKY, DC Bar # 993430
Assistant United States Attorneys
Civil Division
555 4th Street, NW, Room E-4808
Washington, DC  20530
Tel:     202.252.2519
Fax:    202.252.2599
Email:  John.Interrante@usdoj.gov
           Joshua.Kolsky@usdoj.gov


Attorneys for Defendant