**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
BASSEM YOUSSEF,                         )
                                        )      Civil Action 1:11-CV-01362 (CKK)
                                        )
               Plaintiff,               )          ECF
                                        )
       v.                               )
                                        )
ERIC HOLDER,                            )
United States Attorney General,         )
                                        )
               Defendant.               )
_____)

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PRETRIAL STATEMENT AND**
**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S**
**PRETRIAL STATEMENT**

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PRETRIAL STATEMENT**

Plaintiff hereby objects to defendant's pretrial statement as follows:

   I.  Parties and Counsel.

       No Objection.

   II.  Neutral Statement of the Case.

       No Objection.

  III.  Statement of Defendant's Defenses to Plaintiff's Claims.

       No Objection Required.  Plaintiff's position on claims is set forth in his section of the brief.

  IV.  Defendant's Proposed Statement of the Case

       No Objection Required.  Plaintiff's Statement of the Case is set forth in his section of the brief.

   V.  Defendant's Witnesses

           1.  Hipolito Castro

**Plaintiff's Objection**: This witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

2. Erkan A. Chase

**Plaintiff's Objection**: This witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

3. Arthur J. Zarone

**Plaintiff's Objection**: This witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

4. Armando Fernandez

**Plaintiff's Objection**:  Plaintiff has filed an objection to the introduction of this witness's testimony by deposition.  *See* Attachment 1, Plaintiff Youssef's Response to Defendant's Designation of Deposition Testimony of Armando Fernandez.  Additionally, the witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

5. Valerie Parlave

**Plaintiff's Objection**:  The Defendant failed to list this witness on its required Rule 26 disclosures, and, pursuant to Federal Rule of Civil Procedure 37(c)(1), cannot call this witness at trial.  Furthermore, the witness is expected to give opinion and expert testimony.  However, the witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report. *See* Joint Rule 26(f) Report.  Additionally, the Defendant did identify other witnesses who have expertise on the promotional practices of the FBI, and the Career Board process.  The testimony of this witness would be duplicative.  Finally, the Plaintiff carefully decided whom he would depose during the pretrial discovery process based on the FBI's Rule 26 disclosures.  Plaintiff deposed the human resources professionals identified by the Defendant, and it would be highly prejudicial to permit the FBI to call a witness who was not deposed and not properly identified as a witness.

Federal Rule of Civil Procedure 37(c)(1) states, "if a party fails to provide or identify a witness as required by [the Rules], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(c)(1). The testimony of this witness is neither justified nor harmless. The testimony of Ms. Parlave is not justified because without her testimony, the Defendant would suffer no harm, as all of the Defendant's proposed witnesses are trained and well versed with the FBI's promotional policies and practices for special agents.  In addition, the introduction of this witness is not harmless

2

because it introduces an "unfair surprise hindering the prejudiced party's ability to examine and contest that witness' evidence." *Smith v. Henderson*, 2014 U.S. Dist. LEXIS 97617 (D.D.C., 2014), quoting *Elion v. Jackson*, 544 F. Supp. 2d 1 (D.D.C. 2008). Furthermore, Mr. Youssef, "has been prejudiced" because he has not been afforded an opportunity to depose on or otherwise challenge the declarations" of Ms. Parlave. *United States ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108 (D.D.C., 2007).

6. Michael J. Heimbach

   **Plaintiff's Objection**:  The witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

7. Michael B. Ward

   **Plaintiff's Objection**: The witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

8. Douglas Price

   **Plaintiff's Objection**: The witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

9. Daniel Powers

   **Plaintiff's Objection**:  The Defendant failed to list this witness on its required Rule 26 disclosures, and, pursuant to Federal Rule of Civil Procedure 37(c)(1), cannot call this witness at trial.  Even if permitted to testify, the witness cannot give opinion or expert testimony, as the Defendant did not file the required Opinion/Expert report.

VI.  Defendant's Exhibits

1. Exhibit 1: Deposition of Mr. Youssef

   **Plaintiff's Objection**: Plaintiff objects to Exhibit 1 for Defendant's improper use of a deposition transcript. Mr. Youssef will testify at the trial.

2. Exhibit 2: Automated Selection and Promotion Program (ASAPP) Materials (excerpt)

   **Plaintiff's Objection**: Plaintiff objects to Exhibit 2, as it was not produced in discovery.

5. Exhibit 5: December 10, 2003 Memorandum (ECF 42-3, 54-60 of 70)

**Plaintiff's Objection**: Plaintiff objects to Exhibit 5, as it was not produced in discovery.

12.  Exhibit 12: November 18, 2009 SAMMS Board Agenda

**Plaintiff's Objection**: Plaintiff objects to Exhibit 12, as it is immaterial and neither part of the basis for the selection decision, nor identified in Defendant's Interrogatory responses as a basis for the selection decision. The document may cause confusion for the jury.

13.  Exhibit 13: FBI memorandum regarding Intelligence Community awards program; Youssef National Intelligence Certificate of Distinction; List of FBI recipients of Intelligence Community awards, Ex. 3 of reply

**Plaintiff's Objection**: Plaintiff objects to Exhibit 13 because it was not produced in discovery. However, since this document is now being produced for the first time, Plaintiff may make pages 1-5 his own exhibit, as it is a statement of FBI policy concerning eligibility to receive the DCI Award. Plaintiff completely objects to the use of pages 7-10 as these pages were not produced in discovery, are not connected to the first five pages of the exhibit and the record keeping system from which they were produced is unclear. Additionally, it is not possible to judge the authenticity or reliability of the document.

14.  Exhibit 14: Emails regarding renewal of CAU telecommunications contract; FBI memorandum requesting approval of 60-day extension of CAU telecommunications contract.

**Plaintiff's Objection**: Plaintiff is reviewing Exhibit 14 to verify that the provided email chain is complete. Plaintiff reserves the right to introduce additional emails into the email chain if any are missing from provided emails. Additionally, Plaintiff reserves the right to introduce other rebuttal evidence related to the performance issues referenced in this email chain.

15.  Exhibit 15: FD-954 Verification Form for Vacancy 2009/1000 (certified by Paule B. Louis on October 20, 2009)

**Plaintiff's Objection**: Plaintiff has no objections to Exhibit 15 but requests it only be admitted upon request.

16.  Exhibit 16: Richard Davidson FD-954

**Plaintiff's Objection**: Plaintiff objects to Exhibit 16, as it is immaterial. It also would be confusing to the jury. This document was not listed as a basis for the non-selection of Mr. Youssef for the position in Defendant's Interrogatory responses, and the document is not relevant to this case. Based on the

Defendant's discovery responses, discovery was not conducted on this document, and permitting the Defendant to introduce this document would be prejudicial.

17. Exhibit 17: Matthew Desmond FD-954

**Plaintiff's Objection**: Plaintiff objects to Exhibit 17, as it is immaterial. It also would be confusing to the jury. This document was not listed as a basis for the non-selection of Mr. Youssef for the position in Defendant's Interrogatory responses, and the document is not relevant to this case. Based on the Defendant's responses to interrogatories and other discovery responses, discovery was not conducted on this document, and permitting the Defendant to introduce this document would be prejudicial.

VII.  Defendant's Demonstrative Aids

1. Demonstrative Aid 1:  <u>No Objection</u> – produced in a timely manner in accordance with this Court's Scheduling Order dated February 11, 2015.

2. Demonstrative Aid 2: <u>No Objection</u> – produced in a timely manner in accordance with this Court's Scheduling Order dated February 11, 2015.

3. Demonstrative Aid 3: <u>No Objection</u> – produced in a timely manner in accordance with this Court's Scheduling Order dated February 11, 2015.

4. Demonstrative Aid 4: Organizational chart of the Communications Exploitation Section of the FBI as of October 2009

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 4. The Defendant failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Doc. No. 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document. No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence. The Defendant is not barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

Additionally, because Defendant has not produced this document, it is not possible to determine whether the document accurately reflects the evidence upon which it is based. It is also not possible to determine whether the evidence upon which this exhibit was produced in discovery and/or is relevant to this proceeding.

5. Demonstrative Aid 5: Pie charts comparing number of ASCs and ASACs who are promoted directly to SES level positions and comparing the number of special agents below GS-15 to the number of management-level agents at GS-15 or higher within FBI organizational structure

   **Plaintiff's Objection**: Plaintiff objects to demonstrative aid 5.

   This demonstrative aid purports to discuss the numbers of Assistant Special Agent in Charge ("ASAC") positions, the number of Assistant Section Chief ("ASC") positions and the relationship of these positions to Senior Executive Service positions. Plaintiff does not believe that either this statistical data or the underlying justification for this data were produced in discovery and/or identified in the Defendant's Rule 26 disclosures as being material to this case. Because the documents upon which this "aid" is based were not produced in discovery, it cannot be used at trial. Furthermore, permitting the introduction of any testimony related to this aid should not be permitted, as the underlying documents for which it is based were not produced in discovery, nor identified in the Rule 26 disclosures.

   Additionally, the Defendant failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Document 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document. No good cause exists for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence. The Defendant should not be barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

   Finally, based on the representations made in the FBI's Rule 26 disclosures, and based on the factual issues in this case, the aid is not relevant or material. Mr. Youssef did not apply for an ASAC position, and whether or not he applied for any such position is immaterial to this proceeding. The fact that the aid is not relevant or material is reinforced by the failure of the FBI to produce the underlying documents in discovery and/or as required in its Rule 26 disclosures. If the FBI did fail to produce relevant evidence for which it intends to rely upon at trial in its mandatory Rule 26 disclosures, sanctions would be appropriate, which would include the prohibition of the use of this information at trial.

6. Demonstrative Aid 6: Local Career Board composition for Vacancy Announcement 2009/1000

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 6.  The Defendant failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Document 73. As of March 11, 2015, this document still has not been produced.  Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document.  No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence.  The Defendant should not be barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

7. Demonstrative Aid 7: Summary of Competency Ratings assigned by each LCB voting member

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 7.

First, because Defendant has not produced this document, it is not possible to determine whether the document accurately reflects the evidence upon which it is based.  Second, it is not possible to determine whether the evidence upon which this exhibit was produced in discovery and/or is relevant to this proceeding.

The Defendant also failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015.  *See* ECF Document 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document.  No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence.  The Defendant should not be barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

8. Demonstrative Aid 8: Final Ranking of Four Candidates

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 8.

First, because Defendant has not produced this document, it is not possible to determine whether the document accurately reflects the evidence upon which it is based.  Second, it is not possible to determine whether the evidence upon which this exhibit was produced in discovery and/or is relevant to this proceeding.

Third, based on the interrogatory responses filed by Defendant, the rankings of the other two non-selected candidates were not relied upon in making the selection decision regarding Mr. Youssef, so the introduction of that evidence would be irrelevant, immaterial, prejudicial and confusing.

The Defendant also failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Document 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document.  No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence.  The Defendant should not be barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

9.  Demonstrative Aid 9: Comparison of Ratings of Powers and Youssef by Three LCB Voting Members

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 9.

First, because Defendant has not produced this document, it is not possible to determine whether the document accurately reflects the evidence upon which it is based.  Second, it is not possible to determine whether the evidence upon which this exhibit was produced in discovery and/or is relevant to this proceeding.

The Defendant also failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Document 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document.  No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence.  The Defendant should not be barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

10. Demonstrative Aid 10: Power Point slides of LCB policies

**Plaintiff's Objection**: Plaintiff objects to demonstrative aid 10.

The Defendant also failed to produce this demonstrative aid as required in the initial scheduling order governing the pretrial brief, and also failed to comply with the production requirement ordered by this Court on February 11, 2015. *See* ECF Document 73. As of March 11, 2015, this document still has not been produced. Permitting the late introduction of this document would be prejudicial, as the pretrial brief and the various objections have been filed, and Plaintiff is preparing for trial without the benefit of this document.  No good cause existed for permitting the late filing of this document, and Defendant will not be prejudiced, as a demonstrative aid is simply a tool for the Defendant to summarize other evidence.  The Defendant is not barred from introducing the substantive evidence, but must be held accountable to the requirements of the scheduling order, especially after failing to adhere to the prior order (which caused a delay in this proceeding).

VIII.  Defendant's Deposition Designations

    1.  Deposition Designation of Armando Fernandez (February 11, 2015)

    **Plaintiff's Objection**: Plaintiff's objection to Defendant's Deposition Designation of Armando Fernandez is set forth separately.  *See* Attachment 1.

IX.  Damages Itemization.

The parties' respective positions regarding damages are set forth in the Pretrial Statement and no objections are necessary.

X.  Relief Sought by Plaintiff

The parties' respective positions regarding the relief sought by Plaintiff are set forth in the Pretrial Statement and no objections are necessary.

XI.  Motions to be Decided/Unusual Issues of Fact or Evidence

No objections are necessary.

XII.  Estimate of Trial Time

No objections are necessary.

XIII.  Jury Voir Dire

The parties have marked in **bold** in the Pretrial Brief those parts of the voir dire for which objections were made.

XIV.   Jury Instructions

The parties have filed the proposed jury instructions.  These instructions set forth the differing position of the parties on the instructions for which there was disagreement.

XV.   Proposed Verdict Form

Plaintiff's version of the verdict form is less confusing then that proposed by the Defendant.  This form should be kept as simple as possible.

XVI.   Proposed Amendments to the Pleadings

No objections necessary.

XVII.   No Waiver of Jury Trial

No objections necessary.

XVIII.   Miscellaneous Matters

No objections necessary

## PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PRETRIAL BRIEF

I.   Parties and Counsel.

No response necessary.

II.  Neutral Statement of the Case.

No response necessary.

III. Statement of Plaintiff's Claims.

No response necessary.

IV.  Statement of Defendant's Defenses to Plaintiff's Claims

No response necessary, except that Plaintiff does not agree with this Statement of Defenses and reserves his right to object to these defenses.

V.   Parties' Proffered Undisputed and Stipulated Facts.

No response necessary.

VI.  Plaintiff's Witnesses.

**Plaintiff's Response to Defendant's Objections to Plaintiff's Proffered Witness Testimony:**

1.  Ed Curran

**Plaintiff's Response to Defendant's Objection**:  As set forth in the Expert and Opinion Testimony filed with this Court, Mr. Curran's testimony, is relevant and material to this proceeding. *See* Plaintiff's Report Regarding Expert and Lay Opinion Testimony, ECF Doc. No. 74.

The fact that the Career Board members did not directly confer with Mr. Curran does not render his testimony inadmissible.  The date of Mr. Curran's resignation from the FBI goes to the weight of Mr. Curran's testimony, not admissibility.  Mr. Curran's testimony is not duplicative and cumulative, as the only other witness who can testify as a plaintiff's witness regarding the contents of Mr. Youssef's FD-954 is Mr. Youssef himself.  However, some (or all) members of the jury may view the testimony of Mr. Youssef as overly self-serving.

In regard to Mr. Curran's prior testimony, it is not the intent to have Mr. Curran repeat all of that testimony. His prior testimony was identified in order to put the Defendant on notice of this prior testimony inasmuch as that testimony may be relevant to this proceeding.

2. Bassem Youssef

**Plaintiff's Response to Defendant's Objection**: Defendant's objection to any testimony by Mr. Youssef concerning any work experience, accomplishments, awards, qualifications, or similar attributes that were not expressly described in the FD-954 is far too broad and if sustained would be highly prejudicial to Mr. Youssef. Mr. Youssef is entitled to testify as to how the denial of the promotion impacted his reputation, his psychological wellbeing and his career, and as such his prior work experience etc. may be relevant and material to that testimony. Furthermore, Mr. Youssef's downgraded 2009 performance review is relevant and material to this proceeding, as are other performance related matters that were within the personal knowledge of Career Board members, who supervised Mr. Youssef or knew him personally. The testimony as to what the Career Board members actually relied upon in making their ratings is a question of fact for the jury to determine. Although the FBI maintains that the Career Board only relied on the information in the FD-954, Plaintiff disputes that fact.

As set forth in Mr. Youssef's expert and opinion disclosures, Mr. Youssef may offer his opinion testimony as to whether any specific actions taken by the FBI were retaliatory under Title VII, and explain his basis for that testimony. Defendant's attempt to exclude that testimony is improper. Mr. Youssef worked for the FBI for 27 years and personally witnessed and observed conduct for which he can reasonably form an opinion was retaliatory. Mr. Youssef set forth the basis for this opinion and expert testimony in his expert and opinion testimony disclosure. *See* Plaintiff's Report Regarding Expert and Lay Opinion Testimony, ECF Doc. No. 74.

In regard to facts related to his underlying discrimination and other retaliation claims, Plaintiff agrees that these issues are not before the Court, except as background. Very limited testimony will be elicited concerning the background to his underlying EEO issues. For example, it would be appropriate for Mr. Youssef to testify that he had filed a discrimination claim based on alleged discrimination due to his Egyptian heritage, and his allegation that his services were not properly used after the 9/11 attacks. Any such testimony would be very short and could be informally vetted by the defense prior to trial.

In regard to testimony concerning Mr. Youssef's decision to retire early from the FBI, the impact of the denial of the Assistant Section Chief promotion on that decision would be clearly relevant to the determination of damages.

3. Armando Fernandez

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and can be related not only to soliciting facts that may help Plaintiff's case or impeaching Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  For example, Defendant "objects" to the witness's "proffered testimony to the extent that it is inconsistent with" the witness's "actual testimony at the deposition conducted by Plaintiff."  This objection runs counter to the basic rules of cross-examination, in which the party-opponent may explore or attempt to solicit, contradictions in prior testimony.  Defendant's objection that Plaintiff may attempt to question the witness on facts that the Defendant believes are "inaccurate" is not proper.  The accuracy and credibility of this witness's testimony is a jury question.

Defendant's objection to Mr. Fernandez's testimony about the 2009 PAR and the disposition of the appeal is not irrelevant. Mr. Fernandez approved the downgraded PAR, and approved the comments made by Mr. Zarone.  As stated in this Court's decisions on summary judgment, these matters are clearly relevant to this case. *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establish a motive for pretext. It is also relevant to establish that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

4.  Arthur Zarone

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and can be related not only to soliciting facts that may help Plaintiff's case or impeaching Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  For example, Defendant "objects" to the witness's "proffered testimony to the extent that it is inconsistent with" the witness's "actual testimony at the deposition conducted by Plaintiff."  This objection runs counter to the basic rules of cross-examination, in which the party-opponent may explore or attempt to

solicit, contradictions in prior testimony.  Defendant's objection that Plaintiff may attempt to question the witness on facts that the Defendant believes are "inaccurate" is not proper.  The accuracy and credibility of this witness's testimony is a jury question.

Defendant's objection to Mr. Zarone's testimony about the 2009 PAR and the disposition of the appeal is not irrelevant. Mr. Fernandez wrote and approved the downgraded PAR. As stated in this Court's decisions on summary judgment, these matters are clearly relevant to this case. *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establish a motive for pretext.   It is also relevant to establish that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

5.   Erkan A. Chase

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and can be related not only to soliciting facts that may help Plaintiff's case or impeaching Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  For example, Defendant "objects" to the witness's "proffered testimony to the extent that it is inconsistent with" the witness's "actual testimony at the deposition conducted by Plaintiff."  This objection runs counter to the basic rules of cross-examination, in which the party-opponent may explore or attempt to solicit, contradictions in prior testimony.  Defendant's objection that Plaintiff may attempt to question the witness on facts that the Defendant believes are "inaccurate" is not proper.  The accuracy and credibility of this witness's testimony is a jury question.

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establishing a motive for pretext. It is also relevant to establishing that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

6.   Hipolito Castro

14

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross-examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and can be related not only to soliciting facts that may help Plaintiff's case or impeaching Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  For example, Defendant "objects" to the witness's "proffered testimony to the extent that it is inconsistent with" the witness's "actual testimony at the deposition conducted by Plaintiff."  This objection runs counter to the basic rules of cross-examination, in which the party-opponent may explore or attempt to solicit, contradictions in prior testimony.  Defendant's objection that Plaintiff may attempt to question the witness on facts that the Defendant believes are "inaccurate" is not proper.  The accuracy and credibility of this witness's testimony is a jury question.

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establishing a motive for pretext. It is also relevant to establishing that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

7.  Jeanine Santa

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who may either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross-examination if called as a witness by the Defendant.  She may be called to testify regarding Defendant's knowledge of Mr. Youssef's protected activities, and any such testimony will not be unduly duplicative of that of Mr. Zarone.  This witness had direct knowledge that the FBI circulated an article describing Mr. Youssef's Title VII within the FBI, and knowledge that she directly gave this document to one of the Career Board members, Mr. Zarone.  This witness has evidence that directly contradicts the FBI's position that neither Mr. Zarone, nor any other Career Board members, had knowledge of the meaning of Mr. Youssef's claims against the FBI, and the "Legal Matter."

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establish a motive for pretext. It is also relevant to establish that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

15

8.  S. Mary Louise Felder

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and related not only to soliciting facts that may help Plaintiff's case or impeach Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  This witness was also identified in the Defendant's Rule 26 statement, and can be cross-examined on any matter for which the Defendant placed at issue in this case.

In regard to Defendant's objection concerning this witness's testimony about Mr. Youssef's 2009 PAR, this testimony is clearly relevant as reflected in this Court's prior decisions, and Defendant's tacit recognition that her testimony may be relevant to "show retaliatory animus."

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establish a motive for pretext.  It is also relevant to establish that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

9.  Tracy North

**Plaintiff's Response to Defendant's Objection**:  This witness is a hostile witness who will either be called as an adverse witness in Plaintiff's case-in-chief or subjected to cross examination if called as a witness by the Defendant.  It is well established that the scope of cross examination, either of an adverse witness or a witness subjected to cross examination, is extremely broad and related not only to soliciting facts that may help Plaintiff's case or impeach Defendant's evidence, but also relevant to determining the credibility of the witness.  Thus, Defendant's overall objections to this witness's testimony are not proper.  For example, Defendant "objects" to the witness's "proffered testimony to the extent that it is inconsistent with" the witness's "actual testimony at the deposition conducted by Plaintiff."  This objection runs counter to the basic rules of cross-examination, in which the party-opponent may explore or attempt to solicit, contradictions in prior testimony. This witness was also identified in the Defendant's Rule 26 statement, and can be cross-examined on any matter for which the Defendant placed at issue in this case.

In regard to Defendant objection concerning this witness's testimony about Mr. Youssef's 2009 PAR, this testimony is clearly relevant as reflected in this Court's

prior decisions, and Defendant's tacit recognition that her testimony may be relevant to "show retaliatory animus."

In regard to this witness's knowledge that it was a violation of FBI policy to downgrade Mr. Youssef's performance based on his participation in either his EEO activities or the IG investigation, this knowledge is directly relevant to the witness's (and the FBI's) intent, and relevant to establish a motive for pretext. It is also relevant to establish that Mr. Youssef engaged in protected activity for which the FBI was not permitted to retaliate.

10. Valerie Caproni
    **Plaintiff's Response to Defendant's Objection**: *See* Miscellaneous Matters, Section XIX.

11. Inspector General of the U.S. Department of Justice
    **Plaintiff's Response to Defendant's Objection**:  *See* Miscellaneous Matters, Section XIX.

12. Deputy Attorney General
    **Plaintiff's Response to Defendant's Objection**:  *See* Miscellaneous Matters, Section XIX.

VII.  Plaintiff's Exhibits

**Plaintiff's Response to Defendant's Objections to Plaintiff's Proffered Exhibits**:

1.  Exhibit 1: Plaintiff Bassem Youssef's Performance Appraisal Reports

    **Plaintiff's Response to Defendant's Objection**:  This exhibit is relevant to establish a foundation for Mr. Youssef's damages, as set forth in Plaintiff's Expert Witness and Opinion Testimony filing.  *See* Plaintiff's Report Regarding Expert and Lay Opinion Testimony, ECF Doc. No. 74.  They are also relevant for purposes of impeaching the testimony of the Career Board members regarding their purported ignorance of many of the facts set forth in Mr. Youssef's FD-954.  The three voting members of the Career Board testified that they were ignorant of key facts related to counterterrorism, such as the identity and/or role of the Blind Sheikh and the problems that the United States had regarding cooperation with the Saudi intelligence agencies.  Given the Career Board members' extensive experience within the FBI counterterrorism program, and their high-level management positions, this testimony is not credible.  These documents will be used to explain why Mr. Youssef filled out his FD-954 in the manner he did, why he reasonably expected that Career Board members selecting an Assistant Section Chief in the FBI's counterterrorism program would know the importance and meaning of the information he was conveying in his FD-954, and how the Career Board member's

testimony to their interpretation of Mr. Youssef's FD-954 was not credible and constitutes evidence of pretext.

2.  Exhibit 2: Recommendation for Intelligence Community Award (DCI Award)

**Plaintiff's Response to Defendant's Objection**:  This exhibit is relevant to establish a foundation for Mr. Youssef's damages, as set forth in Plaintiff's Expert Witness and Opinion Testimony filing.  *See* Plaintiff's Report Regarding Expert and Lay Opinion Testimony, ECF Doc. No. 74. They are also relevant for purposes of impeaching the testimony of the Career Board members regarding their purported ignorance of many of the facts set forth in Mr. Youssef's FD-954.  The three voting members of the Career Board testified that they were ignorant of key facts related to counterterrorism, such as the identity and/or role of the Blind Sheikh and the problems that the United States had regarding cooperation with the Saudi intelligence agencies.  Given the Career Board members' extensive experience within the FBI counterterrorism program, and their high-level management positions, this testimony is not credible.  These documents will be used to explain why Mr. Youssef filled out his FD-954 in the manner he did, why he reasonably expected that Career Board members selecting an Assistant Section Chief in the FBI's counterterrorism program would know the importance and meaning of the information he was conveying in his FD-954, and how the Career Board member's testimony to their interpretation of Mr. Youssef's FD-954 was not credible and constitutes evidence of pretext.

3.  Exhibit 3: Plaintiff Bassem Youssef's Performance Appraisal Report (October 23, 2008)

**Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted and wrote this reduction.  Among other reasons, it is highly relevant to demonstrate motive, animus, and pretext.  It also demonstrates that member(s) of the Career Board, including its Chairman and at least one voting member, had an improper and retaliatory view of Mr. Youssef's performance.  This Court has already reviewed the relevancy of this drop in ratings, and the decision of this Court clearly states that this drop is relevant.  *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

4.  Exhibit 4: Plaintiff Bassem Youssef's Performance Appraisal Report (October 9, 2009)

**Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and

the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted and wrote this reduction.  Among other reasons, it is highly relevant to demonstrate motive, animus, and pretext.  It also demonstrates that member(s) of the Career Board, including its Chairman and at least one voting member, had an improper and retaliatory view of Mr. Youssef's performance. This Court has already reviewed the relevancy of this drop in ratings, and the decision of this Court clearly states that this drop is relevant. *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years.  The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

5.  Exhibit 5: Summary Assessment of Bassem Youssef

Defendant had no objection to Exhibit 5.

6.  Exhibit 6: Youssef to Venture (November 12, 2009)

**Plaintiff's Response to Defendant's Objection**:  This document sets forth the allegation Mr. Youssef raised within the FBI, and demonstrates that the FBI did not correct this matter when presented with it prior to litigation.  Furthermore, it demonstrates that Mr. Youssef exhausted his administrative remedies, and is admissible as the basis for Mr. Youssef's allegations.  The letter speaks for itself and would not confuse a jury.  Any such confusion could be corrected by an instruction that this document is simply Mr. Youssef's complaint.  None of the information in the document is hearsay, as it does not meet the definition of hearsay, and would constitute admissions of a party opponent anyway.

7.  Exhibit 7: Email from Youssef to Michael Heimbach (November 4, 2009)

**Plaintiff's Response to Defendant's Objection**:  This document is the internal complaint filed by Mr. Youssef seeking to correct his 2009 PAR.  It demonstrates that Mr. Youssef tried to have the PAR fixed internally, and partially succeeded. It sets forth the basis for Mr. Youssef's objection to the Zarone/Fernandez 2009 PAR, which is highly relevant to this case.

Defendant's primary objection appears to be based on relevancy.  However, this court has already explained that the downgrading of the PAR is highly relevant to this case.

8.  Exhibit 8: Email from Heimbach to Youssef: Response to PAR Grievance
    (November 20, 2009)

    **Plaintiff's Response to Defendant's Objection**:  The exhibit as presented by
    Plaintiff is a copy of the document for which Mr. Youssef received back from the
    FBI explaining the changes to his PAR.

9.  Exhibit 9: Job Posting Information Form (September 18, 2009)

    No objections raised.  Now a joint exhibit.

10. Exhibit 10: FD-954 of Bassem Youssef (October 2, 2009)

    No objections raised.  Now a joint exhibit.

11. Exhibit 11: FD-954 of Daniel Powers (October 2, 2009)

    No objections raised.  Now a joint exhibit.

12. Exhibit 12: "FBI's Least Wanted," Mother Jones (May/June 2009)

**Plaintiff's Response to Defendant's Objection**:  This article states that Mr. Youssef's
federal court action was EEO related.  It is highly relevant to the issue of Defendant's
knowledge, and under established case law is fully admissible.  For example, in  *Kalma v.
City of Socorro* , 2008 U.S. Dist. LEXIS 109441; 2008 WL 954165, n. 22 (W.D. Texas,
2008), the court admitted a newspaper article into evidence on the nearly identical
grounds for which Mr. Youssef intends to introduce Exhibit 12:   "*The El Paso Times
article's import in the instant case is not the truth of the statements asserted therein,
although some statements were made by members of the Socorro Governing Body, but,
rather, knowledge on the part of the Socorro Governing Body that complaints had been
made.*"

Similarly, Exhibit 12 is not being admitted for the truth of the matters asserted in the
article, but to show "knowledge" by the Defendants that the "complaints" regarding the
federal court action concerned Mr. Youssef's allegations of national origin
discrimination.  Additionally, as explained below, they also are highly relevant to
establishing pretext and to impeaching the credibility of a key defense witness.

Exhibit 12 also confirms that Mr. Youssef's "legal matter" concerned allegations of
national origin discrimination protected under Title VII.  The FBI posted this article on in
its computer system, causing it to be reviewed by various employees and managers.  One
of the persons who viewed the article was a manager in counterterrorism, Ms. Santa.  Ms.
Santa provided a copy of this article to Mr. Zarone.  Mr. Zarone admitted to reviewing the
article.  The FBI made this article relevant, not to prove any of the assertions contained
therein, but to directly demonstrate that the testimony of Mr. Zarone as to his purported
ignorance of the basis for Mr. Youssef's "legal matter" is not credible and was not fully

truthful. This highly relevant evidence is necessary for Mr. Youssef to prove his claims, as it not only impeaches the testimony of Mr. Zarone, but also demonstrates that Mr. Zarone was not candid about his knowledge of the "Legal Matter." It is also evidence of pretext and evidence for which the jury can rely on to reach the conclusion that the non-selection of Mr. Youssef was retaliatory. Furthermore, the fact that this article was circulated within the FBI, and circulated to at least one member of the Career Board, can constitute circumstantial evidence that the other members of the Career Board who denied knowing that Mr. Youssef had filed any Title VII claims were not truthful. The fact that the other Career Board members knew who Mr. Youssef was, and that one of them admits to knowing Mr. Youssef well, and to having had various conversations with him, further demonstrates that a jury could find the type of information in this article would be the subject matter of workplace gossip. This is especially so of employees who personally knew Mr. Youssef, such as Ms. Santa, Mr. Zarone and the Career Board members. Any prejudicial impact to the Defendant can be offset by jury instructions, and/or an instruction given to the jury at the time the article is introduced into evidence. Furthermore, it was the Defendant who circulated this article at the workplace, and it was Mr. Youssef's managers who discussed the article and shared it among themselves. It would be highly prejudicial to Plaintiff for the Defendant to voluntarily circulate evidence at the workplace, and then block Plaintiff's ability to introduce evidence for which the FBI itself circulated.

Furthermore, this exhibit provides evidence that directly contradicts a key defense raised by the Defendant. At summary judgment, and as part of its reconsideration of this Court's summary judgment ruling, Defendant alleged that the decision makers (including, but not limited to, Mr. Zarone) did not know that the "Legal Matter" was a Title VII related matter. *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53. This exhibit is key evidence for which Mr. Youssef can impeach the testimony of the FBI witnesses (including, but not limited to Mr. Zarone), on this highly relevant point.

During the EEO investigation of this case, the FBI had the three voting Career Board members execute affidavits in which they either denied or radically downplayed their knowledge of Mr. Youssef's Title VII protected activity. This exhibit is critical to impeaching the testimony of these witnesses, and for demonstrating pretext and retaliation, even if the FBI was now willing to stipulate as to its "knowledge" in order to avoid the introduction of this exhibit. It appears as if the FBI had its witnesses execute affidavits, and that the Bureau took a position on the "knowledge" issue before it knew that one of its key witnesses was provided a copy of this exhibit and reviewed the contents of the exhibit.

13. Exhibit 13: Chairperson Internal LCB Matrix (October 23, 2009)

No objections raised. Now a joint exhibit.

14. Exhibit 14: LCB Matrix of Mr. Castro, Mr. Chase, and Mr. Zarone (October 23, 2009)

No objections raised.  Now a joint exhibit.

15. Exhibit 15: Riyadh Inspection Report

**Plaintiff's Response to Defendant's Objection**:  This exhibit is relevant to establish a foundation for Mr. Youssef's damages, as set forth in Plaintiff's Expert Witness and Opinion Testimony filing.  *See* Plaintiff's Report Regarding Expert and Lay Opinion Testimony, ECF Doc. No. 74.  This exhibit is also relevant for purposes of impeaching the testimony of the Career Board members regarding their purported ignorance of many of the facts set forth in Mr. Youssef's FD-954.  The three voting members of the Career Board testified that they were ignorant of key facts related to counterterrorism, such as the identity and/or role of the Blind Sheikh and the problems that the United States had regarding cooperation with the Saudi intelligence agencies.  Given the Career Board members' extensive experience within the FBI counterterrorism program, and their high-level management positions, this testimony is not credible.  These documents will be used to explain why Mr. Youssef filled out his FD-954 in the manner he did, why he reasonably expected that Career Board members selecting an Assistant Section Chief in the FBI's counterterrorism program would know the importance and meaning of the information he was conveying in his FD-954, and how the Career Board members' testimony to their interpretation of Mr. Youssef's FD-954 was not credible and evidenced pretext.

16. Exhibit 16: Local Career Board Chairperson Training PowerPoint Presentation

**Plaintiff's Response**: Now a joint exhibit.  Plaintiff requested that the entire PowerPoint be admitted as an

17. Exhibit 17: Chapter 7: Conducting a Local Career Board (LCB)

**Plaintiff's Response**: No objections raised.  Now a joint exhibit.

18. Exhibit 18: Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Second Request for Production of Documents

**Plaintiff's Response**: These are Defendant's responses to interrogatory questions.  Plaintiff can use these documents to impeach FBI witnesses, or as part of his case in chief.  Although it is proper to use any part of the interrogatory responses which may be relevant at trial, the specific part of these answers for which Mr. Youssef's counsel has made the Defendant aware of were the answers for which the Defendant stated why it did not select Mr. Youssef for the Assistant Section Chief position.  These answers are highly relevant to this case, and are important in order to impeach the attempt of the Defendant to expand upon its justification for the adverse action.

19. Exhibit 19: FD-954 Form of Matthew P. Desmond (October 2, 2009)

   No objections raised.

20. Exhibit 20: FD-954 Form of Richard A. Davidson (October 2, 2009)

   No objections raised.

21. Exhibit 21: Signed Sworn Statement of Erkan A. Chase (September 16, 2010)

   Plaintiff agrees with Defendant's position that this document should be used, if at
   all, as a rebuttal exhibit.  Plaintiff does not agree with the limiting instruction
   inasmuch as the Defendant may place into issue some of the subject matters
   which for they want a limiting instruction.

22. Exhibit 22: Signed Sworn Statement of Hipolito Castro, Jr. (September 16, 2010)

   Plaintiff agrees with Defendant's position that this document should be used, if at
   all, as a rebuttal exhibit.  Plaintiff does not agree with the limiting instruction
   inasmuch as the Defendant may place into issue some of the subject matters
   which for they want a limiting instruction.

23. Exhibit 23: Signed Sworn Statement of Armando Fernandez (September 14,
   2010)

   Plaintiff agrees with Defendant's position that this document should be used, if at
   all, as a rebuttal exhibit.  Plaintiff does not agree with the limiting instruction
   inasmuch as the Defendant may place into issue some of the subject matters
   which for they want a limiting instruction.  If there are handwritten notes on this
   document, Plaintiff will replace the exhibit with a clean copy.

24. Exhibit 24: Signed Sworn Statement of Arthur J. Zarone (October 19, 2010)

   Plaintiff agrees with Defendant's position that this document should be used, if at
   all, as a rebuttal exhibit.  Plaintiff does not agree with the limiting instruction
   inasmuch as the Defendant may place into issue some of the subject matters
   which for they want a limiting instruction.

25. Exhibit 25: Report of Counseling by Regina Fields

   Plaintiff agrees with Defendant's position that this document should be used, if at
   all, as a rebuttal exhibit.  Plaintiff does not agree with the limiting instruction
   inasmuch as the Defendant may place into issue some of the subject matters
   which for they want a limiting instruction.

26. Exhibit 26: Testimony of Valerie Caproni before House Judiciary Committee (March 20, 2007) (excerpt)

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

27. Exhibit 27: Kohn to Venture (October 9, 2007)

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

28. Exhibit 28: FBI Non-Disclosure Statement Exhibit

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

29. Exhibit 29: Nondisclosure Agreement Signed By Stephen Kohn (November 19, 2007)

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

30. Exhibit 30: Addendum to Non-Disclosure Agreement (November 19, 2007)

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

31. Exhibit 31: Signed Sworn Statement of Valerie Caproni (October 17, 2010) (rebuttal, if needed)

    **Plaintiff's Response**: *See* Miscellaneous Matters, Section XIX.

32. Exhibit 32: Emails concerning the remarks made against Youssef at a meeting ("hang him")

    **Plaintiff's Response**:  These documents are relevant for impeach purposes. Career Board member Erkan Chase was present at the meeting for which these emails discuss, and the statements made at that meeting would impeach Mr. Chase's testimony as to his ignorance of Mr. Youssef's protected activities. These are all FBI documents, and Plaintiff believes they were produced during discovery by the FBI.  If they were not, these documents are potential impeachment exhibits, and fully admissible for impeachment purposes, as necessary.

VIII.  Demonstrative Aids, Physical Evidence, Videotapes:

1. Demonstrative Aid 1: "Years of Service in FBI"

    **Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information

presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

2.  Demonstrative Aid 2: "Supervisory Special Agent (SSA)"

    **Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

3.  Demonstrative Aid 3: "Counterterrorism Related Work"

    **Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

4.  Demonstrative Aid 4: "Legal Attaché"

    **Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

5.  Demonstrative Aid 5: "Communications Exploitation Section (CXS)"

**Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

6. Demonstrative Aid 6: "Unit Chief"

**Plaintiff's Response to Defendant's Objection**:  The Career Board was required and/or permitted to rely on all of the information in Mr. Youssef's FD-954.  The information in this demonstrative aid is taken directly from the information presented in Mr. Youssef's FD-954.  A copy of this FD-954 was provided to all members of the Career Board prior to their ratings of the candidates, and the demonstrative aid accurately summarizes the information contained in the FD-954.  Given that this information was provided to all of the Career Board members, and that those members were permitted/required to rely on that information when rating the candidates, this demonstrative aid is proper.

7. Demonstrative Aid 7: "Handwritten notes of Arthur Zarone's Summary Assessment of Bassem Youssef"

Defendant had no objection.

8. Demonstrative Aid 8: Comparison between 2008 to 2009 ratings on "Organizing Planning and Coordinating"

**Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted this reduction.  This Court has already reviewed the relevancy of the drop in ratings, and the decision of this Court clearly states that this drop is relevant.  *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years.  The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

9.  Demonstrative Aid 9: Comparison between 2008 to 2009 ratings on "Acquiring, Applying, and Sharing Job Knowledge"

    **Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted this reduction.  This Court has already reviewed the relevancy of the drop in ratings, and the decision of this Court clearly states that this drop is relevant.  *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

    This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years.  The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

10. Demonstrative Aid 10: Comparison between 2008 to 2009 ratings on "Communicating Orally and In Writing"

    **Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted this reduction.  This Court has already reviewed the relevancy of the drop in ratings, and the decision of this Court clearly states that this drop is relevant.  *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

    This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years.  The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

11. Demonstrative Aid 11: Comparison between 2008 to 2009 ratings on "Maintaining High Professional Standards"

    **Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted this reduction.  This Court has already reviewed the relevancy of the drop in ratings, and the decision of this Court clearly states that this drop is relevant.  *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years. The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

12. Demonstrative Aid 12: Comparison between 2008 to 2009 ratings on "Achieving Results"

**Plaintiff's Response to Defendant's Objection**:  The drop in ratings is highly relevant to this proceeding, inasmuch as the Chairman of the Career Board (and the individual who selected all of the Career Board members) agreed with this reduction in ratings, and one of the members of the Career Board drafted this reduction. This Court has already reviewed the relevancy of the drop in ratings, and the decision of this Court clearly states that this drop is relevant. *See* Memorandum Opinion, p. 4 (August 1, 2014), ECF Doc. 62 and Memorandum Opinion, p. 51 (January 28, 2014), ECF Doc. 53.

This demonstrative aid accurately reflects the evidence contained in the 2008 and 2009 PARs as it relates to the reduction in ratings between the two years. The comparison between the two ratings is not manipulated, and accurately reflects the one-grade reduction in rating.

IX.   Deposition Designations

      **Plaintiff's Response to Defendant's Objection**:  Plaintiff's objection to the deposition designation regarding Mr. Fernandez is set forth in Attachment 1.

X.   Damages Itemization.

      No responses are necessary. Plaintiff's position is set forth in the brief, and Plaintiff disagrees with the position taken by Defendant.

XI.   Relief Sought by Plaintiff

      No responses are necessary. Plaintiff's position is set forth in the brief, and Plaintiff disagrees with the position taken by Defendant.

XII.   Motions to be Decided/Unusual Issues of Fact or Evidence

      The parties' anticipated motions in limine are set forth in the Pretrial Statement and will be filed according to the Court's briefing schedule

XIII.   Estimate of Trial Time

No responses are necessary.

XIV.   Jury Voir Dire

    **Plaintiff's Response to Defendant's Objection**: The parties' Joint Jury Voir Dire is being filed with the Court.  The question proposed by the Plaintiff for which the Defendant objects speak for themselves, and concern potential bias against Arab-Americans working on highly classified counterterrorism cases related to Middle Eastern terrorism.  Exploring such potential bias is an appropriate subject for voir dire.

    Additionally, some members of the jury may find it objectionable for an employee to criticize his or her employer in the press.  This could be especially true for employees who work in law enforcement or at the FBI.  The question proposed by Plaintiff, for which the FBI objects, seeks to determine whether the prospective juror may be biased against Mr. Youssef for having spoken to the news media regarding his various concerns or allegations.

XV.   Jury Instructions

    **Plaintiff's Response to Defendant's Objections**:  The parties have filed the proposed jury instructions.  These instructions set forth the differing position of the parties on the instructions for which there was disagreement.

XVI.   Proposed Verdict Form

    **Plaintiff's Response to Defendant's Objection**:  Plaintiff's proposed verdict form is simpler and more understandable than the form proposed by the Defendant.

XVII.   Proposed Amendments to the Pleadings

    No response necessary.

XVIII.   No Waiver of Jury Trial

    No response necessary.

XIX.   Miscellaneous Matters

    **Exhibits and Witnesses Relevant to the Inspector General Investigation:**  On March 3, 2015, during the parties "meet and confer" meeting, counsel for the Defendant informed Mr. Youssef's counsel that the reference to the Inspector General investigation contained in the notes made by Mr. Fernandez explaining Mr. Youssef's 2009 PAR downgrade would be used by the FBI in its case.  Specifically, counsel for Defendants stated that the references to the Inspector

General investigation could be used by the Defendants to imply that there was a proper reason for downgrading Mr. Youssef's performance not tied to his absences from the Unit related to the EEO case.

Plaintiff's counsel strongly argued against Defendants intended use of the reference concerning the Inspector General investigation, but no agreement on this issue was reached.

Thereafter, on March 6, 2015 Defendants submitted to Mr. Youssef a proposed jury instruction related to the Inspector General investigation.  This instruction was revealing as to the testimony the FBI intended to introduce concerning the Inspector General investigation.  Defendants proposed instruction stated:

"*For purposes of determining whether there was a causal connection between the protected activity and the materially adverse action, you may consider only the discrimination complaint as protected activity.  You may not consider any other conduct as protected activity.  For example, you have heard evidence concerning Mr. Youssef's involvement in an investigation by the FBI's Inspector General.  Mr. Youssef's involvement in the Inspector General investigation is not considered protected activity under Title VII and may not be considered for purposes of determining whether there was a causal connection between the protected activity and the materially adverse action.*"

Prior to this submission, none of the witness testimony summaries submitted by the FBI indicated that witnesses would testify concerning the Inspector General investigation.  Also, this issue was not identified in any Rule 26 filing made by the Defendants during discovery.

Upon receipt of this proposed instruction Mr. Youssef commenced assembling exhibits and identifying proposed witnesses that could submit testimony to rebut the Defendants' proposed use of the Inspector General investigation as a defense in this case.  None of these witnesses or exhibits were new to the Defendants, and some were exhibits to the FBI EEO report prepared by the FBI in this case.

These witnesses and exhibits are relevant and material for two issues.  First, the IG investigation did concern allegations raised by Mr. Youssef that he was subjected to retaliation and discrimination for having filed his EEO lawsuit.  This was made very clear in documents filed on-the-record to the FBI (and IG) during the Inspector General review.

Second, the FBI's proposed instruction on the Inspector General investigation, besides not properly explaining that the IG investigation also concerned EEO issues raised by Mr. Youssef, also was misleading.  It is well established that no FBI employee can be retaliated against for participating in an IG investigation.  Thus, the FBI's downgrade of Mr. Youssef's performance ratings because he was distracted by his participation in the IG investigation was a clear violation of FBI policy and federal law.  Evidence that Mr. Zarone and Mr. Fernandez violated these policies when they downgraded Mr. Youssef's performance is further evidence of animus, pretext and retaliation.   It revealed that Mr. Zarone and Mr. Fernandez were willing to violate well-established policies and laws as they related to Mr. Youssef.

Because the FBI injected the issue of the IG comments into this case at the very last minute, well after they had missed numerous other deadlines related to the filing of their pretrial statement, Mr. Youssef was well within his rights to respond to this issue by identifying potential witness testimony and exhibits that would establish that the IG investigation also included issues related to Mr. Youssef's Title VII complaints, and that the failure to follow well established rules and policies regarding the right (and obligation) of employees to participate in IG investigations is highly material and relevant to this case.

Finally, Mr. Youssef was actually ordered by the FBI (and DOJ) to participate in the IG investigation as an mandatory job duty.  He was informed that any failure to fully provide the IG with information for which they requested, and to attend the interviews for which they requested, could result in his termination from employment.

Prior to the FBI's proposed jury instruction, Mr. Youssef was expected to testify, without contradiction, that his participation in the IG investigation was mandatory, and a required part of his employment with the FBI.  This should have been a fairly non-controversial part of the evidence submitted at trial.  However, based on the statements made by the FBI during the "meet and confer" meeting, and the contents of their proposed jury instruction, Mr. Youssef was compelled to set forth his potential trial evidence on this issue, which he may introduce either in his case-in-chief or as part of a rebuttal case.

Dated: March 11, 2015

Respectfully Submitted,

/s/ Stephen M. Kohn
Stephen M. Kohn, D.C. Bar No. 411513
/s/ David K. Colapinto
David K. Colapinto, D.C. Bar No. 416390
Kohn, Kohn, & Colapinto, LLP
3233 P Street, N.W.
Washington, D.C. 20007
(202) 342-6980
sk@kkc.com
dc@kkc.com