UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,

   Plaintiff,

     v.

ERIC H. HOLDER, JR., United States Attorney General,

   Defendant.

Civil Action No. 11-1362 (CKK)

**ORDER**
(July 2, 2015)

The Court held the first pretrial conference in this matter on June 30, 2015, during which the Court and the parties discussed at length the parties' Motions *in Limine*. As discussed during the pretrial conference, the Court is ordering the parties to provide supplemental briefing on the issues outlined below. The Court clarifies that this Order does not seek to set out all of the arguments made by the parties during the pretrial conference, but instead focuses on the gravamen of the parties' arguments relating to the areas in which the Court requires further factual proffers and legal analysis in order to rule on the parties' Motions *in Limine*. Accordingly, the parties are hereby ORDERED to provide supplemental pretrial briefing as follows:

- **Evidence of Bias of Local Career Board ("LCB") Members**

Plaintiff is seeking to argue at trial that Armando Fernandez, the non-voting chair of the LCB which selected the new Assistant Section Chief ("ASC") for the Counterterrorism Division ("CTD"), had a retaliatory bias against Youssef and "stacked" the LCB against Youssef by selecting voting LCB members whom Fernandez knew were biased against Youssef. The Court

requires further briefing about Plaintiff's proffered evidence of the bias Hipolito Castro, Erkan Chase, and Fernandez allegedly held against Youssef.

- o **Castro and Chase**

Plaintiff has not proffered any direct evidence of Castro's alleged bias against Youssef. Instead, during the pretrial conference, Plaintiff argued that Castro's bias can be inferred from the fact that he was supervised by Fernandez whom, Plaintiff contends, had a retaliatory bias against Youssef. Plaintiff also argued that Castro's bias can be inferred from the fact that Youssef and Castro were friends and allegedly discussed Youssef's Equal Employment Opportunity ("EEO") activities, but Castro denied knowledge of Youssef's EEO activities at deposition. Plaintiff contends that Chase's bias can be inferred from the fact that he was supervised by Fernandez and by the fact that Chase was present at a meeting during which a derogatory comment was allegedly made about whistleblowers which Youssef interpreted as being directed at him. Youssef later filed a complaint about this derogatory comment. The Court has no details in the Motions *in Limine* as to the complaint process and outcome.

Much of the argumentation and factual proffers outlined above are new to the Court. The Court finds that Plaintiff's factual proffers, as presented to the Court during the pretrial conference, are insufficient to establish that Castro and Chase had animus towards Youssef and that Fernandez knew of this animus and selected these individuals to be LCB members out of his own retaliatory animus. Accordingly, the Court hereby **ORDERS** Plaintiff to explain in his supplemental pretrial brief whether the information outlined above is the extent of Plaintiff's evidentiary proffer and, if not, provide additional detail about Plaintiff's evidentiary proffer. Plaintiff shall clearly set forth the evidence he will present at trial to show that Castro and Chase had animus towards Youssef and that Fernandez knew of Castro and Chase's alleged bias against

Youssef. Plaintiff shall specifically note the timing of the complaint Youssef filed about the derogatory comment made during the meeting at which Chase was present and whether Fernandez was working at FBI headquarters at the time Youssef made the complaint. In Defendant's response, Defendant shall indicate, among other things, whether it has evidence and/or arguments that contradict or would undermine the evidence proffered by Plaintiff as to these issues.

- o **Fernandez**

At the pretrial conference, the parties disputed whether Fernandez was aware of who the candidates were who were applying for the ASC position at the time he selected the voting members of the LCB. Accordingly, the Court hereby **ORDERS** that, in its supplemental pretrial brief, Defendant shall explain the process by which the applications for a new job posting are received, verified, and approved, and by which an LCB chair is selected, an LCB chair selects the LCB voting members, and the LCB chair is made aware of the applicants. Defendant's explanation shall focus on the specific timing of all of these actions and the divisions of the FBI and/or individuals involved in each action. Defendant shall further indicate whether this process was followed by Fernandez for the LCB at issue in this case and proffer evidence indicating at what point Fernandez would have learned that Youssef was a candidate and whether Fernandez selected the members of the LCB prior to or after learning that information. In Plaintiff's response, Plaintiff shall indicate whether he has evidence that would undermine the evidence proffered by Defendant as to these issues.

- **"Totality of Experience"**

At the pretrial conference, Plaintiff raised a new issue relating to Fernandez's allegedly biased actions regarding the LCB process. Plaintiff contends that Fernandez did not properly

3

instruct the LCB members as to the consideration they should give to the "totality of [each candidate's] experience." Specifically, Plaintiff now alleges that Fernandez did not properly instruct the LCB that they could use "totality of experience" to "rank lower-rated candidates ahead of higher-rated candidates." *See* Pl.'s Trial Ex. 17, at 7-9. Accordingly, the Court hereby **ORDERS** Plaintiff to indicate in his supplemental pretrial brief what evidence he is proffering to show that Fernandez did not properly instruct the LCB members that they could use the "totality of [each candidate's] experience" to rank lower-rated candidates over higher-rated candidates. Plaintiff shall also indicate whether the LCB members were provided any information about how they were to treat the "totality of experience" consideration and whether the "totality of experience" consideration was taken into account by the LCB at issue. As this is a newly raised issue, Defendant shall proffer any evidence or arguments that would undermine the evidence proffered by Plaintiff.

- **LCB Interview Process**

Defendant argued in its pretrial briefing and at the pretrial conference that Plaintiff's proposed expert witness, Ed Curran, is not qualified to testify about the practices and procedures relating to LCBs because Curran left the FBI in 2000—nine years before the LCB at issue took place. At the pretrial conference, Defendant explained that the LCB process was overhauled in 2003; however, Defendant was unable to make any representations as to whether the process relating to candidate interviews changed in 2003. Accordingly, the Court hereby **ORDERS** that Defendant shall indicate in its supplemental pretrial brief whether the procedure or practice relating to candidate interviews changed in the period between Curran's departure from the FBI and Youssef's non-selection.

- **Reputation Evidence**

    Plaintiff also seeks to have Curran testify about Youssef's reputation and the damages caused to his reputation by his non-selection for the ASC position.  At the pretrial conference, Plaintiff indicated that Curran would testify both to the "baseline" of Youssef's reputation, i.e. Youssef's reputation prior to his non-selection, and to the impact of Youssef's non-selection on his post-retirement job prospects outside of the FBI.  The parties disagreed as to what evidence was relevant to establishing Youssef's reputational "baseline."  Accordingly, the Court hereby **ORDERS** each party to address in their supplemental pretrial briefs whether Youssef's experiences and reputation in the 1990s should form part of Youssef's "baseline" reputation in this case, or whether only evidence of Youssef's reputation in 2008/2009, just prior to his non-selection, should form his reputational "baseline."  In addition, as to Curran's proffered testimony about Youssef's post-retirement reputational damage, Plaintiff shall indicate in his supplemental pretrial brief what is the factual predicate that would permit Curran to testify as an expert about Youssef's allegedly diminished post-retirement employment prospects.  Plaintiff shall also indicate what future employment Youssef is seeking that would make Curran's testimony salient.   Defendant shall address this issue as well.

- **Inspector General ("IG") Investigation**

    At the pretrial conference, Defendant indicated that it will be bringing in evidence at trial about the IG investigation in which Youssef was involved during 2009 since the investigation was referenced in Arthur Zarone's notes attached to Youssef's 2009 Performance Appraisal Review ("PAR"). As it was unclear from Defendant's pretrial briefing whether Defendant would even be referencing the IG investigation, the Court requires additional information about the exact nature of the evidence Defendant is seeking to introduce and its relevance.

Accordingly, the Court hereby **ORDERS** Defendant to identify in its supplemental pretrial brief the specific evidence it is seeking to introduce about the IG investigation and its purpose in introducing this evidence. Defendant shall specifically indicate what testimony Zarone would offer about the IG report and its influence on Youssef's 2009 PAR and what he meant when he listed "OIG Report" as a "distractor" on Youssef's PAR.

- *Mother Jones* Article

Plaintiff seeks to introduce at trial a nine-page article from the publication *Mother Jones* that discusses Youssef's whistleblowing activities and makes two references to Youssef's discrimination lawsuit. Plaintiff also seeks to call Jeanine Santa as a witness to testify that she showed this article to Zarone prior to Youssef's non-selection as ASC, thus permitting the inference that Zarone was aware that Youssef was involved in an EEO lawsuit. The Court finds that this article is probative evidence that Zarone knew that Youssef was engaged in an EEO matter and that it impeaches Zarone's deposition testimony that he knew Youssef was engaged in a legal matter, but was not aware that the legal matter was an EEO lawsuit. However, the probative value of the article is counterbalanced by the fact that it is a lengthy article focused primarily on Youssef's career and his whistleblowing activities—information which the Court has sought to limit being introduced in this case—and only briefly references Youssef's discrimination lawsuit. Accordingly, the Court hereby **ORDERS** the parties to propose in their supplemental pretrial briefs a means for introducing the article at trial that would balance the probative and prejudicial value of the article. The Court proposes that one resolution for balancing the probative and prejudicial value of the article would be to introduce the full article at trial, but redact everything from the article except the two short references to Youssef's discrimination lawsuit and instruct the jury that the redacted portions of the article are not

relevant to the claims at issue.

In addition, Plaintiff shall indicate in its supplemental trial brief exactly how the *Mother Jones* article was allegedly made available to the larger FBI population beyond Zarone. Plaintiff shall indicate whether the article was uploaded on an FBI website, included in a newsletter, passed around by an FBI employee, or circulated by another means. Plaintiff shall also indicate the time frame as to when the article was shown to Zarone and allegedly made available to the broader FBI public. In Defendant's response, Defendant shall indicate whether it has evidence that would undermine Plaintiff's evidence as to how the article was allegedly made available to other FBI employees and the timing of the article being shown to Zarone.

- **Youssef Opinion Testimony**

Youssef seeks to offer expert testimony at trial that the experiences listed on his FD-954 application are of greater importance than the experiences that Powers—the candidate ultimately selected for the ASC position—included in his application. The Court is concerned that Youssef is not qualified to offer such testimony because the experiences included by the candidates in support of each competency example cannot simply be considered in the abstract, outside the context of the competency they are seeking to illustrate. In other words, while Youssef may want to testify that the Mumbai terrorist attacks—an event on which Powers worked—were not as important of an event to the FBI as a terrorist attack involving the Blind Sheik—an event on which Youssef worked—these events primarily serve as background to the examples of certain competencies that the candidate demonstrated during the course of that event. Also, the LCB members came to the selection process with their own experiences and knowledge that could lead them to place a different value on certain experiences than Youssef would place on the same experiences. Accordingly, the Court hereby **ORDERS** Plaintiff to address, in his supplemental

pretrial brief, how Youssef is qualified to opine as an expert about the relative value of the experiences listed in his and Powers' FD-954. In its response, among other things, Defendant shall address the issue of these events and the competencies involved.

- **Performance Appraisal Reviews ("PAR")**

Plaintiff is seeking to introduce as an exhibit at trial his PARs from 1989 to 2004. At the pretrial conference, Plaintiff argued that these PARs are relevant to establish a baseline for Youssef's reputation. Plaintiff indicated that the 1995 and 2000 PARs are the most relevant for establishing Youssef's reputation and the damage that was done to his reputation. However, it is unclear to the Court how these two PARs would be relevant if the baseline of Youssef's reputation is from 2009. Moreover, the experiences referenced in these PARs were already included in Youssef's FD-954 application which will be provided to the jury. Accordingly, the Court hereby **ORDERS** Plaintiff to discuss, in his supplemental pretrial brief, the relevance of these two PARs to establishing Youssef's reputation baseline.

- **Classified Information**

Finally, Defendant indicated during the pretrial conference that the FBI is presently reviewing the information that Plaintiff seeks to have unredacted from his FD-954 application for the ASC position. Defendant anticipates that this review will be completed by July 10, 2015. Accordingly, the Court hereby **ORDERS** that Defendant shall indicate in its supplemental pretrial brief the outcome of the review process. Plaintiff shall indicate in his response any objections to the outcome of this process.


IT IS **FURTHER ORDERED** that Defendant shall file its supplemental pretrial brief by no later than JULY 10, 2015; Plaintiff shall file his supplemental pretrial brief by no later than

JULY 15, 2015; Plaintiff shall file his response to Defendant's supplemental brief by no later than July 17, 2015; and, Defendant shall file its response to Plaintiff's supplemental brief by no later than July 20, 2015.

IT IS **FURTHER ORDERED** that the second pretrial conference in this matter is SCHEDULED for JULY 24, 2015, at 10 A.M. in Courtroom 28A;

IT IS **FURTHER ORDERED** that the third pretrial conference in this matter is SCHEDULED for AUGUST 14, 2015, at 10 A.M. in Courtroom 28A;

**SO ORDERED**.

                                                                            */s/*
                                            **COLLEEN KOLLAR-KOTELLY**
                                            UNITED STATES DISTRICT JUDGE