## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
BASSEM YOUSSEF,                               )
                                              )
                    Plaintiff,                )        Civil Action No. 11-1362 (CKK)
                                              )
        v.                                    )        ECF
                                              )
ERIC H. HOLDER, JR., United States            )
Attorney General,                             )
                                              )
                    Defendant.                )
_____)

### DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL
### PRETRIAL MEMORANDUM

Pursuant to the Court's July 2, 2015 Order, Defendant hereby responds to Plaintiff's

Supplemental Pretrial Brief filed on July 16, 2015.

### I.        Evidence of Bias of LCB Members Fernandez, Castro, and Chase

As the Court noted in its July 2 Order (at 1), "Plaintiff is seeking to argue at trial that

Armando Fernandez (Fernandez), the non-voting chair of the LCB . . . had a retaliatory bias

against Youssef and 'stacked' the LCB against Youssef by selecting voting LCB members whom

Fernandez knew were biased against Youssef."  The Court ordered Plaintiff to provide "further

briefing about Plaintiff's proffered evidence of bias Hipolito Castro, Ekran Chase, and Fernandez

allegedly held against Youssef."  *Id.* at 1-2.  Thus, the Court wanted Plaintiff to set forth in

greater detail his evidence of retaliatory bias by all of the LCB members with the exception of

Arthur Zarone.

Further, the Court's July 2 Order (at 2) provided that Plaintiff shall have an opportunity

to supplement his evidence in support of the contentions that "Castro and Chase had animus

towards Youssef and that Fernandez knew of the animus and selected these individuals to be LCB members out of his own animus." The Court found that Plaintiff's "argumentation and factual proffers" of this alleged animus were "insufficient" and required, *inter alia*, that Plaintiff explain whether the information outlined by the Court in the July 2 Order "is the extent of Plaintiff's evidentiary proffer." *Id.*

In his supplemental pretrial brief, Plaintiff conceded that he has no "direct evidence" to support the proposition that "Castro and Chase had animus towards Youssef *and* that Fernandez knew of Castro and Chase's alleged bias against Youssef." Pl.'s Br. at 1 (emphasis in original). Indeed, Plaintiff's brief provides no new evidence to supplement the insufficient proffer made in his initial pretrial submissions and at best merely confirms that his best evidence is that "[Fernandez] did have knowledge of Mr. Zarone's animus toward Mr. Youssef when he selected Zarone to the Career Board." *Id.* at 2.

Nor does Plaintiff proffer any new circumstantial evidence to support Fernandez's alleged awareness of retaliatory animus by Castro and Chase, but instead Plaintiff refers generally to a "plethora of circumstantial evidence" that Castro and Chase had animus toward Youssef. Plaintiff, however, concedes "there is no direct evidence Mr. Fernandez was aware of this circumstantial evidence when he made this selection." *See id.* at 1-2; *see also id.* at 2 n.1 ("However, there is no direct link between this evidence and Fernandez's knowledge of this evidence"). Plaintiff also concedes that he has no evidence that Fernandez was working in Headquarters when Chase was present during a meeting where an alleged derogatory comment was made about a whistleblower. *Id.* at 2.

Thus, Plaintiff is left arguing for highly speculative and improper inferences of animus based on evidence previously proffered to the Court, including (1) "all of the Career Board

member selected for the ASC selection process knew of Mr. Youssef," (2) "[i]t was no secret that Fernandez was very unhappy with Mr. Youssef," and (3) "the fact that Mr. Youssef was pursuing an EEO case against the FBI was well known in his work unit." *Id.* at 2.   Thus, Plaintiff has not provided any of the information requested by the Court.   To the extent that the Court requires a further response under these circumstances, Defendant intends to rely on the following "evidence and/or arguments that contradict or would undermine the evidence proffered by Plaintiff as to these issues" (July 2 Order at 3): (1) Because Fernandez did not know Youssef intended to apply for the ASC position when he selected the LCB voting members, Fernandez could not have stacked the LCB against Youssef, *see* Fernandez's declaration in support of Defendant's motion for summary judgment (ECF 42-2, pp. 30-31 of 99, at ¶¶ 9-11) (also setting forth Fernandez's rationale for selecting the LCB voting members); (2) According to the rules governing LCBs, Fernandez was required to include ASCs as LCB voting members, and he included the two ASCs in his section and found a third ASC to complete the panel, *see id.*; and (3) it is not improper to include an applicant's supervisor on the LCB if an employee applies for a vacancy in the same Division, *see* Ex. A at 46:19-47:2.

## II.     Totality of Experience

The Court ordered "Plaintiff to indicate in his supplemental pretrial brief what evidence he is proffering to show that Fernandez did not properly instruct the LCB members that they could use the 'totality of [each candidate's] experience' to rank lower-rated candidates over higher-rated candidates."   July 2, 2015 Order at 4.   Plaintiff offers no such evidence and instead takes the opposite position, stating that "either Mr. Fernandez personally trained the CB members on these facts, or ensured that they were trained on the rules governing CB evaluations, which clearly included instructions on this factor."   Pl's Br. at 4.

Plaintiff asserts that it is "beyond question" that the LCB may rely on totality of experience when ranking an applicant. Pl's Br. at 3. But Plaintiff never cites to any LCB rules or explains under what circumstances such experience could be considered. Under the rules in place in 2009, there were only two situations in which such information could be considered. The LCB could consider such information (1) to break a tie between equally rated candidates or (2) to round-up the consensus rating of a particular competency when the candidate's experience justified such a change. *See* Supplemental Declaration of Valerie Parlave ("Suppl. Parlave Decl.") ¶ 4.[1] Importantly, the LCB was not required to consider totality of experience. *Id.* ¶ 3.

In the case of the LCB at issue in this case, there was no tie between equally rated applicants to break. And regarding the second potential use of totality of experience, only one of Plaintiff's competencies (Liaison) could have been rounded up, but doing so would not have lifted Plaintiff's overall ranking above that of Powers. Suppl. Parlave Decl. ¶¶ 5, 8-9.

None of the materials cited by Plaintiff suggests anything to the contrary. Although Plaintiff cited the affidavit of Art Zarone, in which Zarone discusses experiences of Plaintiff and Powers, those experiences were specifically identified in the competency examples. *See* Pl's Br. at 4. Also, the fact that the LCB members stated that they "reviewed the Candidate Qualification Forms" does not indicate what information they used to score the candidates' competency examples.

---

[1] After 2009, totality of experience could be used in a third way. When the ratings of the top ranked candidates are close, and a review of the candidates' FD-954s indicates a candidate with lower competency scores may be more suitable for the position, experience may be used to select the lower-ranked candidate. As stated in the first Parlave Declaration filed with Defendant's Supplemental Memorandum, the parties proposed joint exhibits 5 and 6 were created after 2009 and do not reflect rules in place in 2009. *See* Parlave Decl. ¶¶ 33-34. Defendant proposes to use exhibits 1 and 2 to the Parlave Declaration in place of joint exhibits 5 and 6.

Nor do the interrogatory responses suggest that the LCB considered experience extrinsic to the competency examples.  The interrogatory responses referenced the affidavits discussed in the preceding paragraph, which, for the reasons discussed, do not suggest that the LCB considered the totality of the experience factor.  Likewise, the fact that the interrogatory responses also referenced the candidates FD-954s in no way suggests that every piece of information on those forms influenced the competency ratings.  Indeed, the interrogatory responses also referred to documents explaining that Powers was selected over Plaintiff because of the competency ratings.  *See* Ex. B.  To the extent the interrogatory responses were unclear to Plaintiff, however, they were later clarified through the deposition testimony of the LCB members who testified as to the basis for their ratings.  Plaintiff cannot take depositions and then ignore the testimony he elicits.[2]

Finally, the LCB rules in place in 2009 state that "[i]f the 'totality of a candidate's experience' gleaned from the FD-954 was used to give an overall consensus competency rating which, under the established rules, would **not** have been given, the specific details must be documented."  *See* Parlave Decl., Ex. 2 at 7 (emphasis in original).  Here, the fact that the LCB did not document any use of the totality of experience indicates that no such experience was considered.

### III.    Baseline Reputation Evidence

At the pretrial conference, the Court strongly questioned the relevance of any evidence

---

[2] Plaintiff also claims that the "SAMMS Board regulations . . . stipulate that Career Board members are to consider the 'four corners' of the FD-954 and that members may rely [on] a candidate's totality of experience[.]"  Pl's Br. at 3-4.  Plaintiff cites to the deposition of Douglas Price as support, but the portion of the transcript cited contains only a question by counsel, and no response by the witness.  *See id.* at 4 (citing Pl's Ex. 5 at 41:9-13).  The transcript excerpt contains no testimony that remotely supports the proposition for which it is cited.

concerning Plaintiff's pre-2008 performance to the issue of Plaintiff's baseline reputation.   The

Court noted that Plaintiff's attributes dating before 2008 are "already factored into the

reputation" in 2008/2009 and therefore, Plaintiff does not "need to go back and bring in all of

these things."  *See* Tr. of Pretrial Conference, at 62:8-23.   Plaintiff's counsel conceded the point:

"Yeah, I think Your Honor's points are very well-taken, and based on Your Honor's

representations, I think the focus of [Edward Curran's] testimony would be the impact in looking

for jobs outside of the FBI[.]"  *Id*. at 62:24-63:5.

In his supplemental brief, however, Plaintiff again argues that "Plaintiff's full

employment history" is somehow relevant to Plaintiff's reputational baseline.  Pl's Br. at 7.  But

the new justification for introducing such evidence is entirely meritless.  Plaintiff argues that:

> The question of whether Plaintiff consistently executed his work duties faithfully
> or sought the path of least resistance as to effectively exploit his employer will be
> the most important question in determining the credibility of Plaintiff's complaint.
> Providing evidence of Plaintiff's work history will directly address this question,
> and is therefore necessary in establishing his reputation.

*Id*.

Plaintiff appears to confuse "the credibility of Plaintiff's complaint" with his baseline

reputation.  Even if evidence of Plaintiff's past achievements were relevant to "the credibility of

Plaintiff's complaint" (and Defendant does not concede that it is), such evidence would have no

bearing on Plaintiff's reputation in 2008/2009.   "Reputation evidence is what others in the

community thought about the [person at issue.]"  *Kelley v. Sec'y, Dep't of Corr.*, 2006 U.S. Dist.

LEXIS 8166, at *36 (M.D. Fla. Feb. 13, 2006).  It is not, as Plaintiff's argument suggests,

information that might have influenced the reputation had such information been known to

others in the community.   Moreover, Plaintiff's argument ignores the Court's ruling quoted

above.  To the extent that Plaintiff's "consistent[] execut[ion of] his work duties, Pl's Br. at 7,

influenced his reputation in 2008/2009, that was "already factored into the reputation" in 2008/2009, Tr. of Pretrial Conference, at 62:8-23.[3]

The cases cited by Plaintiff are not to the contrary. The issue in *Watson v. Nationwide Ins. Co.*, 823 F.2d 360 (9th Cir. 1987) was whether the conditions of the plaintiff's employment following her marriage were "so intolerable and discriminatory as to justify resigning." *Id.* at 362. One of the bases for showing the "intolerable and discriminatory" environment was that the employer conspired "to create trumped up charges of inadequate job performance while she was on her honeymoon[.]" *Id.* at 361. Evidence that the plaintiff "had previously always received excellent employment ratings" was therefore plainly relevant. *Id.* Such evidence was not used to establish the plaintiff's baseline reputation or to bolster "the credibility of [the p]laintiff's complaint" as proposed here.

Likewise, in *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987), the fact that the plaintiff "had always received performance ratings of average and above average on all employment indices" was relevant only because "[f]ollowing the filing of his administrative complaints and his April 1980 meeting with his supervisor to discuss his Title VII grievances, however, he received a sub-average rating for cooperativeness for the first time." *Id.* at 1377.

And in *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 72 (D.D.C. 2006), the "evidence of plaintiff's stellar performance reviews [and] her substantial experience" was relevant to rebut the defendant's claim that the selectee was more qualified than the plaintiff, because such evidence would have been relevant to the selection in that case. The other cases cited by Plaintiff are

---

[3] Furthermore, evidence concerning Plaintiff's alleged diligence at work does not constitute evidence of his credibility. And even if it did, under the express language of Federal Rule of Evidence 608 concerning evidence of a witness's credibility, "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."

inapposite for the same reason.

These cases establish no more than that evidence of prior work performance may *sometimes* be relevant in employment discrimination cases – a proposition so obvious that citation to authority is hardly needed. Just as obvious, moreover, is that the relevance of such evidence depends on the particular facts of the case at hand. Under the facts of this case, such evidence is not relevant to any issue.

## IV.     Post-Retirement "Reputational Damage"

As explained in Defendant's supplemental brief, the proffered testimony by Curran is not actually reputational evidence but rather testimony concerning how potential employers might view Plaintiff's credentials. *See* Def's Br. at 5-6. Plaintiff's proffer is insufficient to render such testimony admissible. First, there is no factual predicate to establish that Plaintiff has applied for any position since his retirement.[4] Without such a foundation, Curran's proposed testimony – about how the denial of the Assistant Section Chief might in theory impact Plaintiff's employment prospects should he decide to pursue future employment – is too abstract and speculative.

In addition, Plaintiff has not established that Curran is competent to testify as an expert on this subject. Plaintiff vaguely claims that Curran has counterterrorism experience outside the FBI, but does not describe Curran's responsibilities and never claims that Curran was involved in hiring former FBI agents at any of these positions. *See Sykes v. Napolitano*, 634 F. Supp. 2d 1, 7-8 (D.D.C. 2009) (witness could not testify as expert regarding the impact of reassignment on the plaintiff's advancement and future employment where witness "does not indicate that he ever

---

[4] Indeed, given that Plaintiff retired only recently in October 2014, Defendant has not had an opportunity to take any discovery on this issue.

selected agents for the [position at issue]").  Although Plaintiff mentions that "Curran was once in the position of applying for these positions as a former FBI employee himself," there are no specific details about the positions Curran applied to and whether they were similar to positions to which Plaintiff may have applied.  Also, given that Curran's background and credentials differ substantially from Plaintiff's, it is not clear how Curran's experience as an applicant would shed light on Plaintiff's job search.

Finally, the fact that Curran supposedly "maintains regular contact with current FBI officials," Pl's Br. at 10, does not qualify him to testify about hiring practices outside the FBI. Moreover, Curran cannot testify based on the hearsay accounts of other individuals and, under Federal Rule of Evidence 701(a), lay opinion testimony be "rationally based on the witness's perception."  Fed. R. Evid. 701(a).

## V.    *Mother Jones Article*

The Court's July 2 Order (at 6) requires that "the parties propose in their supplemental briefs a means for introducing the article at trial that would balance the probative and prejudicial value of the article."  In its brief, Defendant stands on its objection to the admission of the article at trial, but otherwise agrees that the Court's proposed redaction (*id.* at 6-7) is the best alternative.  Plaintiff's response challenges the Court's finding of prejudice by "a lengthy article focused primarily on Youssef's career and his whistleblowing activities—information which the Court has sought to limit being introduced in this case (*id.* at 6)," based on the unsubstantiated assertion that the FBI "post[ed] the article in a public forum accessible to all FBI employees." Pl.'s Br. at 11.  Indeed, Plaintiff again fails to provide the information required by the Court's July 2 Order (at 7) with respect to the allegation that "the article was made available to the broader FBI public."  Nor can Plaintiff provide such information because the article was not

made available internally to FBI personnel in the manner suggested by Plaintiff.  *See* Declaration of Yonina A. Mrose, Section Chief in charge of the Strategic Communications Section within the Federal Bureau of Investigation's (FBI's) Office of Public Affairs, at ¶ 6 ("A search of the BulletinNews archives conducted by the contractor did not locate a reference to an article entitled "The FBI's Least Wanted" published by Mother Jones in May/June 2009. The contractor indicated in an email that their product did not typically include reviews of that publication").

Plaintiff's contention that the "inherently inflammatory nature" of the article is "what helped fuel the animus against Mr. Youssef," Pl.'s Br. at 12, misses the point. Only those portions of the article that are probative of Zarone's knowledge of Youssef's prior EEO activity are relevant and, as the Court has noted in its July 2 Order (at 6), the article "only briefly references Youssef's discrimination lawsuit."  The Court should reject Plaintiff's suggested redactions to the extent they go beyond the Court's proposal because there is no probative value to references to Plaintiff's whistleblowing activity in a Title VII retaliation case and instead limit the unredacted portions to the brief references to the discrimination lawsuit.  Nor would Plaintiff's proffered limited instruction be appropriate because it suggests that the redacted portions may be relevant to his discrimination lawsuit. *See* Pl.'s Br. at 13 ("The parts of the article that are deleted concern issues Mr. Youssef had with the FBI, but do not mention his discrimination lawsuit").  The Court's proposed limiting instruction that "redacted portions of the article are not relevant to the claims at issue" strike a more appropriate balance. *See* July 2 Order at 6.

## VI.     Youssef Opinion Testimony

Plaintiff's supplemental brief does not address the concerns noted by the Court in the July 2, 2015 Order.  There, the Court questioned whether Plaintiff is qualified to testify that his

experiences listed in his FD-954 are of greater importance than the experiences of Daniel Powers because "each competency cannot simply be considered in the abstract" and because "the LCB members came to the selection process with their own experiences and knowledge that could lead them to place a different value on certain experiences than Youssef would place on the same experiences." July 2 Order at 7.

The Court's concerns are well-founded. As the court in *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1 (D.D.C. 2000), *aff'd*, 298 F.3d 989, 353 U.S. App. D.C. 205 (D.C. Cir. 2002) explained, the "plaintiff's perception of herself, and of her work performance, is not relevant. It is the perception of the decisionmaker which is relevant." *Id.* at 7 (internal citation and quotation marks omitted); *see also Perry v. Shinseki*, 783 F. Supp. 2d 125, 137 (D.D.C. 2011), *aff'd* 466 Fed. Appx. 11 (D.C. Cir. 2012) ("Perry's 'own self-perception of her credentials' are 'irrelevant for purposes of establishing discriminatory . . . conduct.'" (quoting *Talavera v. Fore*, 648 F. Supp. 2d 118, 136 (D.D.C. 2009), *rev'd in part on other grounds by Talavera v. Shah*, 638 F.3d 303, 312-13)).

Indeed, the relevant issue is not whether Plaintiff was more qualified than Powers, but whether the decisionmakers acted with retaliatory animus. Accordingly, the value that the decisionmakers placed on various experiences is what matters, not Plaintiff's own preferences. For this reason, the "D.C. Circuit has explained that discrimination will not be inferred absent a showing that plaintiff's qualifications were ***far superior*** to the successful candidate's." *Singleton v. Potter*, 402 F. Supp. 2d 12, 30-31 (D.D.C. 2005) (emphasis added); *see also Grosdidier v. Broadcasting Bd. of Governors*, 709 F.3d 19, 25 (D.C. Cir. 2013) (plaintiff could not prevail on relative qualifications claim where both applicants had different levels of experience and plaintiff could not show he was significantly better qualified). Plaintiff's

11

subjective opinion on this subject is not relevant to this determination and nothing in Plaintiff's

supplemental brief demonstrates why his opinion should be admitted in this case.

### VII.    Performance Appraisal Reviews ("PAR")

The Court ordered Plaintiff to explain how the 1995 and 2000 PARs are relevant to

establishing Plaintiff's baseline reputation.  July 2 Order at 8.  Plaintiff's response is unclear, and

fails to establish relevance.  Plaintiff states that the PARs "contain career milestones in Mr.

Youssef's work at the FBI" and discusses the impact on his reputation caused by his alleged

failure to obtain a promotion after 1998.  Pl's Br. at 15.  These arguments fail to explain the

relevance of the PARs to Plaintiff's baseline reputation.  Especially given that the PARs would

not have been seen by others in Plaintiff's community, particularly not in 2008/2009, they are

completely irrelevant to the baseline reputation.

Plaintiff also claims that the PARs, and documents relating to Plaintiff's DCI award,

would provide "further descriptive information on" items listed in Plaintiff's FD-954.  Pl's Br at

14-15.  But given that such "further descriptive information" was not before the LCB, it should

not be considered by the jury.  Moreover there is no reason why it is necessary to introduce such

descriptive information through highly prejudicial documents containing positive remarks about

Plaintiff's job performance, when appropriately limited descriptions could be provided through

testimony.  Plaintiff should not be allowed to use the PARs as a loophole for getting prejudicial

and irrelevant information in front of the jury.

Finally, Plaintiff also argues that these materials may be relevant for rebuttal or to

rehabilitate Plaintiff's credibility after he is impeached.  *Id*. at 15-16.  Defendant cannot at this

time anticipate whether these materials will become relevant for these purposes and proposes

that the Court defer ruling on these potential uses until trial.

Respectfully submitted,

VINCENT H. COHEN, JR.
Acting United States Attorney, D.C. Bar #471489

DANIEL VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: _____/s/_____
JOHN G. INTERRANTE, PA Bar # 61373
JOSHUA M. KOLSKY, DC Bar # 993430
Assistant United States Attorneys
Civil Division
555 4th Street, N.W., Room E-4808
Washington, D.C. 20530
Tel: 202.252.2519
Fax: 202.252.2599
Email: John.Interrante@usdoj.gov

13