## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,

    Plaintiff,

      v.

LORETTA E. LYNCH., United States
Attorney General,

    Defendant.

**Civil Action No. 11-1362 (CKK)**

## MEMORANDUM OPINION
(November 13, 2015)

Plaintiff Bassem Youssef ("Plaintiff" or "Youssef"), a former employee of the Federal Bureau of Investigation ("the FBI"), brings this action against the United States Attorney General ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"). On July 25, 2011, Youssef, an Egyptian-born American citizen, filed suit, asserting two claims—one sounding in discrimination and the second sounding in retaliation—each challenging his non-selection for an Assistant Section Chief position in the FBI's Counterterrorism Division Communications Exploitation Section. On March 1, 2013, Defendant filed a [41] Motion for Summary Judgment. On January 28, 2014, the Court granted Defendant's Motion for Summary Judgment as to Plaintiff's national origin discrimination claim, but denied Defendant's Motion as to Plaintiff's retaliation claim. Presently before the Court are the parties' objections in their Joint Pretrial Statement, Plaintiff's Motion *in Limine*, and Defendant's Motion *in Limine*. On June 30, 2015 and August 14, 2015, the Court held pretrial conferences in this matter and made oral findings, which the Court INCORPORATES herein. After each pretrial conference, the Court issued Orders indicating the Court's findings on various issues raised in the parties' motions *in limine* and

ordering the parties to submit supplemental briefing on certain issues that remained unresolved. *See* Order dated July 2, 2015, ECF No. [86] and Order dated August 14, 2015, ECF No. [92]. The Court has scheduled a third pretrial conference for November 13, 2015. A trial date has not been set.

The parties have completed all briefing relating to their motions *in limine*, and the motions are ripe for adjudication. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall GRANT-IN-PART, DENY-IN-PART Defendant's [79] Motion *in Limine* and GRANT-IN-PART, DENY-IN-PART Plaintiff's [80] Motion *in Limine*, and GRANT-IN-PART, DENY-IN-PART the objections made by the parties to their Joint Pretrial

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Plaintiff's Report Regarding Expert and Lay Opinion Testimony ("Pl.'s Witness Report"), ECF No. [74]; the parties' Joint Pretrial Statement, ECF No. [77]; Plaintiff's Expert Report, ECF No. [77-1]; Defendant's Deposition Designations ("Def.'s Dep. Designations"), ECF No. [77-2]; Plaintiff's Objections to Depositions Designations ("Pl.'s Objections to Def's Dep. Designations"), ECF No. [77-3]; Jury Instructions, ECF No. [77-4]; Plaintiff's Objections and Responses to Defendant's Objections to Plaintiff's Pretrial Statement ("Pl.'s Objections and Responses"), ECF No. [77-5]; Defendant's Objections to Plaintiff's Pretrial Statement ("Def.'s Objections"), ECF No. [77-6]; Defendant's Responses to Plaintiff's Objections to Defendant's Pretrial Statement ("Def.'s Responses"), ECF No. [77-7]; Defendant's Motion *in Limine* ("Def's. Mot."), ECF No. [79]; Plaintiff's Opposition to Defendant's Motion *in Limine* ("Pl.'s Opp'n"), ECF No. [82]; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion *in Limine* ("Def.'s Reply"), ECF No. [85]; Plaintiff's Motion *in Limine* ("Pl.'s Mot."), ECF No. [80]; Defendant's Opposition to Plaintiff's Motion *in Limine* ("Def.'s Opp'n"), ECF No. [81]; Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion *in Limine* ("Pl.'s Reply"), ECF No. [83]; Plaintiff's Supplemental Pretrial Brief ("Pl.'s Supp. Pretrial Brief"), ECF No. [88]; Defendant's Supplemental Pretrial Brief ("Def.'s Supp. Pretrial Brief"), ECF No. [89]; Plaintiff's Second Supplemental Pretrial Brief ("Pl.'s 2nd Supp. Pretrial Brief"), ECF No. [90]; Defendant's Second Supplemental Pretrial Brief ("Def.'s 2nd Supp. Pretrial Brief"), ECF No. [91]; Defendant's Notice of Compliance with Court Order ("Def.'s Notice of Compliance"), ECF No. [95]; Plaintiff's Response to Defendant's Supplemental Disclosure ("Pl.'s Response to Def.'s Supp. Disclosure"), ECF No. [96]; Plaintiff's Supplemental Memorandum ("Pl.'s Supp. Mem."), ECF No. [97]; Defendant's Response to Court Order ("Def.'s Response to Court Order"), ECF No. [98]; Defendant's Supplemental Memorandum ("Def.'s Sup. Mem."), ECF No. [100]; and the parties' exhibits and demonstrative aids.

Statement.  As described in the Court's opinion, the Court also leaves certain objections in the

Joint Pretrial Statement for resolution at a later time.  In resolving the parties' motions *in limine*

and the parties' objections in their Joint Pretrial Statement, the Court makes the following

findings[2]:

A.  Defendant's Motion *in Limine*

- Plaintiff may introduce testimony and evidence relating to Youssef's work experience and qualifications beyond the information included in Youssef's FD-954 only where Plaintiff first establishes a factual predicate as to why the LCB member in question would have known that specific information and should have, or did in fact, consider that information in the selection process.
- Curran may testify as to Youssef's known accomplishments only to the extent that the testimony provides information regarding the relative importance that the counterterrorism community would have given to the accomplishments listed on Youssef's FD-954.
- Curran may testify as to Youssef's qualifications relative to those of Powers only to the extent that these qualifications were listed on the FD-954s or were necessarily known by the LCB members.
- Curran may not testify as to the baseline of Youssef's reputation and to the impact of Youssef's non-selection on his reputation within the FBI.
- Curran may not testify as to the impact of Youssef's non-selection on Youssef's post-retirement employment prospects.
- Curran may not testify as to the practices and procedures relating to LCBs, including the frequency with which LCBs conducted interviews or the appropriateness of outside conversations with candidates.
- Youssef may testify as to the qualifications in his FD-954 as compared with those of Powers, to the extent that no other witness testifies on behalf of Plaintiff regarding this issue.
- Youssef may also testify on the matter of LCB procedures in place at the time of Youssef's non-selection.
- Plaintiff may not offer at trial Plaintiff's Exhibit 1, Exhibit 15, and Demonstrative Aids No. 1-6.
- The Court shall limit testimony and evidence about Youssef's prior EEO activities to a neutral statement that he was engaging in such activities at the time of his non-selection for the ASC position, and that the FBI is not permitted to take retaliatory action in response to those activities.
- Defendant may offer testimony by Zarone concerning the OIG Report only as it relates to the narrow issue of Zarone's handwritten comment on Youssef's 2009

---

[2] This list contains the key findings identified by the Court in this Opinion, and the Court does not intend it to be an exhaustive list of all findings made by the Court.

PAR. Plaintiff may impeach Zarone's testimony, but may not introduce additional testimony and evidence about the underlying IG investigation.

- Plaintiff may introduce a redacted version of the "*Mother Jones*" article, with all parts redacted except for the title and the two references to Youssef's discrimination lawsuit.
- Plaintiff may introduce testimony about Youssef's EEO activity by non-decisionmakers only to state that Plaintiff was involved in EEO activity and is entitled to protections when he engages in such activity.
- Plaintiff may introduce testimony and evidence regarding the 2009 PAR and the accompanying notes only to the narrow issue of retaliatory animus, and a jury instruction limiting the use of the evidence would be appropriate.

B. Plaintiff's Motion *in Limine*

- Defendant may introduce evidence at trial in support of its argument that the denial of Youssef's selection for the ASC position was not an adverse action.

C. Issues Raised Over the Course of Briefing

- Plaintiff may not introduce evidence that Fernandez, the non-voting chairperson of the LCB, deliberately "stacked" the LCB with voting members whom Fernandez knew were biased against Youssef.
- Plaintiff may not introduce evidence that LCB members should have relied on Plaintiff's "totality of experiences" to prefer him over other candidates who may have had higher competency scores.
- The Court shall not strike the evidence set out in the Parlave declarations, and the Court shall permit Parlave to testify at trial. However, Plaintiff must have an opportunity to depose Parlave on the issues addressed in her declarations.

The Court makes its findings based on the Court's consideration of the record currently before the Court. The Court observes that various aspects of the parties' trial theories have evolved since the parties filed their Joint Pretrial Statement on March 11, 2015 and their Motions *in Limine* on March 19, 2015. The Court has provided both parties a number of opportunities to develop their arguments through supplemental briefing and pretrial hearings, and the Court expects that the parties have a thorough understanding of the evidence in this case. The Court therefore will be hesitant to grant additional requests by the parties to introduce at trial new testimony or evidence not already contemplated by the parties in their filings to date. The Court, nevertheless, is mindful

that circumstances at trial may open the door to the introduction of additional testimony and evidence, and the Court shall reserve its right to reconsider its findings as the record develops.

## I. BACKGROUND

The factual allegations and legal claims at issue in the case are set forth fully in the January 28, 2014 Memorandum Opinion granting in part and denying in part Defendant's Motion for Summary Judgment. *See Youssef v. Holder*, 19 F. Supp. 3d 167, 171-77 (D.D.C. Jan. 28, 2014). In short, Youssef is a former FBI employee who applied, but was not selected, for the position of Assistant Section Chief ("ASC") in the FBI's Counterterrorism Division. *See id.* at 171. The parties are proceeding to trial on Youssef's claim that his non-selection was retaliatory due to his participation in prior Equal Employment Opportunity ("EEO") activity, which involved a separate lawsuit brought in this Court in 2003. *See generally Youssef v. F.B.I.*, 541 F. Supp. 2d 121 (D.D.C. 2008) ("*Youssef I*").

## II. LEGAL STANDARD

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly contemplate motions *in limine*, the practice of allowing such motions has developed over time "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Consistent with the historical origins of the practice, motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). Broadly speaking, the Federal Rules of Evidence permit the admission of "relevant evidence"—that is, evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401—provided it is not otherwise excluded by the Rules, the Constitution of the United States, or an Act of

Congress, Fed. R. Evid. 402, and its probative value is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility. *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008). The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial. *United States v. Valencia,* 826 F.2d 169, 172 (2d Cir. 1987); *accord Rosemann v. Roto–Die, Inc.,* 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton,* 720 F.2d 548, 553 (9th Cir. 1983), *cert. denied,* 465 U.S. 1069 (1984), *and overruled on other grounds by United States v. W.R. Grace,* 526 F.3d 499 (9th Cir. 2008). The trial judge has the "discretion to rule in limine or to await developments at trial before ruling." Stephen A. Saltzburg *et al.,* FEDERAL RULES OF EVIDENCE MANUAL § 103.02 [12] (9th ed. 2006). "[I]n some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal,* 790 F.Supp.2d 769, 775 (N.D. Ill. 2011) (citation omitted).

### III. DISCUSSION

The Court shall first address Defendant's motion and thereafter turn to Plaintiff's motion. Because of the number and substantive variation of both parties' requests, the Court shall discuss the factual background relevant to each separate request within the context of its analysis of that request. Further, because of the significant overlap between certain matters raised in the parties'

respective motions, the Court shall occasionally, in discussing one party's motion, refer to briefing submitted in connection with the opposing party's motion.

The Court shall also discuss the parties' objections in their Joint Pretrial Statement where doing so would be relevant to the Court's analysis of the parties' motions.

## A. DEFENDANT'S MOTION *IN LIMINE*

Defendant's Motion *in Limine* requests that the Court grant the following relief: (1) exclude testimony and evidence relating to Youssef's work experience and qualifications beyond the information that Youssef included in his FD-954; (2) exclude testimony and evidence of any alleged prior discriminatory or retaliatory acts, including the basis for the *Youssef I* retaliation claim; and (3) limit and segregate testimony and evidence relating to the alleged downgrade in Plaintiff's 2009 Performance Appraisal Report ("PAR"). The Court shall address each request in turn.

### 1. Testimony and Evidence Relating to Youssef's Work Experience and Qualifications beyond the Information Included in Youssef's Form FD-954

Defendant objects to Plaintiff's presentation of testimony and evidence relating to his work experience and qualifications beyond the information included in Youssef's form FD-954.[3] Specifically, Defendant requests that the Court (1) exclude the testimony of Edward Curran; (2) appropriately limit Plaintiff's testimony; and (3) exclude exhibits and demonstrative aids relating to Plaintiff's qualifications that exceed the contents of the FD-954. Before addressing these three requests, the Court shall first consider the issues stemming from Defendant's broader request, that the Court exclude testimony and evidence relating to Youssef's work experience and qualifications

---

[3] The form FD-954 was a written application completed by applicants for the ASC position, in which applicants described their qualifications for the position with respect to specific identified competencies.

beyond the information that Youssef included in his FD-954.

> **a) Plaintiff may introduce testimony and evidence relating to Youssef's work experience and qualifications beyond the information included in Youssef's FD-954 only where Plaintiff first establishes a factual predicate as to why the LCB member in question would have known that specific information and should have considered, or did in fact consider, that information in the selection process.**

As a preliminary matter, there is no dispute that the Local Career Board (LCB") responsible for selecting the new ASC considered information in Youssef's FD-954. The question, therefore, is what evidence and testimony, if any, may be admitted relating to Youssef's work experience and qualifications that go beyond the information that Youssef included in his FD-954.

Defendant argues that applications for the ASC position consisted entirely of FBI forms FD-954, and that members of the LCB were not allowed to consider information beyond what was included in the FD-954. *See* Def. Mot. at 5. Therefore, according to Defendant, the only evidence relevant to the LCB's evaluation of Youssef's experience and qualifications vis-à-vis the other applicants are the FD-954s themselves. *Id.* Defendant believes that additional information regarding Youssef's experience and qualifications would be "patently irrelevant and highly prejudicial" and that Plaintiff seeks to introduce "vast swathes (sic)" of such evidence as a means to suggest that Youssef was more qualified for the ASC position than the agent ultimately selected, Daniel Powers. *Id.*

Plaintiff maintains that the LCB, which consisted of three voting members—Hipolito Castro, Erkan Chase, and Arthur Zarone—and one non-voting chairperson—Armando Fernandez—in fact considered information beyond what was before them when making a determination to deny Plaintiff's application. *See* Pl.'s Opp'n at 1. Plaintiff argues that LCB members may have considered information outside Plaintiff's FD-954 because they had personal

knowledge of Plaintiff, which they were allowed to consider when evaluating his application. *Id.* at 3. Plaintiff, however, cites no evidence that any LCB member—all of whom were deposed by Plaintiff—actually drew upon any specific personal knowledge of Plaintiff, instead conjecturing that the LCB members' personal knowledge of Plaintiff "naturally leads one to question the extent to which these Board members considered their own subjective personal knowledge of the Plaintiff during their evaluation of his candidacy for promotion." *Id.* at 4.

Upon consideration of these arguments, the Court issued a finding at the first pretrial conference on June 30, 2015 that Plaintiff may introduce testimony and evidence relating to Youssef's work experience and qualifications beyond the information included in Youssef's FD-954 only where Plaintiff establishes a factual predicate as to why the LCB member in question would have known that specific information and should have considered, or did in fact consider, that information in the selection process. Where Plaintiff is unable to establish such a factual predicate, Plaintiff will not be allowed to introduce testimony and evidence relating to Youssef's work experience and qualifications, because such evidence would not be relevant to the issues before the jury. *See* Fed. R. Evid. 401.[4] This finding sets out the scope of admissible evidence and testimony concerning Youssef's work experience and qualifications beyond the information included in Youssef's FD-954. The Court notes, however, that since the Court issued this finding at the first pretrial conference, Plaintiff has not identified, through his supplemental briefs, such a factual predicate with regard to much of the testimony and evidence that he seeks to introduce on this issue.

**b) Plaintiff may introduce testimony by Ed Curran on limited issues.**

Defendant objects to Plaintiff's presentation of testimony by Edward Curran, whom

---

[4] The parties did not raise any objections to this finding at the first pretrial conference.

Plaintiff seeks to call as a lay opinion witness and as a qualified expert to testify as to (1) the importance of Youssef's accomplishments that would have been known to reasonable persons working in the counter-terrorism field; (2) Youssef's qualifications relative to those of Powers, the applicant selected for the ASC position; (3) Youssef's reputation within the FBI and the damages caused to that reputation by his non-selection for the ASC position; (4) the impact of Youssef's non-selection on Youssef's post-retirement job prospects outside of the FBI; and (5) the LCB interview procedures in place at the FBI, including the frequency with which LCBs conducted interviews or the appropriateness of outside conversations with candidates. *See* Pl.'s Witness Report, ECF No. [74], at 4-7.

> ### i. Curran may testify as to Youssef's known accomplishments only to the extent that the testimony provides information regarding the relative importance that the counterterrorism community would have given to the accomplishments listed on Youssef's FD-954.

Plaintiff seeks to call Curran as a lay opinion witness and as a qualified expert in the field of counterterrorism to testify on the issue of whether a reasonable person working in the field of counterterrorism would have been aware of the significance of the achievements Plaintiff listed on his FD-954. *See* Pl.'s Witness Report, ECF No. [74], at 4-5. Curran, now retired, worked 52 years in the areas of counterintelligence and intelligence for various state and federal agencies, including the FBI. *Id.* at Exhibit 1. Curran worked for the FBI for 38 years, from 1962 to 2000, and served as Youssef's supervisor for a period of time before his retirement with the FBI. *Id.* at 3. Curran would testify that several of the achievements that Plaintiff listed on his FD-954, such as winning the Director of Central Intelligence Award, should have been recognized as significant accomplishments by LCB members, who deny knowledge of the accomplishments' significance. *Id.* at 4-5.; Pl.'s Opp'n at 6-7. Curran would also testify that Plaintiff's explanation of the awards

on his FD-954 was reasonable in light of their significance.  Pl.'s Witness Report, ECF No. [74], at 4-5.

Defendant argues that Curran's testimony amounts to a mere restatement that Youssef was "fully qualified" for the ASC position, a fact that Defendant concedes. Def.'s Mot. at 7. Defendant also argues that Curran's knowledge is not relevant to any issue in the case, is not probative of the LCB's evaluation of the ASC applications, and would confuse the jury and unfairly prejudice Defendant. *Id.* Defendant further argues that Curran's testimony is not admissible because expert opinions based on subjective beliefs fail to meet the reliability requirement necessary for the admission of expert testimony. *Id.*

Plaintiff responds that he seeks to introduce Curran's testimony not for the purpose of showing that Plaintiff was qualified for the ASC position, but rather that Curran's testimony is pivotal in showing the existence of retaliatory animus on the LCB and for impeaching several of Defendant's key witnesses who have claimed to be unaware of the importance of several of the accomplishments on Youssef's FD-954. Pl.'s Opp'n at 7-8. According to Plaintiff, Curran would testify that it is not credible for a manager at the FBI with any experience in the field of counterterrorism to deny knowledge of the significance of achievements, such as winning the Director of Central Intelligence Award. *Id.* at 7. Plaintiff further argues that assuming that the LCB members were not aware of the significance of these achievements, Curran's testimony would demonstrate that the fact that all three members did not make any inquiry into the key facts in Youssef's FD-954 is evidence of pretext. *Id.*

Upon consideration of the parties' arguments, the Court issued a finding at the first pretrial conference that Curran may testify as to Youssef's known accomplishments only to the extent that

that they were listed on the FD-954.[5]  In particular, Plaintiff may use Curran's testimony to provide additional information as to the importance of these accomplishments in the context that the counterterrorism community would have considered them important.  The Court further notes that Defendant is correct in arguing that experts may not "opine on another witness's credibility."  *See, e.g., Engesser v. Dooley*, 457 F.3d 731, 763 (8th Cir. 2006).  Therefore, Curran's testimony shall be limited to the topics described above concerning the relative importance that the counterterrorism community would have given to the accomplishments listed on Youssef's FD-954.  Finally, as noted by the Court in both pretrial conferences, the issue of whether Curran qualifies as an expert in the field of counterterrorism requires resolution at a *Daubert* hearing.  Accordingly, the Court declines to rule on Curran's qualifications as an expert at this time.

> ### ii.  Curran may testify as to Youssef's qualifications relative to those of Powers only to the extent that these qualifications were listed on the FD-954s or were necessarily known by the LCB members.

Plaintiff seeks to call Curran as an expert in the field of counterterrorism to testify on the issue of Plaintiff's qualifications relative to those of Powers, the candidate eventually selected by the LCB.  *See* Pl.'s Opp'n at 9.  In particular, Curran would testify that no reasonable person with counterterrorism experience at the FBI could have compared Powers' FD-954 to Plaintiff's FD-954 and concluded that Powers was a superior candidate.  *Id.*; Pl.'s Witness Report, ECF No. [74], at 5-6.  According to Plaintiff, this information is highly relevant for the purposes of suggesting retaliatory animus—if the LCB members could not have justified Powers' promotion in any way based on his experience in the field of counterterrorism, this suggests that the reason he was promoted was because he was simply an alternative to Plaintiff.  *See* Pl.'s Opp'n at 9.

---

[5] At the first pretrial conference, Plaintiff indicated agreement that Curran will testify to Youssef's accomplishments only to the extent that they were listed on the FD-954.

Defendant argues that Curran, who left the FBI in 2000 and has never worked in the FBI's Counterterrorism Division, lacks the necessary expertise to testify about what attributes and experience were important to the Counterterrorism Division in 2009. *See* Def.'s Mot. at 8. Defendant notes that Curran's departure from the FBI predates the establishment of the Counterterrorism Division and of the ASC position for which Plaintiff applied. *Id.* Given Curran's lack of expertise in this area, Defendant argues, Curran's opinion that Youssef was more qualified than Powers would amount to nothing more than his own subjective belief. *Id.* In response, Plaintiff argues that Curran's testimony would not be based on his subjective opinion. Pl.'s Opp'n at 9. Rather, Curran would testify as an expert in the field of counterterrorism, drawing on his professional experiences, developed over 38 years at the FBI, then later at the NYPD's Intelligence Division. *Id.*

Upon consideration of the parties' arguments, the Court finds that Curran may testify on the issue of Plaintiff's qualifications relative to those of Powers only to the extent that these qualifications were on the FD-954s or would have necessarily been known by the LCB members. Curran's testimony, as indicated by Plaintiff, shall not be based on Curran's subjective opinion, but rather on his experiences in the field of counterterrorism. As previously stated, the issue of whether Curran qualifies as an expert in the field of counterterrorism requires resolution at a *Daubert* hearing. Accordingly, the Court declines to rule on Curran's qualifications as an expert at this time.

### iii.    Curran may not testify as to the baseline of Youssef's reputation and to the impact of Youssef's non-selection on his reputation within the FBI.

Plaintiff seeks to offer lay opinion testimony by Curran as to the baseline of Youssef's reputation, i.e., Youssef's reputation prior to his non-selection, and to the impact of Youssef's non-

selection on his reputation within the FBI. *See* Pl.'s Witness Report, ECF No. [74], at 6. Specifically, Curran would provide lay opinion testimony as to Youssef's reputation as an "excellent performer."[6]

The parties disagree as to what evidence is relevant to establishing Youssef's reputational baseline. Defendant contends that the only pertinent baseline of reputation is at the time immediately before the 2009 non-selection decision. *See* Def.'s Mot. at 8. Defendant argues that Curran, who resigned from the FBI in 2000 and has not worked with Youssef since 1996, has no personal knowledge of Youssef's reputation after 2000. *Id.* Defendant further argues that Youssef's reputation in the 1990s cannot reflect his reputation in 2009 because of intervening events after Curran's departure, which according to Youssef's testimony in his prior trial, negatively impacted his reputation. *Id.* Therefore, Defendant argues, Plaintiff's reputation as known to Curran is not the relevant baseline reputation at issue, and Curran's testimony should be excluded as irrelevant. *Id.* In support of this argument, Defendant cites several D.C. Circuit cases, which hold that reputation evidence must be based on observation of the reputation that is close in time to the events at issue, and may not be based in observations made in the distant past. *See, e.g.*, *United States v. Whitmore*, 359 F.3d 609, 617 (D.C. Cir. 2004).

In response, Plaintiff argues that the relevant reputation baseline should date back to the 1990s in order to provide the jury with the full context of Plaintiff's work history. Pl.'s Supp. Pretrial Brief at 7.[7] Plaintiff argues that such evidence would establish Plaintiff's credibility and

---

[6] Upon questioning by the Court at the second pretrial conference, Plaintiff clarified that Curran would testify as to Youssef's reputation as an "excellent performer."

[7] After the first pretrial conference, the Court ordered each party to address in supplemental pretrial briefs whether Youssef's experiences and reputation in the 1990s should form part of Youssef's "baseline reputation in this case, or whether only evidence of Youssef's reputation in 2009, just prior to his non-selection, should form his reputation 'baseline.' " Order dated July 2,

purpose in alleging retaliation, two prerequisites for establishing a baseline reputation. *Id*. In support of this argument, Plaintiff cites several employment discrimination cases, where courts admitted evidence of plaintiffs' work histories to establish that there could have been discriminatory animus behind the defendants' actions. *See, e.g.*, *Watson v. Nationwide Ins. Co.*, 823 F.2d 360 (9th Cir. 1987). However, the cases cited by Plaintiff do not discuss whether to allow reputational evidence at trial, and are not instructive to the Court's analysis in this case.

Upon review of these arguments, the Court finds that the relevant reputation baseline must be close in time to the events at issue in 2009, and cannot date back to the 1990s. *See Whitmore*, 359 F.3d at 609. Plaintiff's reputation in the 1990s does not accurately reflect Plaintiff's reputation in 2009, because his reputation changed over that time. Plaintiff's own testimony in *Youssef I* supports this conclusion. In *Youssef I*, Plaintiff testified that his reputation was injured in 2005 when he was denied permission to attend inspections. *See* Def.'s Supp. Pretrial Brief, ECF No. [89], at 5 (citing Tr. Of Jury Trial, Day 3, AM Session, 98:6-21, 125:1-5). Furthermore, the parties do not dispute Youssef's reputation in 2009 when he applied for the ASC position. Defendant acknowledges that Youssef met the eligibility requirements for the position, and that he was "fully qualified." *See* Def.'s Mot. at 7. Therefore, the probative value of evidence establishing Youssef's reputation baseline, no less a baseline dating back to the 1990s, is marginal.

Finally, Curran does not have personal knowledge of Youssef's reputation within the FBI around the time of Youssef's non-selection in 2009. Therefore, Curran is not an appropriate witness to testify on this subject. At the second pretrial conference, the Court indicated a willingness to consider the admissibility of testimony by another of Plaintiff's witnesses

---

2015, ECF No. [86], at 5.

concerning the issue of Youssef's reputation and the damages caused to his reputation within the FBI by his non-selection for the ASC position.   However, Plaintiff failed to indicate in his supplemental briefing dated September 21, 2015 that he has any other evidence relating to Youssef's reputation within the FBI.   *See* Pl.'s Supp. Mem., ECF No. [97].   Specifically, Plaintiff's supplemental briefing did not provide any information indicating "what the relevant community for evaluating Youssef's reputation is, what the quality of Youssef's reputation prior to his non-selection was, and who will testify as to Youssef's reputation," as required by the Court's Order dated August 14, 2015.   *See* Order, ECF No. [92], at 3.   Because Plaintiff has not responded to the Court's inquiry above, Plaintiff cannot, at some later date, proffer another witness on this issue not identified at this time.   However, the Court also observes that Plaintiff states in the Joint Pretrial Statement that Plaintiff would provide testimony as to the damages to his reputation.   *See* Joint Pretrial Statement, ECF No. [77], at 12; *see also* Pl.'s Witness Report, ECF No. [74], at 9-11.   The Court is reluctant to preclude Plaintiff from testifying on this issue, noting that Defendant did not raise any objections to Plaintiff's proffered testimony in the Joint Pretrial Statement, and that the Court allowed similar testimony concerning reputational damages by Plaintiff in *Youssef I*.   *See* Pl.'s Witness Report, ECF No. [74], at 9-11; Def.'s Objections, ECF No. [77-6], at 4-6. Accordingly, the Court finds that Youssef, in lieu of Curran, may provide lay opinion testimony as to the baseline of Youssef's reputation and to the impact of Youssef's non-selection on his reputation within the FBI. However, the Court shall allow Youssef's testimony on reputational damages, only after Plaintiff provides further information indicating the relevant community for evaluating Youssef's reputation, as well as the quality of Youssef's reputation prior to his non-selection.

### iv.   Curran may not testify as to the impact of Youssef's non-selection on Youssef's post-retirement employment prospects.

Plaintiff also seeks to call Curran to testify about Youssef's post-retirement reputational damage due to his diminished post-retirement employment prospects. *See* Pl.'s Supp. Pretrial Brief, ECF No. [88], at 10.[8] Curran would provide expert and lay opinion testimony that Youssef, having left the FBI as Unit Chief and having not been selected for the ASC position, was unable to secure certain positions and earn certain compensation in his counterterrorism career beyond the FBI. *Id.* at 10-11. Plaintiff states in his supplemental briefing after the first pretrial conference that since his retirement from the FBI, he has pursued, without success, consulting positions at firms, including Booz Allen, who are looking for employees with counterterrorism experience. *Id.* at 10. Plaintiff, however, provided no further information regarding these consulting positions or any evidence whatsoever suggesting that the denial of the ASC position in 2009 caused Plaintiff to lose any of these job opportunities following his retirement in October 2014. The Court raised these concerns at the second pretrial conference and provided Plaintiff an opportunity to supplement its arguments on this issue. *See* Order dated August 14, 2015, ECF No. [92], at 3. Specifically, the Court ordered Plaintiff to "indicate whether he has tried to find post-retirement employment, what opportunities he has missed, what Curran will testify to, and the factual predicate that would permit Curran to testify as an expert about Youssef's allegedly diminished

---

[8] After the first pretrial conference, the Court ordered that the parties submit supplemental briefing as to Curran's proffered testimony about Youssef's post-retirement employment prospects. *See* Order dated July 2, 2015, ECF No. [86], at 5. Specifically, the Court required Plaintiff to indicate the factual predicate permitting Curran to testify as an expert about Youssef's allegedly diminished post-retirement employment prospects. *Id.* The Court also ordered that Plaintiff indicate what future employment Youssef is seeking that would make Curran's testimony salient. *Id.*

post-retirement employment prospects." Plaintiff failed entirely to adduce any such evidence in his supplemental brief filed on September 21, 2015. *See* Pl.'s Supp. Mem., ECF No. [97].

Accordingly, the Court finds that Plaintiff may not offer testimony by Curran, or by any other witness, as to the impact of Youssef's non-selection on Youssef's post-retirement job prospects outside of the FBI. After several inquiries by the Court, Plaintiff's sole evidence of lost job opportunities remains a single, generalized reference to Plaintiff's pursuit of a consulting position at Booz Allen. Furthermore, when given the opportunity by the Court, Plaintiff failed to proffer any evidence suggesting that Plaintiff was not hired for the consulting position at Booz Allen following his retirement in 2014 because of his non-selection of the ASC position in 2009. The Court therefore agrees with Defendant that Plaintiff has provided no evidence to support a conclusion that any marginal value added by an ASC title would have qualified Plaintiff for jobs that were otherwise out-of-reach for him. Def.'s Supp. Pretrial Brief, ECF No. [89], at 7. As Defendant notes, Plaintiff had a long career at the FBI, during which he rose to the ranks of management and occupied an important GS-15 Unit Chief position at the end of his tenure. *Id.* The record currently before the court provides no reason to suggest that the denial of the ASC position in 2009 would have caused Plaintiff to lose any job opportunities following his retirement in October 2014. Accordingly, the Court finds that Plaintiff may not offer testimony by Curran, or by any other witness, as to the impact of Youssef's non-selection on Youssef's post-retirement job prospects outside of the FBI.[9]

---

[9] The Court therefore finds it unnecessary to decide whether Curran possesses any personal knowledge regarding Plaintiff's post-FBI job search, or whether Curran possesses the relevant experience to opine on the subject of post-FBI job opportunities.

### v.   Curran may not testify as to the practices and procedures relating to LCBs, including the frequency with which LCBs conducted interviews or the appropriateness of outside conversations with candidates.

Plaintiff also seeks to call Curran to testify as an expert concerning the practices and procedures relating to LCBs. *See* Pl.'s Witness Report, ECF No. [74], at 4. Specifically, Curran would testify as to the role of LCBs in the FBI promotional process, the role of the Chairman of the LCB, and the procedures used by LCBs. *Id.* This testimony would include discussion as to the right and responsibility of LCB members to interview candidates in order to understand their qualifications, especially if they were not familiar with significant achievements set forth in the FD-954. *Id.* Curran would also render an opinion that the failure to interview Youssef, combined with the fact that the Chairman of the LCB did talk with other applicants, was inappropriate. *Id.* Curran would also testify that LCB members should review the complete FD-954, and take into consideration factors such as years of experience, an applicant's employment in the section for which the promotion would occur, and other career milestones reflected in the FD-954. *Id.*

As a preliminary matter, the Court observes that Plaintiff has not put forth any evidence to suggest that Curran, who left the FBI in 2000, was knowledgeable of the LCB policies and procedures in place at the time of the Plaintiff's non-selection in 2009. At the second pretrial conference, the Court raised this concern to Plaintiff, stating that it was not clear to the Court what expert testimony Curran would be able to provide about the LCB interview procedures. *See* Order dated August 14, 2015, ECF No. 92, at 3-4. After the second pretrial conference, the Court provided Plaintiff an opportunity to proffer additional evidence through an additional round of supplement briefing. *See id.* In his supplemental brief filed in response to the Court's Order, Plaintiff, however, failed to respond to the Court's concerns regarding Curran's lack of knowledge of procedures in effect at the time of Plaintiff's non-selection. *See* Pl.'s Supp. Mem., ECF No.

[97].   Plaintiff also did not indicate whether he still seeks to introduce expert testimony from Curran on the subject of LCB interview procedures.  *See id.*

Instead, Plaintiff argues that the Court should not consider certain evidence proffered by Defendant in its supplemental briefing concerning the impact of certain policy changes in 2004 on LCB interview procedures.  *See id.* at 2-3.   Specifically, Plaintiff contends that Defendant inappropriately relies on a declaration of Valerie Parlave concerning the impact of the 2004 policy changes on interview procedures.  *See* Pl.'s 2nd Supp. Pretrial Brief, ECF No. [90], at 3-4; Pl.'s Supp. Mem., ECF No. [97], at 2-3.  The Court addresses, in great detail, Plaintiff's objections to Parlave's testimony and her declaration, including her declaration concerning the impact of the 2004 policy changes on LCB interview procedures, later in this Opinion, in Part III.C.4.  As stated in Part III.C.4, the Court concludes that the Court may consider the Parlave declaration concerning the 2004 changes relating to candidate interview procedures, but the Court shall allow Plaintiff the opportunity to depose Parlave.  *See* Part III.C.4

Defendant relies on the Parlave declaration in support of its argument that the FBI overhauled the career board process in 2004, four years after Curran's departure, and that Curran has "no understanding of the revised process."  Def.'s Mot. at 9.[10]  The Parlave declaration provides details of the 2004 changes, which included, *inter alia*, a requirement that applicants provide "substantially more information" on the FD-954 in use after 2004, which reduced the likelihood that the LCB would conduct interviews of candidates.  Def.'s Supp. Pretrial Brief, ECF

---

[10] At the first pretrial conference, Defendant explained that the LCB process was overhauled in 2003; however Defendant was unable to make any representations as to whether the process relating to candidate interviews changed in 2003.  Accordingly, the Court ordered Defendant to indicate in its supplemental pretrial brief whether the procedure or practice relating to candidate interviews changed in the period between Curran's departure from the FBI and Youssef's non-selection.  *See* Order dated July 2, 2015, ECF No. [86], at 4.

No. [89], at 3-4 and Exhibit 1, Declaration of Valerie Parlave ("Parlave Declaration").

In response, Plaintiff argues that Curran had substantial experience with career boards up until his departure from the FBI in 2000, and that the 2004 changes merely amounted to "minor changes" that would not affect the probative value of Curran's testimony. Pl.'s Opp'n at 8-9. The Court does not find this argument convincing. The changes to the career board process went beyond "minor changes" to the system with which Curran was familiar in the 1990s. The 2004 policy changes directly impacted the rights and responsibilities of LCB members to interview candidates—a key procedure for which Plaintiff has proffered Curran's expert testimony. *See* Pl.'s Witness Report, ECF No. [74], at 4. As noted above, Plaintiff, despite repeated opportunities, has not put forth any evidence to suggest that Curran was knowledgeable of these post-2004 policies and procedures relating to LCBs. Accordingly, the Court finds that Curran may not testify as to the practices and procedures relating to LCBs, including the frequency with which LCBs conducted interviews or the appropriateness of outside conversations with candidates.

### c) Plaintiff Youssef may provide testimony on limited issues.

Defendant seeks to limit Youssef's own testimony. Specifically, Defendant requests that Youssef not be permitted to testify—whether as "background," "reputation" evidence, or otherwise—about his qualifications, experience, accomplishments, etc. except to the extent that those points are specifically described in his FD-954. Def.'s Mot. at 10.[11]

---

[11] The Court notes that Defendant does not dispute that Youssef may provide testimony explaining the experiences specifically described in his FD-954. *See* Def.'s Mot. at 10. Defendant seeks to exclude Youssef's testimony that go beyond the FD-954, including any testimony comparing Youssef's qualifications with Powers' qualifications.

i. **Youssef may provide testimony comparing the qualifications in his FD-954 with those of Powers, to the extent that no other witness testifies on behalf of Plaintiff regarding this issue.**

Youssef seeks to offer his own lay opinion testimony comparing his qualifications with those of Powers, the candidate selected for the ASC position. *See* Pl.'s Supp. Pretrial Brief, ECF No. [88], at 13.[12]

Defendant argues that Youssef should not be permitted to testify on his qualifications relative to those of Powers because of the Court's decision at the summary judgment stage, in which the Court held that Youssef's subjective opinion concerning his credentials did not weigh heavily in the Court's analysis. *See* Def.'s Mot. at 11-12 (citing *Youssef I*, 19 F. Supp. 3d at 191). Defendant further argues that Youssef's own opinions that go beyond the contents of the FD-954 would only serve to distract the jury from the narrow retaliation claim and confuse the jury as to which of Plaintiff's qualifications were actually considered by the LCB. *Id.* at 10.

Plaintiff argues that his testimony would provide evidence showing that he had qualifications, of which LCB members were (or reasonably should have been) aware, that made him objectively better qualified for the ASC position than the candidate who was ultimately selected. Pl.'s Opp'n at 11. Plaintiff further argues that such evidence would also show the jury that the LCB did not have a legitimate business reason for denying Plaintiff's application for promotion to the ASC position. *Id.* In other words, Plaintiff's testimony would be relevant for the purpose of showing a potential retaliatory animus by members of the LCB. *Id.*

The Court begins its analysis by observing that at the summary judgment stage, a plaintiff's

---

[12] In supplemental briefing on this issue, Plaintiff stated that he will testify on this issue as a lay person, rather than as an expert, which Plaintiff had indicated in earlier filings. *See* Pl.'s Supp. Pretrial Brief, ECF No. [88], at 13.

own self-perception regarding the strength of his own credentials is normally of limited value for purposes of establishing discriminatory conduct. *See, e.g.*, *Perry v. Shinseki*, 783 F. Supp. 2d 125, 137 (D.D.C. 2011), *aff'd* 466 Fed. Appx. 11 (D.C. Cir. 2012). However, once the plaintiff has survived summary judgment, the Court's analysis must change. Opinion testimony at trial in this case must be viewed not in light of whether it is relevant to establishing a disputed material issue of fact, but whether the opinion testimony has any tendency to make it more likely that the decision to promote Powers, instead of Youssef, was made with retaliatory animus. *See* Fed. R. Evid. 401. Thus, the bar for relevance at trial is lower than when evaluating the earlier motion for summary judgment, because Plaintiff's opinion need not, alone, establish a disputed issue of material fact. *See, e.g.*, *Burlington v. News Corp.*, No. 09-1908, 2010 WL 5481734, at *1 (E.D. Pa. Dec. 30, 2010). For this reason, if the parties reach trial, and there is no one else to speak on behalf of Plaintiff as to his qualifications, Plaintiff should be afforded the opportunity to give his opinion comparing his qualifications, in order to complete the record for the jury. *See Greenfield v. Sears, Roebuck & Co.*, No. 04-71086, 2006 WL 2927546, at *12 (E.D. Mich. Oct. 12, 2006) (unpublished table opinion). The Court is mindful that the relevant issue in this case is the LCB's perception of Youssef's qualifications, not Youssef's perception of his own qualifications. Therefore, to the extent that another witness, such as Curran, testifies as an expert and compares Youssef's qualifications with Powers' qualifications, then Youssef should not be permitted to give his opinion comparing their qualifications. However, the Court also recognizes that the jury must consider a complete record, and that the jury should not hear only from the LCB members on the issue of Youssef's qualifications. Accordingly, if Plaintiff is unable to call any other witnesses who can testify on his behalf comparing his qualifications with those of Powers, Plaintiff may provide his own testimony on the issue. The Court is not opening the door for Youssef to testify

as to every experience from the beginning of his career. Rather, Plaintiff may testify only to the qualifications that were on his FD-954, including his positions and competencies, and his testimony should be limited in scope to information that would have been necessarily known to the LCB members.

As a related point, in the parties' Joint Pretrial Statement, Defendant indicates that it intends to proffer testimony from the LCB members—Castro, Chase, Zarone, and Fernandez—concerning the application requirements for the ASC position, their review, assessment, and scoring of the FD-954s of the four candidates for the ASC position, including Youssef, and the LCB proceedings related to this vacancy. Joint Pretrial Statement, ECF No. [77], at 20. These witnesses would also testify that their knowledge, if any, that Youssef had a pending lawsuit did not influence their scoring of his description of the various competencies for the ASC vacancy. *Id*. The Court shall admit their testimony on these issues under Rule 701

Defendant also indicates that it would call Powers to testify about the work-related experience described in Powers' FD-954 to rebut testimony by Youssef, or any other witness called by Plaintiff, about the relative qualifications for the vacancy at issue. Joint Pretrial Statement, [77], at 23. The Court shall allow Powers' testimony about his qualifications under Rule 701, but shall limit his testimony only to those qualifications stated on his FD-954.

### ii. Youssef may also testify on the matter of LCB procedures in place at the time of Youssef's non-selection.

Youssef also seeks to testify as a lay person and as an expert on the matter of LCB procedures. Pl.'s Witness Report, ECF No. [74], at 8. Specifically, Youssef would testify as to the role of career boards in the FBI promotional practice, the role of the chairman of the career board, and the procedures used by career boards. *Id*. His testimony would address the rights and

responsibilities of career board members to interview candidates in order to understand their qualifications, especially if they were not familiar with significant achievements set forth in the FD-954. *Id.* He would also render an opinion that the failure to interview Youssef, combined with the fact that the chairman of the LCB did talk with other applicants, was inappropriate. *Id.* Youssef would also testify that LCB members should review the complete FD-954, and take into consideration years of experience, the fact that the applicant was employed in the section for which the promotion would occur and other career milestones reflected in the FD-954. *Id.*

Defendant argues that Plaintiff should not be allowed to offer his personal opinion about how the LCB proceedings should have occurred in this case. Def.'s Mot. at 8. Defendant argues that Plaintiff has not shown that the career boards on which Plaintiff has participated operated under the same or similar rules as the LCB in this case, that those career boards considered similar positions as the ASC position in this case, or any other facts to suggest relevant knowledge to establish a foundation for his testimony. *Id.* According to Defendant, Plaintiff would be offering his own personal, subjective opinion under the guise of expert testimony. *Id.*

Plaintiff argues that he is highly qualified to testify as an expert witness on the matter of LCB procedures. Pl.'s Opp'n at 12. As a management-level employee at the FBI, Plaintiff was on several occasions asked to sit on LCBs and did in fact sit on at least 25 such career boards over the course of his time at the FBI. *Id.* Plaintiff also chaired at least 15 career boards, and argues that he has a high level of familiarity and expertise regarding the LCB process. *Id.*

Upon consideration of the parties' arguments, the Court finds that Youssef may testify as to LCB policies and procedures, so long as Youssef has personal knowledge of these procedures from his experience on LCB panels during the relevant 2009 time period. The Court observes from the record that as a manager, Youssef was formally trained by the FBI in the career board

process and indicates that he is "fully familiar" with the rules governing Career Boards at the time when his Assistant Section Chief application was reviewed." Pl.'s Witness Report, ECF No. [74], at 7-8. The Court also observes that he has chaired 15 LCB panels and has been on 25 career boards. *Id.* It appears to the Court that Youssef may testify on these issues as a lay witness under Rule 701, so long as Youssef has personal knowledge of LCB procedures from his experience on LCB panels during the relevant 2009 time period. The Court, however, is unable to determine from the current record whether Youssef would qualify as an expert as to LCB policies and procedures, and concludes that if Plaintiff continues to request that Youssef be qualified as an expert, then the issue of Youssef's qualifications as an expert shall require resolution at a *Daubert* hearing.

Finally, as a related point, the Court shall not permit Youssef to testify, as a lay witness or as an expert, as to whether any specific actions taken by the FBI were retaliatory under Title VII. Plaintiff has not established any qualifications by which the Court could conclude that he is an expert on such issues, and to the extent that Youssef has personal knowledge of these issues, his testimony would be unfairly prejudicial and would not be helpful to the jury. *See* Fed. R. Evid. 403.

### d) Plaintiff may not offer at trial Plaintiff's Exhibit 1, Exhibit 15, and Demonstrative Aids No. 1-6.

Defendant also seeks to exclude certain exhibits and demonstrative aids that Plaintiff intends to offer at trial. Def.'s Mot. at 12. Specifically, Defendant seeks to exclude Plaintiff's Exhibit 1, Exhibit 15, and Demonstrative Aids No. 1-6. *Id.* at 12-13.

#### i. Plaintiff may not offer at trial Plaintiff's Exhibit 1, which consists of Plaintiff's performance appraisal reports from 1989 to 2004.

Plaintiff's Exhibit 1 consists of Plaintiff's FBI performance appraisal reports ("PARs")

from 1989 to 2004.  Defendant argues that Plaintiff hopes to sway the jury by the introduction of these reports because they may contain positive remarks about Plaintiff's job performance. Def.'s Mot. at 12.  Defendant argues that the reports are irrelevant to the LCB review process and the non-selection decision at issue in this case because they were not considered by the LCB.  *Id.* Plaintiff argues that these PARs, particularly the 1995 and 2000 PARs, discuss Youssef's role in the investigation of Omar Abdel Rahman, a.k.a., the "Blind Sheikh," Youssef's performance as the Legal Attaché in Riyadh, and the evaluations and reasoning behind giving Youssef the Director of Central Intelligence Award.  Pl.'s Supp. Pretrial Brief, ECF No. [88], at 14.

Plaintiff argues that these elements are all noted in Youssef's FD-954 and were factors considered by the LCB.  *Id.* at 14-15.  Plaintiff argues that the PARs would be helpful to members of the jury who may not be aware of these accomplishments.  *Id.* at 15.[13]

Upon consideration of the parties' arguments, the Court concludes that the PARs in Exhibit 1 are not relevant to the non-selection decision because they were not considered separately by the LCB when selecting the new ASC.  *See* Fed R. Evid. 401.  Furthermore, the information in the 1995 and 2000 PARs concerning Youssef's role in the investigation of the Blind Sheikh and his performance as the Legal Attaché in Riyadh are in the FD-954 itself, thereby making introduction of Exhibit 1 prejudicial, not helpful to the jury, and needlessly cumulative.  *See* Fed. R. Evid. 403. Accordingly, Plaintiff may not introduce Plaintiff's Exhibit 1 at trial.

### ii.    Plaintiff may not offer at trial Plaintiff's Exhibit 15, which concerns Plaintiff's performance in the Riyadh office.

Plaintiff's Exhibit 15 comprises 15 pages of a 28-page report concerning an inspection of

---

[13] Plaintiff also argues that the PARs are relevant to establishing a reputational baseline dating back to the 1990s—an argument that the Court rejects. *See* Part A.1.b.iii, *supra.*

an FBI office in Riyadh, Saudi Arabia.  The document describes in detail Plaintiff's role on this assignment at the Riyadh office in the late 1990s.  Defendant argues that the document is irrelevant to the claim in this case because it was not submitted to or considered by the LCB.  Def.'s Mot. at 15.  Defendant further argues that to the extent that any portions of the report were quoted in Plaintiff's FD-954, those references will be admitted through the FD-954 itself.  *Id.*

Plaintiff argues that like Exhibit 15, Exhibit 1 would help the jury to understand the significance of Youssef's accomplishments in the Riyadh office.  Pl.'s Supp. Pretrial Brief, ECF No. [88], at 15.  The Court finds this argument unavailing.  Plaintiff's Exhibit 15 suffers from the same defects as Plaintiff's Exhibit 1.  Exhibit 15 is not relevant to the non-selection decision because it was not considered separately by the LCB when selecting the new ASC.  *See* Fed. R. Evid. 401.  Furthermore, Youssef's performance as the Legal Attaché in Riyadh is described in the FD-954.  Introduction of separate evidence without a link to the LCB deliberation process would be prejudicial and not helpful to the jury.  *See* Fed. R. Evid. 403.  Accordingly, Plaintiff may not offer at trial Plaintiff's Exhibit 15.

### iii.   Plaintiff may not offer at trial Plaintiff's Demonstrative Aids No. 1-6, which contain information as to Plaintiff's length of service.

Plaintiff's Demonstrative Aids No. 1-6 describe information about Plaintiff's length of service in various capacities in comparison to that of Powers.

The parties disagree as to whether the LCB could take into consideration an applicant's length of service.  The disagreement concerns the applicability of an LCB procedure allowing for the LCB's technical consideration of an applicant's "totality of experience."  The Court addresses the parties' arguments concerning the applicability of this "totality of experience" approach later in the Court's opinion, in Part III.C.2.  For the purposes of the Court's analysis with regard to

Plaintiff's Demonstrative Aids No. 1-6, the Court concludes for the reasons stated in Part III.C.2 that the applicable procedures in place at the time of Youssef's non-selection would not have allowed for the technical consideration of an applicant's "totality of experience."  *See* Part III.C.2; *see also Youssef I*, 19 F. Supp. 3d at 189.

Defendant argues that because the LCB members were not allowed to consider the applicants' relative lengths of service, Plaintiff's Demonstrative Aids No. 1-6 would confuse the jury by suggesting that Plaintiff was the better-qualified applicant according to factors that were irrelevant to the selection decision.  *See* Def.'s Mot. at 13.

In response, Plaintiff notes that Demonstrative Aids No. 1-6 each contain information contained within Youssef's FD-954.  Pl.'s Opp'n at 13.  Plaintiff argues that the documents would not confuse the jury, and would merely set forth the information contained directly on Youssef's FD-954 and then contrast the information to the information set forth on Powers' FD-954.  *Id.* at 14.

Upon consideration of the parties' arguments, the Court concludes that Plaintiff's Demonstrative Aids No. 1-6—which focus on the relative length of service of the two applicants— would not be helpful to a jury, as this would highlight a factor not part of the deliberative process of the LCB.  As conceded by both parties, the information described by these documents can already be found in the FD-954s, which will be introduced to the jury.  Therefore, Demonstrative Aids No. 1-6, introduced on their own, would be prejudicial, not helpful to the jury, and needlessly cumulative.  *See* Fed. R. Evid. 403.  Accordingly, Plaintiff may not offer at trial Plaintiff's Demonstrative Aids No. 1-6.

## 2.  Testimony and Evidence of Any Alleged Prior Discriminatory Acts or Retaliatory Acts including the Basis for the *Youssef I* Retaliation Claim

Defendant objects to Plaintiff's introduction of evidence of alleged prior discriminatory or

retaliatory acts or claims. Specifically, Defendant's motion requests that the Court (1) limit testimony and evidence about Youssef's prior EEO activity to a neutral statement that he was engaging in such activity at the time of his non-selection for the ASC position and (2) exclude evidence concerning the ongoing Inspector General Investigation, arising from whistleblower activity, or any alleged prior discriminatory or retaliatory acts by FBI officials other than any such allegations directed at the LCB decisionmakers that are close in time to the alleged retaliation in this case. Def.'s Mot. at 14, 16. The Court shall address each request in turn.

**a)  The Court shall limit testimony and evidence about Youssef's prior EEO activities to a neutral statement that he was engaging in such activities at the time of his non-selection for the ASC position, and that the FBI is not permitted to take retaliatory action in response to those activities.**

Defendant requests that the Court limit testimony and evidence about Youssef's prior EEO activity to a neutral statement that he was engaging in such activity, such as depositions, at the time of his non-selection for the ASC position. Def.'s Mot. at 14. Defendant further requests that to the extent that Youssef is permitted to introduce alleged evidence of other discriminatory or retaliatory acts by the FBI as background information or for any other purpose, the FBI should be entitled to introduce evidence that the *Youssef I* jury found that the FBI did not retaliate against Youssef to show that the prior allegations were found to lack merit. *Id.*

As background, the Court notes that Youssef claims that the FBI retaliated against him when he was not selected for the ASC position in 2009. *Id.* At the time of the selection decision, Youssef was participating in depositions and court proceedings related to his retaliation claim in *Youssef I*. *Id.* In *Youssef I*, Youssef also brought a national origin discrimination claim, which had been dismissed eighteen months prior to the selection decision, but was later reinstated by the Court of Appeals. *Id.* Defendant argues that the Court should not allow testimony about

Youssef's national origin claim because the unfair prejudice to the FBI would outweigh any probative value under FRE 403. *Id.* Specifically, Defendant argues that the introduction of evidence relating to Youssef's national origin claim would be unfairly prejudicial because the claim was not the protected activity upon which Youssef bases his retaliation claim in this case. *Id.* at 15. Rather, Defendant argues, Youssef's protected activity in the fall of 2009 was a Title VII retaliation claim based on Youssef's same national origin claim, on which the *Youssef I* jury later entered a verdict in favor of the FBI. *Id.* Defendant further argues that Youssef, by introducing this evidence, would mislead the jury into believing that his pending protected activity was based solely on a national origin discrimination claim. *Id.* Defendant requests that to the extent that Youssef seeks to introduce evidence about his prior protected activity—other than a neutral statement that he engaged in protected EEO activity—the FBI should be entitled to introduce evidence that the protected activity was a claim for retaliation based on the same underlying protected activity and that a prior jury entered judgment in favor of the FBI. *Id.*

Plaintiff agrees with Defendant that any discussion concerning the merits of his prior claims, by either party, is inappropriate. Pl.'s Opp'n at 15; Pl.'s Mot. at 5-6.[14] Plaintiff also agrees with Defendant's argument that any reference to dismissed claims would be highly prejudicial. *Id.* According to Plaintiff, the issue in this retaliation case is Youssef's right to participate in anti-discrimination proceedings or to oppose discriminatory practices. *Id.* Plaintiff disagrees with Defendant's suggestion that any reference to the existence of these claims for the purpose of providing background to Plaintiff's retaliation claim necessitates the introduction of

---

[14] In fact, Plaintiff requests in his Motion *in Limine* that the Court exclude evidence of the merits of Plaintiff's prior action against Defendant from consideration. *See* Pl.'s Mot. at 5-6. In Plaintiff's motion, Plaintiff argues that presentation of evidence regarding the verdict from Plaintiff's prior action would confuse the jury and result in undue prejudice. *Id.* at 6.

the prior jury verdict Defendant mentions. *Id.* Plaintiff further argues that Defendant's presentation of the results of the earlier case would mislead the jury by insinuating that a previous jury entered a verdict that Plaintiff was not retaliated against. *Id.* Instead, Plaintiff argues, the previous jury only reached the question of whether or not a delay or denial of inspection certification constituted an adverse employment action. *Id.* The jury never reached the ultimate question of retaliation. *Id.* Plaintiff therefore requests that if Defendant is permitted to introduce evidence of the prior verdict, then Plaintiff be allowed to introduce evidence of his good faith bases for believing that he was retaliated against. *Id.* at 17. Plaintiff specifically requests that the Court allow Deputy Assistant Director John Lewis to provide testimony regarding the events in question that Lewis testified to in his deposition, and to explain why Lewis' admission in his deposition caused Plaintiff to pursue a retaliation case based on the delay/denial of inspection certification. *Id.* Plaintiff also requests that he be permitted to call at least one FBI witness from *Youssef I* to provide testimony as to why the delay or denial of inspection certification was not an adverse action. *Id.*

Upon consideration of the parties' arguments, the Court finds it appropriate to limit testimony and evidence about Youssef's prior EEO activity and any prior discriminatory acts to a neutral statement that he was engaging in such activity at the time of his non-selection for the ASC position, and that the FBI is not permitted to take retaliatory actions in response to that activity. There is little reason for the parties to go into any discussion of Youssef's prior EEO activity or to have a mini trial of what the alleged retaliatory acts were. Such information would not be relevant to any issue in this case. *See* Fed. R. Evid. 401. The parties do not dispute that Youssef was engaged in prior EEO activity, and Defendant has not conveyed an intention to present any evidence suggesting that Youssef did not engage in EEO activity in good faith.

Plaintiff is permitted to call a witness, whether it be someone in authority at the FBI or otherwise, to testify that Youssef can pursue EEO activities, that he can be absent in order to pursue such activities, and that the FBI cannot retaliate by taking negative actions against him.[15]  However, to allow any further testimony and evidence about Youssef's prior EEO activity and prior discriminatory acts would open the door to a discussion that would be unhelpful to the jury and would be substantially more prejudicial than probative.  *See* Fed. R. Evid. 403.

### b)  IG Investigation and other Alleged Discriminatory or Retaliatory Acts

Defendant also requests that Plaintiff not be permitted to introduce evidence concerning an ongoing Inspector General ("IG") investigation, arising from whistleblower activity, or any alleged prior discriminatory or retaliatory acts by FBI officials other than any such allegations directed at the LCB decisionmakers that are close in time to the alleged retaliation in this case. Def.'s Mot. at 16.[16]

The issue of Youssef's participation in the IG investigation primarily concerns two exhibits proffered by Youssef:  (1) the handwritten notes of LCB member, Zarone, that accompanied Youssef's 2009 PAR, in which Zarone wrote "OIG Report," next to "legal matter," under the heading of "distractors" (Plaintiff's Exhibit 5) and (2) the discussion of Youssef's whistleblower activity in the *Mother Jones* article entitled, "*FBI's Least Wanted*" (Plaintiff's Exhibit 12).  The Court will first address the admissibility of evidence and testimony concerning Zarone's notes

---

[15] In the Joint Pretrial Statement, Plaintiff has identified a number of witnesses who he plans to call to testify to the fact that Youssef had a right to file and pursue his Title VII discrimination case, and that the FBI cannot retaliate by taking negative actions against him.  Plaintiff, however, may introduce such testimony only to the extent that it would be non-duplicative.  *See* Fed. R. Evid. 403.

[16] Defendant states that it is unaware of any allegations that fall within the latter category and notes that Youssef's prior protected activity involved different FBI officials.  Def.'s Mot. at 16.

and the referenced IG report as well as the related investigation.   The Court will then address the admissibility of the *Mother Jones* article.

> ### i. Defendant may offer testimony by Zarone concerning the OIG Report only as it relates to the narrow issue of Zarone's handwritten comment on Youssef's 2009 PAR. Plaintiff may impeach Zarone's testimony, but may not introduce additional testimony and evidence about the underlying IG investigation.

In its Motion *in Limine*, Defendant argues that testimony and evidence about the underlying IG investigation (or about any other alleged non-EEO retaliation) should not be permitted, and that the Court may address any reference to the IG investigation in Zarone's notes by a jury instruction that Youssef's participation in the IG investigation is not, and should not, be considered protected EEO activity for purposes of Youssef's Title VII retaliation claim. Def.'s Mot. at 17.  Defendant argues that participation in an IG investigation is not protected activity within the meaning of Title VII and therefore cannot give rise to a claim for damages under this statute. *Id.* (citing *Youssef I*, 19 F. Supp. 3d at 1999; 42 U.S.C. § 2000e-3(a)).  Rather, Defendant argues, there is a separate administrative process for FBI employees to grieve alleged retaliation for engagement in IG investigations, 4 U.S.C. § 2303, with no right to file a civil action.  *Id.* Defendant argues that Youssef does not proffer that he has exhausted his administrative remedies and cannot establish a basis for the introduction of evidence about the underlying IG investigation. *Id.* at 18.  Therefore, Defendant argues, Youssef has no retaliation claim based on the IG investigation and any testimony or evidence about the investigation should be excluded. *Id.*

Plaintiff responds in his Opposition brief to Defendant's Motion *in Limine* that he "will be able to call any one of hundreds of witness" to testify that Youssef's participation in the IG investigation referenced in the Zarone notes was lawful, mandatory, and could not be used, directly or indirectly, for lowering his performance. Pl.'s Opp'n at 18.  Plaintiff further argues

that Youssef faced criticism for his participation in the IG investigation, and that such criticism constitutes strong evidence of pretext. *Id*. Plaintiff also argues that the IG investigation was interwoven into his EEO concerns, and that he plans to introduce testimony and evidence in support of this argument. *Id*. at 18-19.

In response to these arguments, Defendant contends that Plaintiff failed to include a formal notice of intent to introduce evidence of specific prior discriminatory or retaliatory acts or claims by Defendant in accordance with Rule 404(b). Def.'s Reply at 10. Defendant argues that without such specific notice, or a proffer by Plaintiff of the specific claims or acts he contends are probative of retaliatory animus in this case, the Court is not in a position to determine if a narrower rule would be appropriate. *Id*. Defendant argues that this puts Defendant in an unfair position of having to object to such evidence at trial without having the benefit of a pretrial hearing.

The parties' arguments changed directions, however, at the first pretrial conference, at which Defendant indicated that it plans to introduce evidence at trial about the IG investigation, due to the investigation's reference in Zarone's notes. Prior to that conference, it had been unclear whether Defendant had planned to reference the IG investigation at trial. Accordingly, the Court ordered Defendant to provide additional information about the exact nature of the evidence that Defendant seeks to introduce and its relevance. Order dated July 2, 2015, ECF No. [86], at 5-6.

In Defendant's supplemental brief filed in response to that Order, Defendant states that the OIG Report, and not the longstanding investigation itself, is relevant to Plaintiff's retaliation claim. Def.'s Supp. Pretrial Brief, ECF No. [89], at 8. Defendant argues that the report itself is relevant because Zarone listed the report as a distractor in the handwritten notes he attached to Youssef's 2009 PAR, which was issued at about the same time that Zarone served on the LCB that did not select Plaintiff for the ASC position. *Id*. According to its brief, Defendant does not

35

intend to introduce evidence about the IG investigation because Zarone's notes, which Plaintiff seeks to introduce as a trial exhibit, do not refer to Plaintiff's "participation in an IG investigation," but rather to any distraction that the impending release of the OIG report itself may have caused Plaintiff during the 2009 review period. *Id.* at 8-9. Defendant seeks to introduce the testimony of Zarone that he honestly believed that the uncertainty as to the report's treatment of Plaintiff weighed upon Plaintiff and served to distract him from performance of his duties in 2009. *Id.* at 9. Defendant contends that such evidence does not open the door to all of the evidence about the IG investigation that Plaintiff seeks to introduce. According to Defendant, this proffered trial testimony does not include testimony about the IG investigation or even Plaintiff's participation therein. *Id.* at 11. Rather, Defendant argues, Zarone's notes in Exhibit 5 make clear that the "distractor" was the almost completed "IG Report" itself and the uncertainty as to how the report would treat Plaintiff. *Id.*

In response, Plaintiff states that he plans to present testimony concerning the IG investigation in its case in chief (anticipating the FBI's arguments as set forth in Defendant's Supplemental Memorandum) as well as a part of his rebuttal case. Pl.'s 2nd Pretrial Brief, ECF No. [90], at 11. Plaintiff argues that Zarone's notes in Exhibit 5 as a whole appear to contradict Zarone's proffered testimony. *Id.* For example, Zarone writes that Youssef spent "too much time away from [the office]," and the notes, Plaintiff argues, do not suggest a belief that Youssef was mentally distracted by the pending release of an OIG report. *Id.* To rebut Defendant's interpretation of Zarone's notes, Plaintiff anticipates introducing extensive testimony and evidence regarding, *inter alia*, Youssef's right to fully participate in the OIG reviews, Youssef's filing of a Title VII discrimination action related to the IG investigation, and Youssef's reasons for not pursuing alleged claims related to the IG investigation in this action. *Id.* at 13. Plaintiff

36

also points out that he plans to introduce such testimony and evidence out of reluctance, as he had initially wanted to enter into a stipulation with Defendant concerning the presentation of evidence related to the OIG investigation. *Id*. at 14. However, according to Plaintiff, Defendant was not willing to engage in any constructive discussions concerning such a stipulation. *Id*. at 14-15.

The Court discussed these arguments in great detail with the parties at the second pretrial conference. Upon review of their arguments, the Court found that Zarone can testify that Youssef was distracted as to how the OIG Report would impact him and his department, and Plaintiff can impeach Zarone with Zarone's other statements indicating that it was Youssef's absences that distracted Youssef and impacted his performance. Plaintiff, however, need not introduce evidence that Youssef's participation in the OIG investigation was mandatory, unless it becomes an issue, in which case Plaintiff may clarify the mandatory nature of the investigation. The Court stresses that the proffered testimony regarding the OIG Report is relevant only so far as it ties back to the handwritten comment on the 2009 PAR, which itself is relevant in the context of the retaliatory animus, not for other reasons. Therefore, Zarone's testimony regarding the OIG Report should be limited to show that the OIG Report was simply a review of activities within Youssef's unit, and that the parties knew that the report was forthcoming. Similarly, Plaintiff's rebuttal should be limited to impeaching Zarone's statements as to his reasons for writing the handwritten comments on the 2009 PAR. The parties' discussion of these issues should not become a mini trial concerning the OIG Report or the investigation, as they are not directly relevant to the issue of retaliatory consideration in this case, and will confuse the jury. *See* Fed. R. Evid. 401, 403.

Accordingly, Plaintiff may not introduce additional testimony and evidence about the underlying IG investigation. The Court shall exclude any testimony from Judge Valerie Caproni,

the Inspector General, and the Deputy Attorney General, because all such testimony is not directly relevant to the issue of retaliatory consideration in this case, and will confuse the jury. *See* Fed. R. Evid. 401, 403. The Court shall also exclude Plaintiff's Exhibits 26-31, all of which concern the IG investigation, for the same reason.

> ## ii. Plaintiff may introduce a redacted version of the "*Mother Jones*" article, with all parts redacted except for the title and the two references to Youssef's discrimination lawsuit.

Defendant also requests that Plaintiff not be permitted to introduce Plaintiff's Exhibit 12, a nine-page article from the publication *Mother Jones*, entitled, "FBI's Least Wanted," as evidence of retaliatory animus. Def.'s Mot. at 18. The article discusses Youssef's whistleblowing activities and makes two references to Youssef's discrimination lawsuit. Defendant argues that the probative value of the exhibit to Youssef's EEO claim is marginal and is outweighed by the unfair prejudice of its "self-serving" description of his non-EEO whistleblower activity under a FRE 403 balancing. *Id.* In response, Plaintiff notes that Defendant raises no objections to the use of the *Mother Jones* article to demonstrate knowledge, and to impeach Zarone's credibility. Pl.'s Opp'n at 20. Plaintiff further argues, in both its Opposition to Defendant's Motion and in Plaintiff's Motion *in Limine*, that the article is fully admissible because Plaintiff seeks to introduce the evidence for a non-hearsay purpose. Pl.'s Opp'n at 20; Pl.'s Mot. at 6-13. Plaintiff further argues that the article is highly probative and does not present a substantial risk of undue prejudice to Defendant. *Id.*

Upon consideration of the parties' arguments, the Court issued a finding at the first pretrial conference that the article is probative evidence that Zarone knew that Youssef was engaged in an EEO matter and that it impeaches Zarone's deposition testimony that he knew Youssef was engaged in a legal matter, but was not aware that the legal matter was an EEO lawsuit. *See* Order

dated July 2, 2015, ECF No. [86], at 6.   However, the probative value of the article is counterbalanced by the fact that it is a lengthy article focused primarily on Youssef's career and his whistleblowing activities—irrelevant and unfairly prejudicial information which the Court has sought to limit being introduced in this case—and only briefly references Youssef's discrimination lawsuit.  *Id.*  Accordingly, the Court ordered the parties to propose in their supplemental pretrial briefs a means for introducing the article at trial that would balance the probative value with the unfair prejudicial value of the article under FRE 403.  *Id.*  The Court proposed that one resolution for balancing the probative and unfair prejudicial value of the article would be to introduce the full article at trial, but redact everything from the article except the two short references to Youssef's discrimination lawsuit and instruct the jury that the redacted portions of the article are not relevant to the claims at issue.  *Id.* at 6-7.

In response to the Court's July 2, 2015 Order, Plaintiff filed its Supplemental Pretrial Brief, in which Plaintiff argued that introduction of the article would not be unfairly prejudicial to Defendant because Defendant's officers were "entirely responsible for making the article relevant evidence in the first instance."  Pl.'s Supp. Pretrial Brief, ECF No. [88], at 11.  Plaintiff argues that the article was circulated around the FBI electronically, and brought to the attention of Zarone, not in a redacted format that only emphasized the portions discussing Youssef's discrimination suit, but its full form.  *Id.* at 11-12.  Specifically, as Plaintiff noted in additional briefing, the article was published on an online web page called the "Sentinel," which was made available to every FBI employee via the FBI's internal network.  Pl.'s 2nd Supp. Pretrial Brief, ECF No. [90], at 1-2.  Plaintiff goes so far as to argue that redacting the article would be the "functional equivalent of a court in a sentencing hearing for a murder excluding photographic evidence of the body because to do otherwise might unfairly prejudice the murderer."  *Id.* at 12.  In the alternative, if the Court

allows a redaction version of the article into evidence, Plaintiff requests that the jury be presented with the portions of the article that discuss Youssef's discrimination matter. *Id.* at 12-13. By providing a redacted article in this fashion, Plaintiff argues, the Court would strike a middle ground, permitting the jury to see the article without the text that Defendant finds prejudicial. *Id.* at 13. Plaintiff also suggests the following limiting instruction, "The parts of the article that are deleted concern issues Youssef had with the FBI, but do not mention his discrimination lawsuit." *Id.*

In Defendant's Supplemental Pretrial Brief, Defendant argues against the introduction of the article in any form because Zarone has testified that he "did not learn from skimming the article that Youssef had filed any type of discrimination complaint against the FBI." Def.'s Supp. Pretrial Brief, ECF No [89], at 11 (quoting Zarone Decl. at 5, ¶ 21). Defendant further argues that Zarone's vague recollection of the article does not justify introduction of any portions of the article because of its highly prejudicial value. *Id.* In the alternative, Defendant agrees with the Court's proposal to balance the probative and unfair prejudicial value of the article. *Id.* To avoid confusion, Defendant specifically requests that the title of the article be redacted, and the jury be instructed that the article was about Youssef's career at the FBI. *Id.* at 11-12. Plaintiff opposes this request, asking instead that the Court admit the title of the article, as well as its first paragraph. Pl.'s 2nd Supp. Pretrial Brief, ECF No. [90], at 17.

Upon consideration of the parties' arguments, the Court issued a finding at the second pretrial conference that the entire article shall be introduced, but everything shall be redacted except for the title and the two references to Youssef's discrimination lawsuit. The Court shall instruct the jury that the redacted portions of the article are not relevant to the claims at issue. Zarone and Jeanine Santa, the FBI official who showed the *Mother Jones* article to Zarone, may

testify as to the circumstances in which Zarone was shown the article. However, in order to argue that the article was circulated around the FBI and seen by other FBI employees, Plaintiff must call (1) a witness who can testify to certain key facts regarding the article's publication, such as whether the article was in fact available on the Sentinel and the time frame that it was on the Sentinel, and (2) a witness who can testify as to the key facts regarding the Sentinel's readership, including whether all or most FBI employees look at the Sentinel, whether Chase and Castro looked, or were likely to look, at the Sentinel, who controls the Sentinel, and who puts articles on the Sentinel. To date, Plaintiff has not identified such witness(es). Accordingly, the Court shall set a date by which Plaintiff must disclose such witness(es). If Plaintiff does not disclose such witnesses by the date set by the Court, Plaintiff shall be precluded by the Court from making this argument.

### iii. Plaintiff may introduce testimony about Youssef's EEO activity by non-decisionmakers only to state that Plaintiff was involved in EEO activity and is entitled to protections when he engages in such activity.

Defendant also requests that Plaintiff not be permitted to question non-LCB members or non-decisionmakers about Youssef's EEO activity. Def.'s Mot. at 18. Defendant argues that the purpose of such an inquiry would be to ask the jury to improperly infer knowledge by the decisionmakers about Youssef's EEO activity based on the knowledge of non-decisionmakers. *Id*. Defendant further argues that Plaintiff has failed to proffer evidence from which a jury could reasonably infer that any of these potential witnesses had any influence, or even had any input, on the selection decision. *Id*. at 18-19. Plaintiff's opposition brief did not address Defendant's arguments. When the Court raised the issue for discussion at the first pretrial conference, Plaintiff's counsel indicated that in *Youssef I*, the FBI had stipulated that Youssef's involvement in the EEO process was protected, and that he had a right to take leave to attend depositions, etc., but that Defendant has made no such stipulation in this case. Upon consideration of the parties'

arguments, the Court issued a finding at that first pretrial conference that testimony concerning Youssef's EEO activities by non-decisionmakers, i.e., individuals who have not been involved in the ASC non-selection or in any way had knowledge of Youssef's protected activity, is irrelevant, and is therefore excluded. For instance, the Court shall not admit testimony by a non-decisionmaker, Tracy North, concerning Youssef's EEO activities, because her testimony would not be relevant. Plaintiff, can however, call a witness to testify that Plaintiff was involved in EEO activities, and he is entitled to protections when he is absent due to those activities. For instance, Plaintiff may call a witness to testify that Plaintiff's PAR may not be downgraded for his participation in EEO activities.

### 3.  Testimony and Evidence Relating to the Downgrade in Plaintiff's 2009 PAR

Defendant also requests that the Court limit and segregate testimony and evidence relating to the downgrade in Plaintiff's 2009 Performance Appraisal Report ("PAR").

Defendant opposes Plaintiff's introduction of evidence of the downgrade as evidence of retaliatory animus. Def.'s Mot. at 19. Defendant argues that the Court should limit Plaintiff's presentation of this evidence because the 2009 PAR is not the alleged materially adverse action in this case, and because the document was never before the LCB. *Id.* Defendant further argues that Youssef's FD-954 did not describe either his 2008 or 2009 work experience and therefore introduction of evidence about his performance during those years will be confusing to the jury without an appropriate jury instruction, which Defendant proposed in the joint pretrial statement. *Id.* Defendant further requests that presentation of evidence about the 2009 PAR be segregated from testimony about the selection process, and that the Court preclude testimony from witnesses solely to discuss the PAR and the appeal process. *Id.* Under this framework, Plaintiff would testify that he received the 2009 PAR, that he filed a grievance, and that two elements were raised slightly,

and others were sustained.  *Id.* at 19-20.  Defendant argues that its request would avoid an unnecessary and improper mini trial on the PAR process that will confuse the jury as to the relevance of this information.  *Id.* at 20.

In response, Plaintiff argues that this Court has already found that the downgrade of Plaintiff's 2009 PAR constituted evidence from which a reasonable trier of fact could find that the LCB members were driven by retaliatory animus.  Pl.'s Opp'n at 21-22 (citing the Court's Memorandum Opinion, denying Defendant's Motion for Partial Reconsideration, ECF No. [62], at 4-5).  Plaintiff argues that the PAR downgrade, coupled with Zarone's accompanying comments used to justify the scores he gave to Plaintiff, establish evidence that Defendant had knowledge of Plaintiff's protected activity, and this downgrade took place shortly before the meeting of Plaintiff's LCB.  *Id.* at 22.  Plaintiff argues that because Zarone was a member of that very same LCB, evidence that Zarone acted with retaliatory animus towards Plaintiff is evidence from which a jury could infer that the LCB acted with such animus when making its decision to deny Youssef the promotion to ASC.  *Id.*  Plaintiff further argues that introduction of the PAR downgrade would not confuse the jury.  *Id.*  This is so, Plaintiff argues, because the downgrade was made by Zarone, a member of the LCB, and was approved by Fernandez, the person responsible for designing the LCB process that resulted in the retaliatory act of which Plaintiff complains.  *Id.*  Moreover, Plaintiff argues, exclusion of Zarone's note on the 2009 PAR regarding Plaintiff's "legal matter" and the "OIG Report" would be extremely prejudicial to Plaintiff, and would be the "equivalent of denying Plaintiff his day in court."  *Id.*

Upon consideration of the parties' arguments, the Court issued a finding at the second pretrial conference that the 2009 PAR and accompanying notes are relevant to this case, specifically, to establishing retaliatory animus, and thus shall not be excluded in its entirety.  *See*

Fed. R. Evid. 401, 403.  The Court is cognizant that Plaintiff has not brought a claim with respect to the 2009 PAR reduction.  Therefore, to avoid any jury confusion, Plaintiff's presentation of testimony and evidence on this issue must be limited to the narrow issue of retaliatory animus, and a jury instruction limiting the use of the evidence would be appropriate.

Furthermore, for the reasons discussed above, evidence concerning the appellate review of the downgrade in Youssef's 2009 PAR would not be relevant to the issue of retaliatory animus.  In adjusting the ratings in Youssef's 2009 PAR, Assistant Director Heimbach "only considered [Youssef's] actual work performance when making [his] decision." *Youssef I*, 19 F. Supp. 3d at 174.  Furthermore, Heimbach adjusted the ratings after Youssef's non-selection, and Plaintiff has not established a factual predicate that any voting member other than Zarone knew about the 2009 PAR downgrade at the time of Youssef's non-selection.  Therefore, Defendant shall not be permitted to introduce testimony by Heimbach at trial concerning Youssef's request for reconsideration of his 2009 PAR, because it would not be related to the issue of retaliatory animus.  For the same reasons, Plaintiff should not be permitted to call Mary Louise Felder, the former Section Chief for the Administrative Section, concerning the reasons for reversing ratings on Plaintiff's 2009 PAR.  Finally, any testimony by Zarone concerning the 2009 PAR downgrade must be limited to the issue of retaliatory animus, and may not concern Youssef's 2008 PAR, or the reversal of Youssef's 2009 PAR by Heimbach, because such testimony would not be relevant to the issue of retaliatory animus.

Additionally, for the reasons stated above, Plaintiff may not introduce Youssef's 2008 PAR (Plaintiff's Exhibit 3); the November 4, 2009 email from Youssef to Heimbach regarding the PAR grievance (Plaintiff's Exhibit 7), and the November 20, 2009 email from Heimbach to Youssef regarding the adjustment of PAR's 2009 PAR, because such evidence is irrelevant to the LCB

selection process and would not be relevant to the issue of retaliatory animus.

**B. PLAINTIFF'S MOTION *IN LIMINE***

Plaintiff's Motion *in Limine* requests that the Court grant the following relief: (1) evidence or argument that the denial of Youssef's selection for the ASC position was not an adverse action; (2) evidence or argument regarding the merit, or lack of merit, of Youssef's underlying Title VII proceedings should be excluded from the jury; and (3) the "Mother Jones" article entitled "The FBI's least wanted" may be introduced into evidence with a limiting instruction that the contents of the article are not introduced from the truth of the matter asserted therein. Pl.'s Mot. at 1. The Court shall address each request in turn.[17]

### 1. Defendant may introduce evidence at trial in support of its argument that the denial of Youssef's selection for the ASC position was not an adverse action.

Plaintiff requests that the Court exclude any evidence or argument by Defendant that the denial of Youssef's selection for the ASC position was not an adverse action. Pl.'s Mot. at 1. Plaintiff seeks a jury instruction, stating that "Defendant's decision to deny Plaintiff a promotion to the position of Assistant Section Chief constitutes, by law, an adverse employment action. No evidence, offered by either party, should be considered as proof of the contrary." *Id*. at 2.

One of the elements that Plaintiff must prove in order to prevail at trial is that Defendant took an "adverse employment action" against him. The D.C. Circuit has defined an "adverse employment action" to mean "a significant change in employment status, such as hiring, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant

---

[17] The Court notes that Plaintiff's second and third requests concern issues already discussed by the Court in its analysis of common issues presented by Defendant's Motion *in Limine*. Because the Court resolves these issues for the reasons previously stated, the Court's discussion of these issues will be relatively brief, so as to avoid unnecessary repetition.

change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).

Plaintiff argues that as a matter of law, this Court should find that Defendant's denial of Plaintiff's application for promotion constitutes an adverse employment action because Plaintiff applied for a promotion when he sought the ASC position, and Defendant's failure to promote Plaintiff constitutes an adverse employment action. Pl.'s Mot. at 3. To hold otherwise, argues Plaintiff, would only serve to cause confusion among the jurors, delay the trial by requiring Plaintiff to introduce unnecessary evidence, and waste judicial resources under FRE 403. *Id.* at 4. In support of this argument, Plaintiff notes that Plaintiff's direct supervisor was Arthur Zarone, who held the ASC position in Youssef's section, and that by applying for an ASC position, Youssef was applying for a one-level promotion, with a significantly higher profile and responsibility, including supervisory authority over 140 persons. *Id.* at 3.

In opposition, Defendant argues that Plaintiff's motion is procedurally improper because it seeks to resolve a disputed element of Plaintiff's claim, and is therefore an improper motion for partial summary judgment that should be denied. Def.'s Opp'n at 2. Defendant disputes that the ASC position would have been a promotion for Youssef from his Unit Chief position. *Id.* at 5. Defendant argues that "what constitutes a promotion . . . may only be decided by looking at an employee's skills and goals in the context of an employer's needs and openings, all of which is a question properly reserved for the jury, not to be ruled on as a matter of law by the court." *Id.* (quoting *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1212 (2d Cir. 1993)). Defendant argues that the GS-15 ASC position would merely have been a "reassignment," as opposed to a promotion over

his GS-15 Unit Chief position.  *Id.* (citing Parlave Decl., ECF No. [81-1]).[18]  Therefore Plaintiff would not have received any increase in salary, and the reassignment to the ASC position would not have been the next step required for Plaintiff's advancement within the FBI.  *Id.*  Defendant argues that the next step for Plaintiff in the recognized promotional track for FBI special agents was not the ASC position sought by Plaintiff, but an Assistant Special Agent in Charge ("ASAC") field position.  *Id.* (citing Curran's testimony at trial in *Youssef I*).  Therefore, Defendant argues, there is ample evidence from which the jury could conclude that the ASC position would not have been a "promotion" for Plaintiff, and that his non-selection was not an adverse employment action. *Id.* at 5.

Upon consideration of the parties' arguments, the Court finds that Defendant may introduce evidence at trial in support of Defendant's argument that the denial of Youssef's selection for the ASC position was not an adverse action.  Whether the denial of Youssef's selection for the ASC position constitutes an adverse action is a disputed element of Plaintiff's claim, and Defendant is entitled to introduce evidence in support of its position.  By arguing that this Court, as a matter of law, should find that Defendant's denial of Plaintiff's application for promotion constitutes an adverse employment action, Plaintiff has in effect requested that the Court issue a partial summary judgment decision.  *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 562 (6th Cir. 2013).  Such a request, however, is improper at this stage, as motions *in limine* may not be used to resolve factual

---

[18] In support of this argument, Defendant cites a declaration of Valerie Parlave attached to Defendant's Opposition brief. Plaintiff disputes the appropriateness of the Parlave declaration, as well as the admissibility of Parlave's testimony at trial.  *See* Pl.'s Reply at 2-3.  The Court addresses each of these issues later in this Opinion in Part III.C.4.  For the reasons stated in Part III.C.4, the Court shall consider the Parlave declaration attached to Defendant's Opposition brief for the purposes of deciding whether Defendant may introduce evidence at trial to argue that the denial of Youssef's selection for the ASC position was not an adverse action.

disputes, which remains the "function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).

Furthermore, Plaintiff does not put forward any arguments disputing Defendant's contention that the ASC position sought by Plaintiff and the GS-15 Unit Chief position then held by Plaintiff were the same level, with no difference in salary. *See* Pl.'s Reply at 5-6. Instead, Plaintiff appears to rely on a statement made in his initial motion—that Youssef "applied for a one-level promotion"—but Plaintiff provides no evidence in support of that position. Accordingly, there is a genuine dispute of material fact regarding the adverse employment action, which must be resolved by the jury. Defendant may therefore introduce evidence at trial in support of its argument that the denial of Youssef's selection for the ASC position was not an adverse action. The Court addresses the admissibility of specific evidence proffered by Defendant, namely the witness testimony of Valerie Parlave, later in this Opinion, in Part III.C.4.

**2. As stated above, the Court shall limit testimony and evidence about Youssef's prior EEO activities to a neutral statement that he was engaging in such activities at the time of his non-selection for the ASC position, and that the FBI is not permitted to take retaliatory action in response to those activities.**

Plaintiff objects to any reference by Defendant at trial concerning the verdict against Plaintiff in his prior Title VII action against Defendant. Pl.'s Mot. at 5. Plaintiff requests that the Court not permit the parties to introduce any evidence as to the merits of any of Youssef's other Title VII proceedings, notwithstanding evidence introduced by Plaintiff concerning background information of the origins of Plaintiff's original discrimination claim to establish the context from which the present action arose. *Id.* at 5-6. Plaintiff argues that any evidence beyond background information would not be relevant to the current proceeding and would confuse the jury and result

48

in undue prejudice.  *Id.* at 6.  In response, Defendant argues that Plaintiff's proffered evidence may make the *Youssef I* verdict relevant in this case, citing Plaintiff's request to introduce, as background, limited evidence as to the merits of Plaintiff's earlier cases. Def.'s Opp'n at 6. Defendant's remaining arguments mirror those made by Defendant in its briefing of this issue when presented in Defendant's motion.  *Id.* at 6-7.

The Court addressed the parties' arguments concerning the admissibility of evidence relating to Youssef's prior action in its discussion of Defendant's Motion *in Limine*.  *See* Part A.2.a, *supra*.  Accordingly, for the reasons stated above, the Court finds it appropriate to limit testimony and evidence about Youssef's prior EEO activity and any prior discriminatory acts to a neutral statement that he was engaging in such activity at the time of his non-selection for the ASC position, and that the FBI is not permitted to take retaliatory actions in response to that activity. As noted, there is little reason for the parties to go into any discussion of Youssef's prior EEO activity or to have a mini trial of what the alleged retaliatory acts were, as such information would not be relevant to any issue in this case.  *See* Fed. R. Evid. 401.  The parties do not dispute that Youssef was engaged in prior EEO activity, and Defendant does not intend to present any evidence suggesting that Youssef did not engage in EEO activity in good faith.  Plaintiff is permitted to call a witness, whether it be someone in authority at the FBI or otherwise, to testify that Youssef can pursue EEO activities, that he can be absent in order to pursue such activities, and that the FBI cannot retaliate by taking negative actions against him.  However, to allow any further testimony and evidence, by Plaintiff or Defendant, about Youssef's prior EEO activity and prior discriminatory acts would open the door to a discussion that would be unhelpful to the jury and would be more prejudicial than probative.  *See* Fed. R. Evid. 403.  Therefore, the parties are precluded from introducing such evidence at trial.

**3.  As stated above, Plaintiff may introduce a redacted version of the "*Mother Jones*" article, with all parts redacted except for the title and the two references to Youssef's discrimination lawsuit.**

In Plaintiff's Motion *in Limine*, Plaintiff seeks to introduce a redacted version of the "*Mother Jones*" article, pursuant to a proposed limiting instruction, stating that the jury should consider the evidence not for truth of the matters asserted therein, but rather as (1) evidence of the knowledge and awareness of certain witnesses that Plaintiff had engaged in protected activity, (2) material evidence to judge the credibility of witness testimony, and (3) possibly evidence of pretext. Pl.'s Mot. at 7.

The Court addressed the parties' arguments concerning the admissibility of the "*Mother Jones*" article, as well as the appropriate jury instruction, in its discussion of Defendant's Motion *in Limine*. *See* Part A.2.b.ii, *supra*. Accordingly, for the reasons discussed above, the Court issued a finding at the second pretrial conference that the entire article shall be introduced, but everything shall be redacted except for the title and the two references to Youssef's discrimination lawsuit. As noted, the Court shall instruct the jury that the redacted portions of the article are not relevant to the claims at issue. Zarone and Jeanine Santa, the FBI official who showed the *Mother Jones* article to Zarone, may testify, to the extent that their testimony is non-duplicative, as to the circumstances in which Zarone was shown the article. However, in order to argue that the article was circulated around the FBI and seen by other FBI employees, Plaintiff must call (1) a witness who can testify to certain key facts regarding the article's publication, such as whether the article was in fact available on the Sentinel and the time frame that it was on the Sentinel, and (2) a witness who can testify as to the key facts regarding the Sentinel's readership, including whether all or most FBI employees look at the Sentinel, whether Chase and Castro looked, or were likely to look, at the Sentinel, who controls the Sentinel, and who puts articles on the Sentinel. To date,

50

Plaintiff has not identified such a witness. Accordingly, the Court shall set a date by which Plaintiff must disclose such witness(es). If Plaintiff does not disclose such witness(es) by the date set by the Court, Plaintiff shall be precluded by the Court from making this argument. *See* Part A.2.b.ii, *supra*.

## C. ISSUES RAISED OVER THE COURSE OF BRIEFING

Over the course of briefing the parties' Motions *in Limine*, the parties raised several new issues not raised in their initial motions. Specifically, the parties raised new issues regarding (1) the introduction of evidence that Fernandez, the non-voting chairperson of the LCB, "stacked" the LCB with voting members whom Fernandez knew were biased against Youssef; (2) the introduction of testimony by Valerie Parlave concerning various issues related to promotions of FBI personnel, including the policies and procedures regarding such promotions; and (3) the redaction of certain classified information included in Youssef's FD-954. The Court shall address each issue in turn.

### 1. Plaintiff may not introduce evidence that Fernandez, the non-voting chairperson of the LCB, deliberately "stacked" the LCB with voting members whom Fernandez knew were biased against Youssef.

At the first pretrial conference on June 30, 2025, Plaintiff indicated that he seeks to introduce at trial evidence that Armando Fernandez, the non-voting chair of the LCB, had a retaliatory bias against Youssef and "stacked" the LCB against Youssef by selecting voting LCB members whom Fernandez knew were biased against Youssef. *See* Order dated July 2, 2015, ECF No. [86], at 1-2. Specifically, Plaintiff seeks to present evidence that (1) Fernandez knew that the LCB members whom he selected—Chase, Castro, and Zarone—were biased against Youssef, and

(2) Fernandez knew the identities of the applicants when he selected LCB members. *Id.*[19]

As to the first point, Plaintiff conceded in its supplemental briefing after the first pretrial conference that he does not have any direct evidence that two of the three LCB members, Castro and Chase,[20] were prejudiced or biased against Youssef, and that Fernandez knew of any such bias. *See* Pl.'s Supp. Pretrial Brief, ECF No. [88], at 1. Accordingly, the Court issued a finding at the second pretrial conference on August 14, 2015 that Plaintiff cannot argue in his opening statement that Fernandez deliberately "stacked" the LCB against Youssef.

As to the second point, the parties disputed at the first pretrial conference whether Fernandez knew the identity of all of the applicants prior to selecting the LCB members.[21] Order

---

[19] Many of the arguments and factual proffers regarding the retaliatory bias issue were presented for the first time to the Court at the first pretrial conference on June 30, 2015. *See* Order dated July 2, 2015, ECF No. [86], at 1-2. During that conference, Plaintiff argued that Castro's bias can be inferred from the fact that he was supervised by Fernandez whom, Plaintiff contends, had a retaliatory bias against Youssef. *Id.* at 2. Plaintiff also argued that Castro's bias can be inferred from the fact that Youssef and Castro were friends and allegedly discussed Youssef's EEO activities, but Castro denied knowledge of Youssef's EEO activities at deposition. *Id.* Plaintiff contends that Chase's bias can be inferred from the fact that he was supervised by Fernandez and by the fact that Chase was present at a meeting during which a derogatory comment was allegedly made not by Chase about whistleblowers which Youssef interpreted as being directed at him. *Id.* Youssef later filed a complaint about this derogatory comment. *Id.* The parties' Motions *in Limine* contained no details as to the complaint process and outcome. After the June 30, 2015 pretrial conference, the Court issued an Order finding that the factual proffers presented to the Court during the conference were insufficient to establish that Castro and Chase had animus towards Youssef, and that Fernandez knew of this animus and selected these individuals to be LCB members out of his own retaliatory animus. *Id.* In its order, the Court required Plaintiff to explain in his supplemental pretrial brief whether the information outlined by the Court was the extent of Plaintiff's evidentiary proffer and, if not, to provide additional detail about Plaintiff's evidentiary proffer. *Id.* at 2-3.

[20] As the Court observed at the first pretrial conference, Plaintiff put forward sufficient evidence to raise the possibility that the third voting member of the LCB, Zarone, was biased against Youssef, due to the evidence relating to Zarone's handwritten notes on Youssef's 2009 PAR. *See* Part III.A.2.b.i.

[21] After the first pretrial conference, the Court ordered Defendant to explain the process by which the applications for a new job posting are received, verified, and approved, and by which an LCB

dated July 2, 2015, ECF No. [86], at 1-2.  In its supplemental briefing, Defendant contends that

the FBI policy at the time was such that the LCB chairperson would not learn of the identity of the

applicants until after he elected the LCB voting members.  *See* Def.'s Supp. Pretrial Brief, ECF

No. [89], at 1-2.  Plaintiff, however, contends that in this case, Fernandez knew of all the applicants

because all of the applicants, except for Youssef, told Fernandez that they were applying for the

ASC position prior to Fernandez selecting the LCB members.  *See* Pl.'s 2nd Supp. Pretrial Brief,

ECF No. [90], at 4-6.  Upon review of the parties' arguments, the Court issued a finding at the

second pretrial conference on August 14, 2015, that the record lacks any evidence to demonstrate

that Fernandez knew that Youssef was an applicant for the ASC position because he was not among

the applicants who told Fernandez in advance that they were applying.  Accordingly, the Court

continues to find that Plaintiff cannot argue in his opening statement that Fernandez knew the

identities of the applicants when he selected the LCB members.

> **2.  Plaintiff may not introduce evidence that LCB members should have relied on Plaintiff's "totality of experiences" to prefer him over other candidates who may have had higher competency scores.**

At the first pretrial conference, Plaintiff raised a new issue relating to Fernandez's allegedly

biased actions regarding the LCB process.  *See* Order dated July 2, 2015, ECF No. [86], at 3.

Plaintiff argued that Fernandez did not properly instruct the LCB members as to the consideration

---

chair is selected, an LCB chair selects the LCB voting members, and the LCB chair is made
aware of the applicants.  Order dated July 2, 2015, ECF No. [86], at 3.  Defendant's explanation
was to focus on the specific timing of all of these actions and the divisions of the FBI and/or
individuals involved in each action.  *Id.*  The Court further ordered Defendant to indicate
whether this process was followed by Fernandez for the LCB at issue in this case and proffer
evidence indicating at what point Fernandez would have learned that Youssef was a candidate
and whether Fernandez selected the members of the LCB prior to or after learning that
information.  *Id.*  The Court also ordered Plaintiff, in his response, to indicate whether he has
evidence that would undermine the evidence proffered by Defendant as to these issues.  *Id.*

that they should give to the "totality of [each candidate's] experience." *Id.* at 4.   Specifically, Plaintiff alleged that Fernandez did not properly instruct the LCB that they could use this technical "totality of experience" approach to "rank lower-rated candidates ahead of higher-rated candidates." *Id.* (citing Pl.'s Trial Ex. 17, at 7-9).   After the first pretrial conference, the Court ordered Plaintiff to indicate in supplemental briefing what evidence he is proffering to show that Fernandez did not properly instruct the LCB members that they could use the "totality of [each candidate's] experience" to rank the lower-rated candidates over higher-rated candidates. *Id.*   The Court specifically ordered Plaintiff to also indicate whether the LCB members were provided any information about how they were to treat the "totality of experience" consideration and whether the "totality of experience" consideration was taken into account by the LCB at issue. *Id.*   The Court also ordered Defendant to proffer any evidence or arguments that would undermine the evidence proffered by Plaintiff. *Id.*

In response to the Court's order, Defendant indicated for the first time, that under the LCB procedures in place at the time of Youssef's non-selection, there were only two situations in which the "totality of experience" factor could be considered. Def.'s 2nd Supp. Pretrial Briefing, ECF No. [91], at 4.   The parties agree that neither of these two situations would have applied in Plaintiff's case.   According to Defendant's supplemental briefing, the third situation—which would have allowed the LCB to consider an applicant's "totality of experience" to "rank lower-rated candidates ahead of higher-rated candidates"—did not go into effect until after 2009. *Id.* at 4 n.4. The third application of "totality of experience" is the application that Plaintiff argues should have been applied by the LCB in evaluating Youssef's application against Powers' application. At the second pretrial conference, Plaintiff questioned the accuracy of Defendant's representations that the third "totality of experience" application was not part of the LCB policy in 2009 and argued

that Plaintiff was unfairly prejudiced by Defendant's new argument, as it was a departure from Defendant's previous representations about the LCB policies in 2009. *See* Order dated August 14, 2015, ECF No. [92], at 2. For this reason, the Court ordered that Defendant produce all documents demonstrating which "totality of experience" applications were part of the LCB policies in 2009 and when the LCB policies changed to include the third application of "totality of experience." *Id.*

On October 21, 2015, Defendant filed its supplemental brief, which attached several documents concerning the dates when the "totality of experience" policy went into effect. *See* Def.'s Sup. Mem., ECF No. [101]. In its brief, Defendant reiterated its arguments in earlier supplemental briefs, that the third application of the "totality of experience" approach did not go into effect until February 2010, and therefore was not in use in October 2009, the time of the LCB at issue in this case. *Id.* at 3-4. Defendant's brief attached an email announcing the February 17, 2010 launch of the "next phase of ASAPP, the Automated Special Agent Promotion Program," which involved certain changes to the LCB process. *Id.* at 4, Ex. 5 at 1. The email attaches Chapter 7 of the ASAPP Training Guide, which reflects the new totality of experience application. *Id.* Defendant argues that the attachment of Chapter 7 to the February 17, 2010 email is evidence that the new policy went into effect in February 2010, and thus, was not in effect at the time of Youssef's non-selection in October 2009. *See id.* [22]

---

[22] Defendant also notes that the launch date of these LCB changes was confirmed by Parlave in her July 16, 2015 declaration attached to an earlier supplemental brief. *See* Def.'s Sup. Mem., ECF No. [101] at 4 (citing Parlave Decl., ECF No. [89-1], ("The ASAPP Training Guide, Chapter 7, Conducting a Local Career Board, was created and provided to FBI Field Offices and Headquarters Division in approximately February 2010.")). Plaintiff disputes the appropriateness of Defendant's reliance on the Parlave declaration, and argues that Rule 37(c)(1) requires exclusion of the Parlave declaration and any argument that Chapter 7 did not apply in October 2009, because the disclosures are untimely. *See* Pl.'s Supp. Mem., ECF No. [97], at 5. The Court addresses Plaintiff's arguments on these issues later in this Opinion, in Part III.C.4.

In response, Plaintiff contends that Defendant, by changing its position as to the date when this policy went into effect, is in effect introducing new evidence and is essentially attempting to unilaterally reopen discovery.  *See* Pl.'s Supp. Mem., ECF No. [97], at 2-4.  Plaintiff also argues that he would be substantially prejudiced by Defendant's change of position, as Plaintiff has shaped a trial strategy in reliance on Defendant's representation concerning the effective date of the policy concerning the third application of "totality of experience" policy as described in Chapter 7.  *Id.* at 8.  Plaintiff maintains that he conducted extensive discovery, including the deposition of Douglas Price, during which Plaintiff questioned Price concerning the policies and procedures governing LCBs and hiring within the FBI.  *Id.* at 3.  Plaintiff contends that he would be required to depose all witnesses based on this new information, incur discovery expenses a second time, and bring the posture of this matter back to where it stood when initial disclosures were made.  *Id.*

Upon consideration of the parties' arguments, the Court finds that Plaintiff may not introduce evidence that LCB members should have relied on Plaintiff's "totality of experiences" to prefer him over other candidates who may have had higher competency scores.  It would appear from the documents produced by Defendant that the policy allowing LCB members to consider an applicant's "totality of experiences" to rank lower-rated candidates ahead of higher-rated candidates went into effect in February 2010 and was not in place at the time of Youssef's non-selection in October 2009.  *See* Def.'s Sup. Mem., ECF No. [101] at Exhibits 1-5.  Plaintiff has not pointed to any evidence disputing this fact, and instead argues that the Court should simply disregard the new facts that have come to light.  *See* Pl.'s Supp. Mem., ECF No. [97], at 2-4.  The Court disagrees.  The Court cannot allow Plaintiff to introduce evidence at trial that the "totality of experience" policy was in effect at the time of Youssef's non-selection, when, in fact, it was

not.

Furthermore, it is not clear to the Court the extent to which Plaintiff conducted extensive discovery on this issue. Plaintiff cites the sole deposition of Douglas Price, wherein Plaintiff asks Price whether he was "aware of any changes to the rules that were in effect for this career board selection process for GS-15s, were there any changes that occurred between October 2009 and August 26, 2011." *See* Pl.'s Supp. Mem., ECF No. [97], Exhibit 2 ("Price Deposition"), at 10. Price responds, rather equivocally, that "in terms of the process, the only changes would have been the computerization as more of the process was done online, but in terms of the policies and procedures, not much has changed." *Id.* Neither Plaintiff's question, nor Price's response, address the effective date of the "totality of experience" policy at issue here. Plaintiff also has given no indication he developed this issue through additional questioning at the deposition of Price, or at any other deposition.

The Court further notes that "totality of experience" issue was raised by Plaintiff at the first pretrial conference, as part of Plaintiff's argument that the Fernandez did not properly instruct the LCB members as to the consideration that they should give to the totality of [each candidate's] experience. The "totality of experience" issue was not raised in either party's Motion *in Limine*, the Joint Pretrial Statement, or Plaintiff's Witness Report, and it received minimal attention at the summary judgment stage. *See Youssef I*, 19 F. Supp. 3d at 190 n.9. Moreover, as the Court noted in *Youssef I*, even if the "totality of experience" policy was in effect at the time of Youssef's non-selection, it would appear that the LCB would not have applied the approach to Youssef in the instant case. *Id.* The LCB Chairperson Training presentation, which the parties relied on during discovery, states that the LCB may consider the "totality of experience" where "the ratings of the top ranked candidates' are close, and a review of the candidates' [application forms] indicate a

candidate with lower scores may be more suitable for the position." *Id.* In the instant case, Youssef was rated last of the four candidates and thus was not a "top ranked candidate" eligible to benefit from such an approach.

Accordingly, the Court finds that Plaintiff may not introduce evidence that LCB members should have relied on Plaintiff's "totality of experiences" to prefer him over other candidates who may have had higher competency scores. Therefore, any prejudice faced by Defendant as a result of Plaintiff raising the issue late in the litigation is ameliorated because the correct policies and procedures at the time of the selection will be used at trial. The Court also notes that Plaintiff is not precluded from introducing evidence concerning Plaintiff's experiences, and putting forth arguments as to why he was the top candidate for the ASC position. *See* Part A.1., *supra*. Finally, the Court agrees that Plaintiff has been prejudiced by Defendant's mistake. Therefore, as stated in Part III.C.4, in order to address any prejudice faced by Plaintiff, the Court shall allow Plaintiff the opportunity to depose Parlave. *See* Part III.C.4.

### 3. The Court assumes that the parties have resolved any remaining issues relating to the redacted classified information in Youssef's FD-954.

In footnote 3 of Defendant's Motion *in Limine*, Defendant indicated that it had submitted jury instructions relating to the redaction of classified information included in Youssef's FD-954. *See* Def.'s Mot. at 5 n.3. Specifically, Defendant argued that Plaintiff should not be permitted to allege that certain redactions were retaliatory. *Id.* Plaintiff indicated in his opposition brief that he opposed the jury instructions proposed by Defendant. Pl.'s Opp'n at 23. During the first pretrial conference, Defendant indicated that the FBI was reviewing the information that Plaintiff seeks to have unredacted from his FD-954 application for the ASC position, and that Defendant anticipated that this review would be completed by July 10, 2015. *See* Order dated July 2, 2015, ECF No.

[86], at 8.  In its supplemental briefing filed on July 16, 2015, Defendant indicated that the review process had been completed, and that the FBI agreed to unredact some, but not all, of the previously redacted portions.    Def.'s Supp. Pretrial Brief, ECF No. [89], at 12.   At the second pretrial conference, the parties indicated that the Government had provided Plaintiff with a new version of his FD-954 application, in which additional previously-classified information had been un-redacted.  Order dated August 14, 2015, ECF No. [92], at 4.   The parties indicated that Plaintiff was reviewing the new version, and that the parties hoped to resolve amongst themselves any remaining disputes about the redactions and how the redacted information should be presented to the jury.  *Id.*  In the Court's order dated August 14, 2015, the Court ordered Plaintiff to indicate in his supplemental briefing whether any issues remain to be resolved relating to the redacted classified information in Plaintiff's FD-954.  *Id.*  Plaintiff's supplemental briefing filed with the Court on September 21, 2015 did not address the issue of the classified information, and the parties have not submitted any other filings to update the Court on the status of the redacted classified information.   Therefore, the Court assumes that this issue is resolved.

### 4. The Court shall not strike the evidence set out in the Parlave declarations, and the Court shall permit Parlave to testify at trial.  However, Plaintiff must have an opportunity to depose Parlave on the issues addressed in her declarations.

During pretrial briefing, the parties on several occasions have disputed the appropriateness of Defendant's submission of declarations authored by Parlave on certain issues related to promotions of FBI personnel, and the policies and procedures relating to such promotions.   The first Parlave declaration, attached to Defendant's Opposition to Plaintiff's Motion *in Limine*, provides information concerning the typical career progression for someone in the Unit Chief position held by Youssef, as well as information concerning the ASC position sought by Youssef.  *See* Parlave Decl. (Apr. 2, 2015), ECF No. [81-1].  The second Parlave declaration, attached to

Defendant's Supplemental Pretrial Brief, provides information concerning the LCB selection process in 2009, changes in 2004 to the selection process regarding interviews, the selection process concerning the ASC position at issue on October 23, 2009, and the effective date of the "totality of experience" policy disputed by the parties. *See* Parlave Decl. (July 16, 2015), ECF No. [89-1]. The third Parlave declaration attached to Defendant's Second Supplemental Pretrial Brief, provides additional information concerning the "totality of experience" policy discussed in Parlave's second declaration. *See* Parlave Decl. (July 21, 2015), ECF No. [91-1].

Plaintiff argues that under Rule 37(c)(1), the Court should strike all three Parlave declarations from the record and exclude any testimony by Parlave at trial, because Defendant failed to list Parlave on its Rule 26 disclosures, and because Defendant untimely disclosed the information contained in the Parlave declarations. *See* Pl.'s Supp. Mem., ECF No. [97], at 4-7. According to Rule 37(c)(1), if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* According to Plaintiff, Defendant is improperly attempting to place facts on the record that were not presented during discovery, and were not asserted by Defendant in a Rule 26 statement. *Id.* at 2. Plaintiff contends that Defendant has been on notice since Plaintiff initiated this action in 2011 that the policies and procedures governing career boards and the FBI's promotion practices are a major issue in this case. *Id.* at 1. Therefore, argues Plaintiff, Defendant should not be allowed to introduce new witnesses and documents at this stage in the litigation. *Id.* at 2.

Defendant argues that Defendant formally supplemented its initial disclosures to include Parlave in a February 25, 2015 letter to Plaintiff's counsel, the deadline set for supplemental disclosures by the Court. *See* Def's Responses, ECF No. [77-7], at 4. According to Defendant,

Parlave was identified in numerous documents produced to Plaintiff, and Defendant's counsel further disclosed Parlave in writing to Plaintiff's counsel in January 2015, stating: "The FBI will substitute Valerie Parlave, Executive Assistant Director of the Human Resources Branch, who is based in Washington, DC and testified in *Youssef I*, for Douglas Price, whom I believe is now in Phoenix." *Id.* Accordingly, Defendant argues, Plaintiff has been well aware of Parlave for years, and there will be no surprise or prejudice from her testimony. Finally, Defendant contends that Local Rule 16.5(b)(5) expressly provides that "[n]o objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement . . . ." *Id.*

Upon review of the parties' arguments, the Court concludes that Rule 37 does not require the Court to strike the evidence set out in the Parlave declarations proffered by Defendant. As the Court noted at the second pretrial conference, Defendant formally supplemented its initial disclosures pursuant to Court order under Rule 26(e). Furthermore, Plaintiff has had ample notice that Parlave is an important witness in this case. Parlave testified in the *Youssef I* trial—a case involving the same parties, same Plaintiff's counsel, and similar legal claims. *Id.* Parlave was also identified in numerous documents produced to Plaintiff. Therefore, Plaintiff cannot argue that Defendant has improperly attempted to introduce a new witness at this stage in the litigation.

Furthermore, pursuant to Defendant's Rule 26(e) disclosures, Defendant substituted Parlave for Price, who Plaintiff had already deposed, to testify on the same issue as Price, namely the policies and procedures within the FBI. *See* Def.'s Responses, ECF No. [77-7], at 4. Therefore, to the extent that Parlave would testify on the same issue as Price, Plaintiff would suffer no prejudice. The Court notes, however, that Plaintiff's trial theories concerning the FBI's policies and procedures have evolved over the course of pretrial briefing. Specifically, Plaintiff raised a

new issue at the first pretrial conference concerning an alleged bias by Fernandez, namely that he failed to appropriately instruct the LCB members on their ability to consider an applicant's "totality of experience." In response, Defendant produced Parlave declarations dated July 16, 2015 and July 21, 2015, which contain information regarding LCB policies, such as the consideration of an applicant's "totality of experience." *See* Parlave Decl. (July 16, 2015), ECF No. [89-1]; Parlave Decl. (July 21, 2015), ECF No. [91-1].[23]   The Court acknowledges that the information concerning the effective date of the "totality of experience" policy is new to Plaintiff; however, the Court also observes that the issue has now crystallized such that the parties know which policy was in effect at the time of Youssef's non-selection in October 2009. Accordingly, the Court cannot allow Plaintiff to introduce evidence at trial that the "totality of experience" policy was in effect at the time of Youssef's non-selection, when, in fact, it was not. To ameliorate any harm to Plaintiff, the Court shall allow Plaintiff the opportunity to depose Parlave on any issues addressed in her declarations. *See* Fed. R. Civ. P. 37(c)(1).

Finally, Plaintiff raises an objection to Defendant's introduction of testimony by Parlave on account that Parlave would be providing expert testimony outside of her personal knowledge, and that Defendant has not filed the necessary report to allow for expert testimony. *See* Pl.'s Objections, ECF No. [77-5], at 2. In response, Defendant contends that Parlave's testimony will be based entirely on her personal knowledge, and therefore admissible under Rule 701. *See* Def.'s

---

[23] The Court observes that some of the information contained in the Parlave declarations appear to have already been known, or at minimum available to, Plaintiff. As an example, the key points in Parlave's April 2, 2015 declaration contain salary information for the ASC position—information that was available and presumably known to Plaintiff—and statements supporting the idea that the ASC position is not the next logical step in the career progression for someone in Youssef's position—an idea put forward by Plaintiff's witness, Curran, in *Youssef I*. *See* Parlave Decl. (Apr. 2, 2015), ECF No. [81-1].

Responses, ECF No. [77-7], at 4-5.

It appears to the Court that Defendant has not provided evidence indicating that Parlave would have personal knowledge concerning two issues to which Parlave may testify. First, Parlave's July 16, 2015 declaration contains information concerning policy changes to LCB interview procedures in 2004 that pre-date her positions in the FBI's human resources division described in her declaration. *See* Parlave Decl. (July 16, 2015), ECF No. [89-1]. However, as a practical matter, it appears to the Court that her testimony about the policies in effect at the time of the LCB proceeding in 2009 would necessarily encompass the procedures that were changed in 2004. Second, Defendant has indicated that it intends to introduce testimony by Parlave concerning the typical career progression for an FBI agent serving as a Unit Chief, as well as testimony to the effect that the denial of a lateral Assistant Section Chief position would not negatively impact the reputation of an FBI agent that was serving as a Unit Chief. Joint Pretrial Statement at 21. However, it is not clear to the Court that Parlave would have personal knowledge concerning these issues under Rule 701. Accordingly, the Court shall require Defendant to provide the Court with a proffer of evidence demonstrating the basis of Parlave's personal knowledge regarding the typical career progression for an FBI agent serving as a Unit Chief as well as the effect that the denial of a lateral Assistant Section Chief position would have on the reputation of an FBI agent that was serving as a Unit Chief.

Finally, as a related matter, Defendant indicates in the parties' joint pretrial statement that Defendant also intends to call Michael Heimbach, the former Assistant Director of the Counterterrorism Division, to provide testimony about the FBI's promotional policies and practices for special agents, including that the denial of a lateral ASC position would not negatively impact the reputation or restrict the career path of an FBI agent that was serving as a Unit Chief.

*See* Joint Pretrial Statement, ECF No. [77], at 22.  However, it is not clear to the Court that Heimbach would have personal knowledge concerning these issues under Rule 701.  Therefore, to the extent that Defendant still intends to call Heimbach as a witness to provide non-duplicative testimony regarding these issues, Defendant should provide the Court with a proffer of evidence demonstrating the basis of Heimbach's personal knowledge regarding these issues.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART, DENY-IN-PART Defendant's [79] Motion *in Limine* and GRANT-IN-PART, DENY-IN-PART Plaintiff's [80] Motion *in Limine*, and GRANT-IN-PART, DENY-IN-PART the objections made by the parties to their Joint Pretrial Statement.

The Court notes that some of the parties' objections made to their Joint Pretrial Statement have not been addressed by this Opinion.  The Court anticipates resolving many of these remaining objections at the pretrial conference scheduled for November 13, 2015.  The Court also anticipates discussing Defendant's deposition designation of Armando Fernandez, as well as Plaintiff's [100] Motion for Order Issuing Trial Subpoenas.

Finally, the Court observes that certain issues remain unresolved and require further action by the parties:

- Plaintiff shall have the opportunity to depose Parlave on the issues addressed in her declarations.

- Plaintiff shall provide the Court with additional information indicating the relevant community for evaluating Youssef's reputation, as well as the quality of Youssef's reputation prior to his non-selection.

- Plaintiff shall disclose by a date set by the Court the witness who Plaintiff intends to testify regarding (1) the *Mother Jones* article's publication, such as whether the article was in fact available on the Sentinel and the time frame that it was on the Sentinel, and (2) the Sentinel's readership, including whether all or most FBI

employees look at the Sentinel, whether Chase and Castro looked, or were likely to look, at the Sentinel, who controls the Sentinel, and who puts articles on the Sentinel.

- Defendant shall provide the Court with a proffer of evidence demonstrating the basis of Parlave's personal knowledge regarding the typical career progression for an FBI agent serving as a Unit Chief as well as the effect that the denial of a lateral Assistant Section Chief position would have on the reputation of an FBI agent that was serving as a Unit Chief.

- To the extent that Defendant intends to call Heimbach as a witness to provide non-duplicative testimony regarding the aforementioned issues, Defendant should also provide the Court with a proffer of evidence demonstrating the basis of Heimbach's personal knowledge regarding these issues.

An appropriate Order accompanies this Memorandum Opinion.

Dated: November 13, 2015

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE